UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
Case No.

**JEREMY B. HALES**,

   Plaintiff,

v.

**LYNETTE MICHELLE LACEY ALEXIS PRESTON**

and

**JOHN COOK**,

   Defendants.

_____/

## COMPLAINT

Plaintiff JEREMY B. HALES (hereinafter, "HALES"), by and through undersigned counsel, sues LYNETTE MICHELLE LACEY ALEXIS PRESTON (hereinafter, "PRESTON") and JOHN COOK (hereinafter, "COOK"), and states:

### SUMMARY OF THE CASE

1. This case is about the use of threats or extortion to compel HALES to behave in a certain manner and/or to persuade HALES to provide PRESTON and COOK with benefits.

### THE PARTIES

2. HALES is a resident of Summit County, Ohio, who has built his career around his passions through social media, including, without limitation, Facebook,

YouTube, TikTok, Instagram, and other platforms, with a current YouTube subscription fan base of over 700,000 people across the world for his YouTube channel "What The Hale$.

3. People who subscribe with Plaintiff's social media platforms often pay monthly fees to HALES for premium access to HALES' social media platform - which is an "open video diary" of HALES' life.

4. HALES' social media platforms are where people are EDUCATED, EQUIPPED and ENCOURAGED (with a dash of humor on the Side).

5. HALES has expended and continues to expend substantial time, money, and resources into acquiring subscribers, providing ongoing programs, and maintaining relationships and goodwill with them.

6. Since October 2021 to date, PRESTON resides in Levy County, Florida, is a Florida resident, and has been a viewer of HALES' social media platforms since at least 2020.

7. Since October 2021 to date, COOK resides on the same property as PRESTON, and as such is a Florida resident in Levy County, Florida, and who is also a viewer of HALES' social media platforms since at least 2020.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter under 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 28 U.S.C. § 1367(a).

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## DEFENDANTS' MISCONDUCT

10. In December 2020 HALES purchased land for part-time operations of his social media platforms in Levy County, Florida.

11. In 2020, PRESTON and COOK resided together in North Port, Sarasota County, Florida.

12. On or about May 18, 2020, PRESTON started her own YouTube channel.

### Stalking Begins

12. On or about July 17, 2021, PRESTON drove from North Port, Florida to a vacant lot across the street from HALES' property in Levy County Florida (hereinafter, the "VACANT LOT ACROSS THE ROAD"), taking a "fan picture" by the entrance to HALES' property where his "drive-thru sign" was publicly known to be located. Posting this "fan picture" to her social media, PRESTON *falsely* stated (1) she had bought the VACANT LOT ACROSS THE ROAD, and (2) that HALES was now her "new neighbor."

13. On the same July 2021 visit, PRESTON asked HALES if he could help remove a tree from the VACANT LOT ACROSS THE ROAD (which she did not even own in July 2021), and HALES, not knowing that PRESTON was lying and believing her lies that she was the owner of the VACANT LOT ACROSS THE ROAD (which she

did not even own in July 2021), personally used his tractor to move the tree from the VACANT LOT ACROSS THE ROAD (which she did not even own in July 2021).

14. On or about July 21, 2021, PRESTON and COOK listed their North Port, Florida house for sale.

15. On or about October 8, 2021, PRESTON and COOK bought the same vacant lot across the street from HALES' property in Levy County Florida, that she visited in July, 2021.

16. On or about October 27, 2021, PRESTON and COOK sold their North Port, Florida house.

17. Between December 2021 and February 2023 both PRESTON and COOK created multiple local Levy County Facebook pages, asking for donations to PRESTON's 501(c)(3) "It's a Shell Thing" – a purported "tortoise rescue" not open to the public.

18. Between December 2021 and February 2023 PRESTON made it clear to HALES that she was a fan of HALES and would on occasion ask HALES for "free merchandise," stating that she needed money to pay her bills.

19. On or about February 12, 2023 HALES relented to the constant requests from PRESTON and gave PRESTON two Leap Pads.[1]

---

[1] Leap Pads are kid-friendly tablets that include preloaded content featuring core skills in mathematics, reading and science as well as music, puzzles, logic and creativity to prepare kids for preschool and beyond.

20. On or about February 15, 2023, PRESTON asked HALES if she could attend for free a paid "meet and greet" live event that HALES was having in Levy County Florida - with many of his fans and supporters visiting on site from around the world.

21. HALES said yes.

22. On or about February 20, 2023, PRESTON asked HALES if she could bring her own Donation Box to the paid "meet and greet" live event.

23. HALES said no.

### Extortion and Blackmail Begins

24. Being denied further access to pecuniary advantages they would have if permitted to solicit donations from HALES' fanbase, PRESTON and COOK maliciously begin threatening to do injury to HALES' reputation with intent thereby to extort a pecuniary advantage for themselves.

25. PRESTON and COOK immediately begin publishing defamatory statements about HALES on their various social media platforms. In May, 2023 for example, PRESTON stated on her social media that she "watched Jeremy Hales' videos till recently," and "Jeremy Hales only thinks about the size of his junk."

26. On or about May 1, 2023, HALES went to Ohio with the intention to remain there until the fall of 2023, only returning occasionally for town hall meetings, which occur monthly.

27.     In May 2023, when Hales returned from Ohio for a town meeting, COOK (1) pulled a gun on HALES as HALES was driving by on the public roadway to enter HALES' own property; (2) trespassed in his truck onto HALES' property with a gun, and when HALES confronted him and requested him to leave, COOK told HALES that if he moves one step further, he will see something "go bang"; and (3) maliciously threatened to do injury to HALES' reputation with intent thereby to extort a pecuniary advantage, and accordingly, publicly stated (falsely) on Facebook that HALES' fiancé had oral sex with him, and that he has photographs to prove it.[2]

28.     After HALES left Florida to go back to Ohio in May 2023, PRESTON wrote many double sided road signs and placed them around the roads surrounding HALES' property in Levy County, Florida; these signs falsely stated:

- *Jeremy Hales Raped my Daughter!*

- *Jeremy Hales Has to Go! What the Hales?*

- *Jeremy Hales OHIO Rapist*

- *NO OHIO Rapists in Levy County – Stop Jeremy Hales*

- *Jeremy Hales Needs to Go! No Child rapists in Levy Co!*

---

[2] COOK posted "Jeremy would you like me to post the picture of my c8ck in Georges (sic) mouth You can't take this one down."

- ***Stop Jeremy Hales No Rapists in Levy Co!*[3]**

29.     Accordingly, on or about May 23, 2023, HALES hired an attorney who sent a "cease and desist" letter to PRESTON and COOK, which stated, *inter alia*,

> [Y]our unlawful defamatory statements directed to Jeremy Hales on social media platforms constitutes libel under Florida Law. CEASE AND DESIST PUBLISHING ALL DEFAMATORY STATEMENTS… It has come to our attention that you posted defamatory statements regarding Jeremy Hales on various web pages including, but not limited to, Otter Creek friends and neighbors, Otter Creek politics, The Heart of Otter Creek, It's a Shell Thing Inc., as well as other social media platforms…We demand that you immediately (A) cease and desist your unlawful defamation of Mr. Jeremy Hales, Martha, George, What the Hales, and all other variations (including all misspellings and euphemisms such as the youtubers, neighbors, etc.), (B) immediately remove and delete all postings relating to Mr. Hales and his interests, and (C) that you provide us with written assurance within ten (10) days that you will cease and desist from further libel directed to our clients.

30.     On or about May 28, 2023, PRESTON posted on her social media that (1) "I'm gonna stand tall and not let Jeremy Hales hurt me ever again;" (2) she will "put a cap" in the ass of anyone who messes with her; and (3) "I'm done with it you met your match Mr. Hales."

---

[3] In July, 2023, PRESTON posted on her social media that "John posted the signs, not me."

31. Despite knowing the falsity of their statements, PRESTON and COOK used their defamatory statements to persuade HALES' customers to stop supporting HALES.

32. HALES reported all of the above events while in Ohio, and in September 2023 an Ohio court issued an two-year renewable Restraining Order/Injunction against PRESTON and COOK for stalking HALES and his fiancé.

33. To date, this has not stopped PRESTON and COOK from continuing their illegal acts against HALES. Rather than cease, PRESTON has demanded that HALES provide her with a list of the names and contact information of all of his donors.

34. As a direct result of Defendants' misconduct, HALES has incurred damages.

### Injury To Hales' Goodwill And Reputation

35. In addition, HALES suffered injury and harm to his reputation and he has incurred costs associated with his extensive efforts to mitigate against such injury and harm.

### DEFENDANTS' PATTERN OF CRIMINAL CONDUCT

36. PRESTON's and COOK's acts violated Florida's extortion statute, which makes it a felony to maliciously threaten to accuse another of a crime or offense with the intent to extort money or pecuniary advantage see Fla. Stat. § 836.05.

37. PRESTON's and COOK's acts constitute predicate acts under Florida's RICO statute and are evidence of PRESTON's and COOK's pattern of continuing criminal activity.

38. PRESTON's and COOK's acts violated Fla. Stat. § 836.05 by maliciously threatening to injure HALES with the intent to extort money or gain any pecuniary advantage whatsoever and/or to do any act or refrain from doing any act against his will.

39. PRESTON's and COOK's acts constituted at least two distinct criminal acts in violation of Fla. Stat. § 836.05.

40. Fla. Stat. § 836.05 prohibits "utterances or communications which constitute malicious threats to do injury to another's person, reputation, or property." *Carricarte v. State*, 384 So. 2d 1261, 1263 (Fla. 1980). As relevant here, Florida law makes it unlawful for any person, "[t]hrough a pattern of criminal activity[,] . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property," or for a person "[e]mployed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity." Fla. Stat. § 772.103.

### COUNT 1 – DEFAMATION
### (PRESTON)

41. HALES incorporates paragraphs 1 through 40 as if fully set forth below.

42. This is an action for damages against PRESTON that exceeds Seventy-Five Thousand ($75,000.00) Dollars for defamation per se.

43. PRESTON orally and in writing published false statements about HALES to third parties.

44. The false statements were calculated to defame or diminish the reputation of HALES in his immediate community and within his capacity.

45. The false statements were made with knowledge or their falsity or with reckless disregard as to their veracity.

46. The false statements impute to the Plaintiff behavior or characteristics that are incompatible with the proper conduct of his business, profession, and office.

47. The false statements also impute to the Plaintiff the commission of a crime.

48. As a result of the defamatory publications, HALES has suffered general damages.

**WHEREFORE**, it is prayed that this Honorable Court enter judgment for damages, costs, prejudgment interest and for any other such relief as might be appropriate.

### COUNT 2 – DEFAMATION
### (COOK)

49. HALES incorporates paragraphs 1 through 40 as if fully set forth below

50. This is an action for damages against COOK that exceeds Seventy-Five Thousand ($75,000.00) Dollars for defamation per se.

51. COOK orally and in writing published false statements about HALES to third parties.

52. The false statements were calculated to defame or diminish the reputation of HALES in his immediate community and within his capacity.

53. The false statements were made with knowledge or their falsity or with reckless disregard as to their veracity.

54. The false statements impute to the Plaintiff behavior or characteristics that are incompatible with the proper conduct of his business, profession, and office.

55. The false statements also impute to the Plaintiff the commission of a crime.

56. As a result of the defamatory publications, HALES has suffered general damages.

**WHEREFORE**, it is prayed that this Honorable Court enter judgment for damages, costs, prejudgment interest and for any other such relief as might be appropriate.

### COUNT 3 – CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT (PRESTON)

57. HALES incorporates paragraphs 1 through 40 as if fully set forth below.

58. This is an action for damages against PRESTON that exceeds Seventy-Five Thousand ($75,000.00) Dollars.

59. In two distinct instances separated in time, PRESTON extorted HALES and within the meaning of Fla. Stat. § 836.05.

60. PRESTON's acts constituted a violation of Fla. Stat. § 836.05, which prohibits any person from using a written communication to "maliciously threaten[]

injury" to the property of another "with intent to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will. . . ."

61. PRESTON's conduct, among other acts, constituted a "pattern of criminal activity" in violation of Fla. Stat. § 772.103(4) by constituting an "endeavor to violate any of the provisions" of the statute, namely Fla. Stat. § 772.103(3), which prohibits any person from participate in an extortion enterprise through a pattern of criminal activity.

62. This ongoing pattern of criminal conduct constitutes a continuing threat of illegal conduct persisting into the future.

**WHEREFORE**, HALES respectfully requests that the Court enter judgment in its favor and award the following relief:

a. Actual damages, in an amount to be established at trial;

b. Statutory damages;

c. Attorneys' fees and costs incurred in the prosecution of this action; and

d. Such other and further relief as the Court may deem appropriate in the circumstances.

**COUNT 4 – CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT
(COOK)**

63. HALES incorporates paragraphs 1 through 40 as if fully set forth below.

64. This is an action for damages against COOK that exceeds Seventy-Five Thousand ($75,000.00) Dollars.

65. In two distinct instances separated in time, COOK extorted HALES and within the meaning of Fla. Stat. § 836.05.

66. COOK's acts constituted a violation of Fla. Stat. § 836.05, which prohibits any person from using a written communication to "maliciously threaten[] injury" to the property of another "with intent to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will. . . ."

67. COOK's conduct, among other acts, constituted a "pattern of criminal activity" in violation of Fla. Stat. § 772.103(4) by constituting an "endeavor to violate any of the provisions" of the statute, namely Fla. Stat. § 772.103(3), which prohibits any person from participate in an extortion enterprise through a pattern of criminal activity.

68. This ongoing pattern of criminal conduct constitutes a continuing threat of illegal conduct persisting into the future.

**WHEREFORE**, HALES respectfully requests that the Court enter judgment in its favor and award the following relief:

e. Actual damages, in an amount to be established at trial;

f. Statutory damages;

g. Attorneys' fees and costs incurred in the prosecution of this action; and

h. Such other and further relief as the Court may deem appropriate in the circumstances.

## COUNT 5 - TORTIOUS INTERFERENCE
## WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS
## (PRESTON)

69. HALES incorporates paragraphs 1 through 40 as if fully set forth below.

70. This is an action for damages against PRESTON that exceeds Seventy-Five Thousand ($75,000.00) Dollars.

71. HALES maintains valid and enforceable contracts and business relationships with his customers.

72. PRESTON is knowledgeable of the contractual and business relationship between HALES and his customers.

73. Despite knowledge of the customer's contractual and business relationship with HALE, PRESTON intentionally and without valid justification interferes with such relationship.

74. HALES is damaged by PRESTON's unlawful conduct by losing revenue streams that otherwise would remain with HALES absent PRESTON's interference with HALES' valid contractual relationships.

**WHEREFORE**, HALES respectfully requests that the Court enter judgment in his favor and against PRESTON, and award the following relief:

a. Compensatory damages, in an amount to be established at trial;

b. Attorneys' fees and costs incurred in the prosecution of this action; and

c.  Such other and further relief as the Court may deem appropriate in the circumstances.

## COUNT 6 - TORTIOUS INTERFERENCE
## WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS
## (COOK)

75. HALES incorporates paragraphs 1 through 40 as if fully set forth below.

76. This is an action for damages against COOK that exceeds Seventy-Five Thousand ($75,000.00) Dollars.

77. HALES maintains valid and enforceable contracts and business relationships with his customers.

78. COOK is knowledgeable of the contractual and business relationship between HALES and his customers.

79. Despite knowledge of the customer's contractual and business relationship with HALE, COOK intentionally and without valid justification interferes with such relationship.

80. HALES is damaged by COOK's unlawful conduct by losing revenue streams that otherwise would remain with HALES absent COOK's interference with HALES' valid contractual relationships.

**WHEREFORE**, HALES respectfully requests that the Court enter judgment in his favor and against COOK, and award the following relief:  Compensatory damages, in an amount to be established at trial;  Attorneys' fees and costs incurred in the

prosecution of this action; and such other and further relief as the Court may deem appropriate in the circumstances.

### DEMAND FOR JURY TRIAL

HALES demands a trial by jury on all issues so triable.

Dated: March 4, 2024

Respectfully submitted,
SHOCHET LAW GROUP
Attorneys for Jeremy B. Hales
409 N. Main Street
Trenton, FL 32693
By: /s/ *Randall Shochet*
Randall Shochet, Esq.
FBN.: 959421
attorneys@counsel.insure

### CERTIFICATE OF SERVICE

I hereby certify that on **March 4, 2023,** I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

By: /s/ *Randall Shochet*
Randall Shochet, Esq.