UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JEREMY B. HALES,
      Plaintiff,

vs.                         Case No.:  1:24cv00045/AW/ZCB

LYNETTE MICHELLE LACY
ALEXIS PRESTON, et al.,
      Defendants.
_____/

## **REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' motion to dismiss for lack of subject matter jurisdiction.  (Docs. 5, 6).  Plaintiff has responded in opposition.  (Docs. 8, 9).  For the reasons below, Defendants' motion should be denied.

## I.    Background

Plaintiff makes a living through the use of social media platforms like Facebook, Instagram, and YouTube.  According to Plaintiff, his YouTube channel "What The Hales" has over 700,000 subscribers.  In this lawsuit, Plaintiff alleges that Defendants have engaged in a public campaign to defame, extort, and threaten him.  Defendants' conduct has allegedly included such things as displaying signs that refer to Plaintiff

1

as a "rapist" who "raped my daughter."  (Doc. 1 at 6).  Defendant Cook

has also allegedly made social media posts threatening to post pictures

of him receiving oral sex from Plaintiff's fiancé.  (*Id.*).  Defendant Cook

has also allegedly pulled a gun on Plaintiff and threatened him.  (*Id.*).  It

is further claimed that Defendants made online defamatory statements

about Plaintiff in an effort to harm his social media businesses.  (*Id.* at

8).

The complaint asserts that there is federal subject matter

jurisdiction based on diversity of citizenship (28 U.S.C. § 1332) and the

existence of a federal question (28 U.S.C. § 1331).[1]  (Doc. 1 at 2).   In

support of the assertion of diversity jurisdiction, Plaintiff claims to reside

in Summit County, Ohio, while he claims Defendants reside in Levy

County, Florida.  (*Id.* at 1-2).  And Plaintiff seeks damages in excess of

$75,000.  (*Id.* at 9-15).

After being served with the complaint, the *pro se* Defendants filed

the current motion to dismiss.  (Docs. 5, 6)  In the motion, they argue

dismissal is warranted for lack of subject matter jurisdiction under Rule

---

[1] Despite the citation to 28 U.S.C. § 1331, there are no federal claims
raised in the complaint.  Thus, it is unclear why Plaintiff's complaint cites
§ 1331 as a jurisdictional basis.

2

12(b)(1) of the Federal Rules of Civil Procedure. More specifically, they argue that there is not complete diversity because Plaintiff and Defendants both reside in Florida. In support of their argument that Plaintiff resides in Florida and not Ohio, Defendants have provided a screenshot showing that Plaintiff is registered to vote in Levy County, Florida. (Doc. 6 at 6). And they have submitted affidavits stating that Plaintiff has "been continuously living in Otter Creek, Florida for at least six months prior to the date of this affidavit." (*Id.* at 4). Defendants also argue that the $75,000 amount in controversy requirement has not been met.

Plaintiff disagrees. He argues he is a lifelong resident of Ohio. Although Plaintiff admits to owning property in Florida, he asserts that he only periodically stays in Florida and considers Ohio to be his home. In support of that argument, Plaintiff has provided a copy of his Ohio driver's license, Ohio property tax records, Ohio vehicle registration papers, Ohio utility bills, federal income tax returns showing an Ohio address, an order of protection from an Ohio court preventing Defendants from coming from within 500 feet of Plaintiff, and an affidavit from

Plaintiff swearing that he resides in Ohio and intends to permanently remain there. (Docs. 8-1 to 8-8).

## II.   Discussion

Federal courts have limited subject matter jurisdiction. *PTA-FLA, Inc. v. ZTA USA, Inc.*, 844 F.3d 1299, 1304 (11th Cir. 2016). There are "three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Id.* at 1305 (cleaned up). The party invoking the court's subject matter jurisdiction bears the burden of proving that the case falls within one of these three categories. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). When the asserted jurisdictional basis is diversity under § 1332, a court must make two determinations. First, a court must determine if there is a controversy "between citizens of different states." 28 U.S.C. § 1332(a). Second, a court must determine if the amount in controversy exceeds $75,000. *Id.*

With regard to the first determination, "[c]itizenship, not residence is the key fact . . . to establish diversity for a natural person." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994). And "[c]itizenship is

equivalent to domicile for purposes of diversity jurisdiction." *McCormick*, 293 F.3d at 1257.  A person's domicile "is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Id.* at 1257-58 (cleaned up).  Because "domicile is not synonymous with residence," a person "may temporarily reside in one location, yet retain domicile in a previous residence." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1341-42 (11th Cir. 2011).  A change in domicile requires "a concurrent showing of (1) physical presence at the new location with (2) an intention to remain there indefinitely." *McCormick*, 293 F.3d at 1258.

If a party believes that diversity jurisdiction is lacking, then the party may seek dismissal under Rule 12(b)(1).  Rule 12(b)(1) motions come in two flavors—facial challenges and factual challenges. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).  With a facial challenge, the court will "look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the complaint are taken as true for purposes of the motion." *Id.* (cleaned up).  On the other hand, a factual challenge attacks "the existence of subject matter jurisdiction in fact,

irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.* (cleaned up).

Having laid out the applicable legal framework, it is time to apply it here.   First, it is necessary to determine the type of challenge Defendants have brought in their Rule 12(b)(1) motion.   It is a factual challenge.   There is no dispute that Plaintiff has facially alleged that there is diversity of citizenship and that the amount in controversy exceeds $75,000.   Through their motion, Defendants are challenging the factual accuracy of Plaintiff's allegations.

They are claiming that Plaintiff is—like them—a citizen of Levy County, Florida, as opposed to Summit County, Ohio.   And in support of their argument, Defendants have submitted affidavits and a screenshot of Plaintiff's Florida voter registration.   Because Defendants have "offer[ed] evidence outside of the pleadings to rebut jurisdictional allegations contained therein," Plaintiff "must respond in kind with evidence (e.g., extrinsic evidence such as testimony and affidavits) to prove by a preponderance of the evidence that jurisdiction tangibly exists irrespective of the complaint's allegations." *Hensley v. Westin Hotel*, No. 1:19-cv-03846, 2023 WL 3641955, at *2 (N.D. Ga. Feb. 27, 2023); *see also*

6

*McCormick*, 293 F.3d at 1257 (explaining that the party invoking the court's jurisdiction must prove "by a preponderance of the evidence, facts supporting the existence of federal jurisdiction").

Plaintiff has responded "in kind" with evidence sufficient to show by a preponderance of the evidence that he is a citizen of Ohio and not Florida.  That evidence consists of his current Ohio driver's license, Ohio property tax records for 2024, a current insurance policy listing an Ohio address, a current Ohio vehicle registration, Ohio utility bills, a federal income tax return listing Plaintiff's state of residence as Ohio, and a recent order of protection issued by an Ohio court listing an Ohio address for Plaintiff.  (Docs. 8-2 to 8-8).

Additionally, Plaintiff has submitted an affidavit stating that he has "always had" his domicile in Ohio since his birth in 1977.  (Doc. 8-1 at 2).  His affidavit further attests that he "intend[s] to keep an Ohio domicile," that "Ohio is my true fixed, and permanent home," and that he "intend[s] to return to Ohio whenever I am absent therefrom."  (*Id.* at 2, 6).  With regard to Florida, Plaintiff's affidavit explains that in 2020 he purchased a "non-homestead property" in Florida because the weather is better in the winter.  (*Id.* at 2).  According to the affidavit, the better

7

winter weather allows Plaintiff to avoid "shut[ting] down a significant part of [his] business during the winter months." (*Id.*). Although Plaintiff admits that he registered to vote in Florida, he claims he has never voted in any state other than Ohio. According to Plaintiff, he only registered to vote in Florida because one of the Defendants was running for local office, and Plaintiff wanted to vote against her. (*Id.* at 6). But that Defendant withdrew from the election, so Plaintiff says he never voted in Florida. (*Id.*).

Based on the information in the record, the Court finds that Plaintiff has sufficiently established that his domicile is Ohio. Although Plaintiff may have purchased a residence in Florida where he resides part-time, residency is not the same as domicile. In order for Plaintiff to have changed his domicile from Ohio to Florida, he would need to be physically present in Florida with "an intention to remain there indefinitely." *McCormick*, 293 F.3d at 1258. Plaintiff disclaims any intent to remain in Florida, and his affidavit states that Ohio is his "true, fixed, and permanent home" and the place he "intend[s] to return to" whenever he is gone. (Doc. 8-1 at 6). The documentation Plaintiff has provided supports Plaintiff's claim that he is domiciled in Ohio. Thus,

the Court finds that for purposes of diversity jurisdiction Plaintiff is a citizen of Ohio. And Defendants are citizens of Florida. Thus, there is complete diversity between the parties.

But complete diversity is not all that is needed for jurisdiction to be proper under 28 U.S.C. § 1332. There is also the requirement that the amount in controversy exceed $75,000. Typically, a plaintiff "need only plead an amount sufficient to satisfy the amount-in-controversy requirement in good faith." *Fastcase, Inc v. Lawriter, LLC*, 907 F.3d 1335, 1342 (11th Cir. 2018). And the plaintiff's good faith statement of the amount in controversy "will be second guessed only if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (cleaned up). But when "jurisdiction is based on a claim for indeterminate damages, the . . . legal certainty test gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003). Meeting this burden is "not onerous" as it "merely requires that Plaintiff convince this Court that it is more likely than not that the pleading satisfies the

jurisdictional minimum." *Dibble v. Avrich*, No. 14-CIV-61264, 2014 WL 6632629, at *5 (S.D. Fla. Nov. 21, 2014).

In this case, Plaintiff's complaint does not seek a specific dollar amount of damages. Instead, it generically seeks damages "that exceed[] Seventy-Five Thousand ($75,000) dollars." (Doc. 1 at 9). So "strictly speaking, Plaintiff's claim for damages is indeterminate" because a "claim for indeterminate damages is defined as a claim that includes an unspecified demand for damages." *Dibble*, 2014 WL 6632629, at *4 (referring to allegation that "the matter in controversy exceeds the sum or value of $75,000" as a claim for "indeterminate" damages); *see also Assoc. Indus. Ins. Co., Inc. v. Wilson's Pool Design, LLC*, 690 F. Supp. 3d 1338, 1340 (S.D. Ala. 2023) ("Because the complaint alleges only that the amount in controversy exceeds $75,000, the relief sought is indeterminate . . . ."). Thus, the preponderance of the evidence test and not the legal certainty standard applies.

A court can find the plaintiff has satisfied the preponderance standard based on the factual allegations in the complaint. *See Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001); *see also Progressive Express Ins. Co. v. Lopez Transp. Servs.*, 470 F. Supp. 3d 1272, 1276 (S.D.

Fla. 2020) (finding the plaintiff demonstrated the requisite amount in controversy by a preponderance when it alleged factual support for the claimed amount); *Dibble v. Avrich*, No. 14-CIV-61264, 2014 WL 6632629, at *5 (S.D. Fla. Nov. 14, 2014) (finding the plaintiff met the "preponderance" test because the complaint's allegations, when "read broadly but plausibly, [could] command $75,000 or more in damages").

Plaintiff's complaint and his affidavit state that he is a successful social media personality who makes his living from people subscribing to his content and viewing his videos and posts. According to Plaintiff, over 700,000 people have subscribed to his YouTube channel. These subscribers often pay monthly fees for premium access to Plaintiff's social media content. Plaintiff claims that Defendants have engaged in a coordinated and extensive campaign to defame, harass, extort, threaten, and injure him and his social media business. More specifically, Plaintiff alleges:

- Defendant Cook "posted a large collection of sex toys and stated [Plaintiff] was selling" them. (Doc. 8-1 at 3)

- Defendant Cook posted online, "[Plaintiff] would you like me to post the picture of my c8ck in [Plaintiff's partner's] mouth You can't take this down." (Doc. 1 at 6).

- Defendant Preston created and posted throughout the community signs saying things like: "[Plaintiff] raped my daughter," "[Plaintiff] Needs to Go!  No Child rapists in Levy Co!," and "Stop [Plaintiff] No Rapists in Levy Co!" (*Id.* at 6-7).

- Defendants Cook and Preston have made "online posts calling [Plaintiff] a child predator," and those posts "are constant and ongoing to this day." (Doc. 8-1 at 4).

Plaintiff further alleges that Defendants have used their "defamatory statements to persuade [Plaintiff's] customers to stop supporting" his business. (Doc. 1 at 8).  According to Plaintiff, Defendants' conduct has caused him to suffer "injury and harm to his reputation and he has incurred costs associated with his extensive efforts to mitigate against such injury and harm." (*Id.*).  And he says Defendants' conduct has resulted in the loss "of revenue streams that otherwise" would have remained with Plaintiff. (*Id.* at 14).  In terms of relief, Plaintiff seeks damages, attorneys' fees and costs, and any other relief the Court may deem appropriate. (*Id.* at 9-16).

Having reviewed the allegations in Plaintiff's complaint and the information provided in Plaintiff's affidavit, the Court finds it is more likely than not Plaintiff has satisfied the amount in controversy requirement.  Defendants have allegedly engaged in a public and

12

coordinated campaign to ruin Plaintiff's successful social media business by, among other things, repeatedly (both online and in the real world) falsely accusing him of being a rapist and a child rapist. There are few accusations that could be more harmful to a person than false accusations of sexually abusing others—especially children. That is particularly true when the falsely accused person's business and source of income are directly tied to the number of people who view, support, and subscribe to his social media content. It is not difficult to see how being falsely accused of raping children (along with the other defamatory statements Defendants have allegedly made) could cause Plaintiff to suffer damages in excess of $75,000. *See, e.g.*, *Moore v. Senate Majority PAC*, No. 4:19-cv-1855, 2023 WL 7220943, at *1 (N.D. Ala. Sept. 29, 2023) (refusing to set aside $8.2 million defamation jury verdict where the defendant falsely stated in public advertisements that the plaintiff had solicited underage girls for sex); *Lustig v. Stone*, No. 15-20150, 2019 WL 11660556, at *4 (S.D. Fla. Apr. 29, 2019) (awarding the plaintiff $700,000 in damages for defamation where the defendant referred to the plaintiff publicly as "an adult predator and like a child molester" who had masterminded an "attempted pre-meditated murder").

Additionally, Plaintiff has brought a claim under Florida's Civil Remedies for Criminal Practices Act based on Defendants' alleged acts of extortion. If Plaintiff prevails on that claim, then he may receive treble damages. *See* Fla. Stat. § 772.104(1). Courts should consider the availability of treble damages when deciding if the amount in controversy requirement has been met. *See Ellis v. Warner*, No. 15-10134, 2017 WL 634287, at *16 (S.D. Fla. Feb. 16, 2017) (considering the availability of treble damages when deciding if the amount in controversy was satisfied); *see also Barson v. Sharr*, No. 6:13-cv-1767, 2014 WL 12621198, at *1 n.1 (M.D. Fla. Aug. 12, 2014) ("The Court must include any alleged treble damages available under Florida law in calculating the amount in controversy.").

Plaintiff has also sought attorneys' fees under Florida's Civil Remedies for Criminal Practices Act. The Act provides that a successful plaintiff may receive "reasonable attorney's fees." Fla. Stat. § 772.104(1). And the Eleventh Circuit has stated that "[w]hen a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy." *Morrison v. Allstate Indemn. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000). Thus, the Court may include a

14

reasonable amount of Plaintiff's attorneys' fees in deciding whether the amount in controversy has been met here.[2]

When the possible actual damages are combined with the possible treble damages and the possible reasonable attorneys' fees, the Court easily finds it is more likely than not that the amount in controversy exceeds $75,000.

---

[2] The Court notes there are several cases from the Southern District of Florida holding that attorneys' fees under Fla. Stat. § 772.104(1) may not be used in determining the amount in controversy.  *See HansaWorld USA, Inc. v. Davenport*, No. 12-24510-CIV, 2013 WL 12094845, at *3 (S.D. Fla. Jan. 25, 2013); *see also Ellis v. Warner*, No. 15-10134-CIV, 2017 WL 634287, at *16 (S.D. Fla. Feb. 16, 2017).  In reaching that conclusion, those cases reasoned that Florida law refers to attorney's fees under § 772.104 as "costs," Fla. Stat. § 772.185, and 28 U.S.C. § 1332 says that the amount in controversy shall be determined "exclusive of interest and costs."  But that line of reasoning conflicts with the Supreme Court's decision in *Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199 (1933).  The *Missouri State Life Ins.* Court held that a state statute declaring attorneys' fees as "costs" does not mean they are treated as "costs" for purposes of federal jurisdiction.  *Id.* at 202; *see also Benter v. UPS*, No. 24-cv-000375, 2024 WL 2098094 at *3 (N.D. Cal. May 9, 2024) (relying on *Missouri State Life Ins.* and rejecting argument that attorneys' fees were not included in the amount in controversy calculation because the applicable state statute described the attorney's fees as "costs"); Robert Rossi, 1 Attorneys' Fees § 6:19 (3d ed. 2024) (explaining that the *Missouri State Life Ins.*, Court held that attorneys' fees "which were authorized by the underlying statute brought the amount in controversy over the jurisdictional amount, despite the fact that the statute specified that those fees were to be taxed as 'costs'").

### III.  Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that:

1.  Defendants' motions to dismiss (Docs. 5, 6) be **DENIED**; and

2.  This case be recommitted to the undersigned for further proceedings.

At Pensacola, Florida this 26th day of August 2024.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

### Notice to the Parties

Objections must be filed within fourteen days of the date of the Report and Recommendation.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.