# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **JEREMY B. HALES,** | : | **Civil Action No.:** |
| | : | **1:24-CV-00045-AW-ZCB** |
| **Plaintiff,** | : | |
| v. | : | |
| | : | |
| **LYNETTE MICHELLE LACEY ALEXIS PRESTON** | : | |
| and | : | |
| **JOHN COOK,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT ON COUNTS 1 & 2

### A. Statement of Material Facts

1. The plaintiff has no evidence that Defendant Preston wrote the signs alleged in paragraph 28 of the Complaint or any signs about the plaintiff.

2. The plaintiff has no evidence that Defendant Cook wrote the signs alleged in paragraph 28 of the Complaint or any signs about the plaintiff.

3. Assuming the plaintiff could somehow produce evidence creating a genuine issue of fact as to whether either of the defendants wrote any of the signs, there is no evidence the signs were "placed around the roads surrounding HALES' property in Levy County, Florida."

4. Assuming the plaintiff could somehow produce evidence creating genuine issues of fact as to whether either of the defendants wrote the signs and whether the signs were "placed around the roads

surrounding HALES' property in Levy County, Florida," there is no evidence anyone ever saw the signs.

5. Defendant Preston "stated on her social media that she 'watched Jeremy Hales' videos till recently,' and 'Jeremy Hales only thinks about the size of his junk.'" Complaint para. 25.

6. Defendant Cook posted on Facebook, "Jeremy would you like me to post the picture of my cock in Georges (sic) mouth You can't take this one down." Complaint para. 27.

7. Defendant Preston posted on her social media that (1) "I'm gonna stand tall and not let Jeremy Hales hurt me ever again;" (2) she will "put a cap" in the ass of anyone who messes with her; and (3) "I'm done with it you met your match Mr. Hales." Complaint para. 30.

8. None of the statements allegedly made by the defendants on social media are false statements of fact or defamatory to the plaintiff.

9. The plaintiff on September 5 began broadcasting a series of YouTube videos on is channel "WhatTheHales" showing a January 2024 Zoom-videoed deposition of defendant Preston taken in a now-dismissed state court TRO action filed by Ms. Preston, for the purpose of mocking and humiliating her for YouTube content and views.

B. <u>Allegations underlying defamation claims</u>

Counts 1 and 2 of the Complaint claim that defendants Preston and Cook, respectively, defamed the plaintiff. The factual support for these counts, stated in

paragraph 28 of the Complaint, includes that the defendants allegedly wrote signs defaming the plaintiff:

"After HALES left Florida to go back to Ohio in May 2023, PRESTON wrote many double sided road signs and placed them around the roads surrounding HALES' property in Levy County, Florida; these signs falsely stated:

- ***Jeremy Hales Raped my Daughter!***

- ***Jeremy Hales Has to Go! What the Hales?***

- ***Jeremy Hales OHIO Rapist***

- ***NO OHIO Rapists in Levy County – Stop Jeremy Hales***

- ***Jeremy Hales Needs to Go! No Child rapists in Levy Co!***

- ***Stop Jeremy Hales No Rapists in Levy Co!***"

The Complaint also includes the following allegations in support of the defamation claims:

"PRESTON and COOK immediately begin publishing defamatory statements about HALES on their various social media platforms. In May, 2023 for example, PRESTON stated on her social media that she 'watched Jeremy Hales' videos till recently,' and 'Jeremy Hales only thinks about the size of his junk.'" Complaint para. 25.

Defendant Cook "publicly stated (falsely) on Facebook that HALES' fiancé had oral sex with him, and that he has photographs to prove it," which statement is quoted in a footnote as, "Jeremy would you like me to post the picture of my

3

cock in Georges (sic) mouth You can't take this one down." Complaint para. 27 and footnote 2.

"On or about May 28, 2023, PRESTON posted on her social media that (1) "I'm gonna stand tall and not let Jeremy Hales hurt me ever again;" (2) she will "put a cap" in the ass of anyone who messes with her; and (3) "I'm done with it you met your match Mr. Hales." Complaint para. 30.

### C. Standard for FRCP 56 Motion for Summary Judgment

"When the nonmoving party has the burden of proof at trial, to prevail at summary judgment the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991). If the moving party shows an absence of evidence of a material fact, the burden of production shifts to the nonmoving party, who must identify evidence in the record or present 'additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.' Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir.1993)."

McGee v. Sentinel Offender Services, LLC, 719 F.3d 1236, 1242 (11th Cir. 2013).

"The moving party bears "the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of `the pleadings,

4

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). When the *nonmoving* party has the burden of proof at trial, the moving party is not required to "support its motion with affidavits or other similar material *negating* the opponent's claim," *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553, in order to discharge this "initial responsibility." Instead, the moving party simply may "`show' — that is, point out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 324, 106 S.Ct. at 2554. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial. *Id.* at 331, 106 S.Ct. at 2557 (Brennan, J., dissenting). If the moving party shows the absence of a triable issue of fact by either method, the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial. Fed.R.Civ.P. 56(e); *Chanel, Inc. v. Italian Activewear, Inc.,* 931 F.2d 1472, 1477 (11th Cir. 1991). If the nonmoving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552, the moving party is entitled to summary judgment."

United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437-38 (11th Cir. 1991).

"[T]he Federal Rules of Civil Procedure plainly contemplate consideration of summary judgment motions prior to the completion of discovery which would otherwise be permitted under the Rules. See, e.g., Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1219 (11th Cir. 2000). To illustrate, a defendant may move for summary *9 judgment before an answer has been filed or any discovery has been conducted. Once a summary judgment motion has been filed, the non-movant "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but must show the court how the stay will operate to permit him to rebut, through discovery, the movant's contentions." Barfield v. Brierton, 883 F.2d 923, 931 (11th Cir. 1989). In other words, under Rule 56(f), the non-movant must set forth "with particularity" the facts he expects to discover and how those facts will create a genuine issue of material fact. Harbert Int'l, Inc. v. James 157 F.3d 1271, 1280 (11th Cir. 1998). … The Court has "wide discretion" to deny discovery under Rule 56(f) absent an affirmative showing that additional discovery will enable the nonmovant to generate a genuine dispute of fact. Id."

<u>Mawulawde v. Board of Regents of Univ. Syst. Of GA</u>, CV 105-099, United States District Court, S.D. Georgia, Augusta Division (Aug.. 24, 2007) (copy attached).

"Rule 56 expressly states that a motion for summary judgment can be filed by a defending party "at any time." Fed.R.Civ.P. 56(b). "Courts and commentators have acknowledged that no answer need be filed before a defendant's motion for summary judgment may be entertained." INVST Fin.

6

Group, Inc. v. Ckem-Nuclear Sys., Inc., 815 F.2d 391, 404 (6th Cir.1987); see also Rohner v. Union Pac. R.R. Co., 225 F.2d 272, 274 (10th Cir.1955) (recognizing validity of motion for summary judgment filed in lieu of an answer); 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice Procedure § 2718 at 301 (3d ed. 1998) ("A defending party is not required by the rule to file an answer before moving for summary judgment.").

Marquez v. Cable One Inc., 463 F.3d 1118, 1120 (10th Cir. 2006).

### D. Elements of Defamation Claims

"Defamation under Florida law has these five elements: (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person;[1] (4) actual damages; and (5) the statement must be defamatory." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing to *Jews For Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008).

Montgomery v. Guyton, 1:23cv38-AW-MAF, at *3 (N.D. Fla. Oct. 31, 2023) (copy attached).

---

[1] Although the defendants do not base their summary judgment motion on the plaintiff's status as a public person, he is a famous YouTube personality and so would likely be precluded from recovering for defamation even if there were any way for him to prove the defendants defamed him.

### E. None of the alleged social media statements were defamatory.

It was not defamatory for defendant Preston to write on social media that she "watched Jeremy Hales' videos till recently," and "Jeremy Hales only thinks about the size of his junk." Even if it could be said that these are false statements of fact – i.e., that Ms. Preston actually didn't "watch Hales' videos until recently," or, perhaps, that she still watched them but falsely stated she no longer did – these statements cannot possibly be shown to have caused damage to the plaintiff. Unless the plaintiff can explain in an opposition memorandum how these statements somehow constitute defamation or caused him damage, these statements cannot save his defamation claim against Preston.

It was not defamatory of the plaintiff Hales for defendant Cook to write on Facebook, "Jeremy would you like me to post the picture of my cock in Georges (sic) mouth You can't take this one down." Assuming this was a false statement of fact that George (the plaintiff's fiancée) appeared in a photo performing oral sex on defendant Cook, if anyone would be defamed it would be George, not the plaintiff. It simply is not a statement about the plaintiff. Nor can the plaintiff show how such statement caused him damage.

It was not defamatory for defendant Preston to write on social media, (1) "I'm gonna stand tall and not let Jeremy Hales hurt me ever again;" (2) she will "put a cap" in the ass of anyone who messes with her; and (3) "I'm done with it you met your match Mr. Hales." Statement (1) is not a statement of fact, only vaguely suggesting some past unspecified "hurt". Statement (2) is not a

8

statement of fact.  Statement (3) is not a statement of fact.  Nor can the plaintiff show how any of these statements possibly caused him damage.

### F. <u>The plaintiff has no evidence the defendants wrote the signs.</u>

The only actually defamatory statements alleged by the plaintiff are those allegedly contained in handwritten signs allegedly written by the defendants, calling the plaintiff a child rapist.

It is assumed for this motion that this is a false statement of fact and that it is defamatory *per se*.  However, the plaintiff can produce no evidence that the signs were written by the defendants.  The claims fail as a matter of law for that reason alone.

This defamation case is highly unusual in that typically, there is no dispute as to what was said, who said it, and/or where and to what extent it was published.  The typical defamation case involves those <u>undisputed</u> facts as the underlying basis for the claim.  But in the present action, the plaintiff and his counsel interposed their defamation claims despite not being able to establish either (a) that the defendants made the alleged defamatory statements (the signs), or (b) whether, how and to what extent the defamatory statements (the signs) were published.

It isn't even necessary for the defendants to submit affidavits denying that they wrote the signs, because it is the plaintiff's burden to prove they did and to produce admissible evidence in opposition to summary judgment.[2]

In addition to having no evidence the defendants wrote the signs, the plaintiff also cannot produce evidence that the signs were ever posted "around the roads surrounding Hale's property," or how they were displayed. Nor can the plaintiff produce evidence that anyone saw the signs while posted and before being removed.[3] In fact, the only actual publication of the signs has been by the plaintiff, himself, on his YouTube channel "WhatTheHales" and by other YouTube channels covering WhatTheHales.

Because the plaintiff can produce no evidence the defendants made the defamatory statements by writing the signs, and also because the plaintiff can produce no evidence of publication, his defamation claims fail as a matter of law.

### G. The Court should deny discovery under FRCP 26(d), especially in light of the plaintiff's abuse of Ms. Preston on YouTube.

As noted above, the plaintiff and his counsel filed this action for defamation despite not even being able to establish the defendants wrote the

---

[2] The plaintiff has stated publicly on his YouTube channel numerous times that he has a handwriting expert who has already determined that the defendants wrote the signs. If so, such expert's opinion should be produced in opposition to this motion.

[3] The plaintiff has made statements publicly on his YouTube channel naming individuals who supposedly discovered the signs, removed them and brought them to the plaintiff. If those statements were true, he should have no problem swearing under oath or procuring those individuals' affidavits under oath, including why they took no photos of the signs in the locations where they were discovered.

10

signs and/or where and to what extent they were published, before getting to the normal issues litigated in a defamation case such as whether statements undisputedly made and published by the defendant are actually defamatory and how they caused damages. For this reason, any discovery sought under FRCP 26(d) would be a fishing expedition.

The true motive for the plaintiff filing this frivolous, vexatious action is not because there is any good faith belief or evidence the defendants wrote defamatory signs, but to generate content for the plaintiff's YouTube channel, "WhatTheHales."

In fact, as of the date of this motion the plaintiff is in the middle of a 10-part series of YouTube videos showing his present counsel's January 16, 2024, 7-hour Zoom deposition of Ms. Preston from her home, itself highly unusual in a state court TRO action – while Ms. Preston was unrepresented by counsel, begging for a continuance so she could retain counsel *the next day* as expected, and struggling to monitor and supervise her young child – taken in Ms. Preston's since-dismissed state court TRO action against Mr. Hales.

That deposition has no relevance to any current matter, yet the plaintiff is broadcasting Ms. Preston's deposition, taken by his present counsel, in 40-minute daily segments on YouTube as he mocks, humiliates and threatens Ms. Preston to (1) have her child taken away from her, (2) have her arrested, and (3) have her land taken from her through legal proceedings (such as the present action).

The same footage is then broadcast on at least a half dozen other YouTube channels totaling over one million viewers, with the same mocking and humiliating of Ms. Preston by those channel's hosts and their viewers. They include "That Umbrella Guy," "Megan Fox Writer," "DUIGuy+" (Attorney Larry Forman, a practicing lawyer in Kentucky who places his YouTube content above comportment as a lawyer, such as by propagating a "Judge Grudge" storyline from WhatTheHales attacking Levy County Circuit Court judge Craig DeThomasis with allegations of bias and corruption and derogatory nicknames), and several others (including other lawyers) with YouTube channels who are profiting as extensions of "WhatTheHales" by playing its content and propagating the same attacks on Ms. Preston and Mr. Cook for content and views on their own channels.

The plaintiff's YouTube videos attacking Ms. Preston and Mr. Cook have gone on for well over one year and have destroyed their lives. For example, Ms. Preston has been visited 27 times by CPS based on mostly anonymous reports from WhatTheHales viewers, all resulting in no finding of abuse. The plaintiff has claimed on his videos that there is an "emergency removal proceeding" to "save Harley Grace," a content-generating storyline aimed at convincing his audience that Ms. Preston's adopted-at-birth four-year-old daughter is living in such dangerous conditions that strangers must step up to rescue from her mother so she can be placed with a biological relative of the child's birth father whom she has never met. It has resulted in thousands of fans of "WhatTheHales" calling for

Ms. Preston's child to be taken from her, a horrifying experience created by the plaintiff for content.

The Court may take judicial notice of these videos, which are publicly available on YouTube at the following link:

https://www.youtube.com/@WhatTheHales/videos

The videos of Ms. Preston's January 16, 2024 state court TRO action deposition begin on September 5. On September 6, 7 and 8 the plaintiff brags that he will "force" a number of individuals, including from out-of-state, to come to Levy County, Florida to give depositions in the present case, including journalists and others who criticize the plaintiff on social media for his attacks on Ms. Preston and Mr. Cook.[4]

### Conclusion

For the foregoing reasons, the Court should grant the defendants' motion for summary judgment on Counts 1 and 2 and deny any discovery.

---

[4] Undersigned counsel has placed the plaintiff's counsel on notice of the duty to ensure all such videos are preserved as evidence for Ms. Preston's and Mr. Cook's own claims (whether as counterclaims in this action or in a newly filed action as proper plaintiffs) for, *inter alia*, cyberstalking, cyberbullying, harassment, defamation, invasion of privacy, and other state law and federal causes of actions including civil RICO.

Defendants Preston and Cook, by:

*/s/ Bruce Matzkin*
Bruce Matzkin, Esq., *pro hac vice*
51 Pleasant Street, # 72
Malden, MA 02148
857-242-8614
Brucematzkin1@gmail.com

## CERTIFICATION

I hereby certify that on September 9, 2024, a copy of the foregoing was emailed to counsel of record for the plaintiff:

Randall Shochet, Esq
Shochet Law Group
Attorneys for Jeremy B. Hales
409 N. Main Street Trenton, FL 32693
rshochet@shochetlaw.com
attorneys@counsel.insure


*/s/ Bruce Matzkin*