**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

JEREMY BRYAN HALES,

      Plaintiff,

v.                                                                  Case No.:1:24-cv-00045-AW-ZCB

LYNETTE MICHELLE
LACY ALEXIS PRESTON
and
JOHN COOK,

      Defendants.

_____/

**<u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO</u>**
**<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

      JEREMY BRYAN HALES, ("Plaintiff" or "Mr. HALES"), by and through the

undersigned counsel, responds to the Motion for Summary Judgment (hereinafter,

the "Motion") filed by Defendants LYNETTE PRESTON ("Ms. PRESTON") and

JOHN COOK ("Mr. COOK") as follows. This response in opposition to the Motion

will show the existence of genuine disputes of material fact which precludes the

entry of summary judgment in favor of Ms. PRESTON and Mr. COOK on Count 1

and Count 2 of Mr. HALES's Complaint.

      This Response is supported by (1) the Affidavit of Diane Peterson (**Exhibit**

**"1"**), (2) the Affidavit of Therese Granger (**Exhibit "2"**), (3) the Affidavit of -

Stephen Granger (**Exhibit "3"**), (4) the Affidavit of Zim Padgett (**Exhibit "4"**), (5)

the Affidavit of Jeremy Hales (**Exhibit "5"**), (6) the Affidavit of Records Custodian

(**Exhibit "5-1"**), and the Affidavit of  Melissa Lemmerman (**Exhibit "6"**) (copies

being attached hereto.

## <u>INTRODUCTION</u>

The  Defendants  are  wrong,  both  legally  and  as  a  matter  of  fact,  in  their

contentions that that there is no genuine dispute as to any material fact on his two

counts for **Defamation Per Se** (Counts 1 and 2).

As this Court has already noted, when denying Defendants' previous Motions

to Dismiss:

> Defendants  have  allegedly  engaged  in  a  public   and
> coordinated campaign to ruin Plaintiff's successful social
> media business by, among other things, repeatedly (both
> online and in the real world) falsely accusing him of being
> a rapist and a child rapist. There are few accusations that
> could be more harmful to a person than false accusations
> of sexually abusing others—especially children. That is
> particularly  true  when  the  falsely  accused  person's
> business and source of income are directly tied to the
> number of people who view, support, and subscribe to his
> social media content. It is not difficult to see how being
> falsely accused of raping children (along with the other
> defamatory statements Defendants have allegedly made)
> could  cause  Plaintiff  to  suffer  damages  in  excess  of
> $75,000. *See, e.g.*, *Moore v. Senate Majority PAC*, No.
> 4:19-cv-1855, 2023 WL 7220943, at *1 (N.D. Ala. Sept.

29, 2023) (refusing to set aside $8.2 million defamation jury verdict where the defendant falsely stated in public advertisements that the plaintiff had solicited underage girls for sex); *Lustig v. Stone*, No. 15-20150, 2019 WL 11660556, at *4 (S.D. Fla. Apr. 29, 2019) (awarding the plaintiff $700,000 in damages for defamation where the defendant referred to the plaintiff publicly as "an adult predator and like a child molester" who had masterminded an "attempted pre-meditated murder"). **ECF No. 14 pp. 12-13**.

As will be shown, there is ample evidence that Ms. PRESTON and Mr. COOK published these and other false statements about Mr. HALES to third parties, that (1) were calculated to defame or diminish the reputation of Mr. HALES in his immediate community and within his capacity, (2) were made with knowledge or their falsity or with reckless disregard as to their veracity, (3) impute to Mr. HALES behavior or characteristics that are incompatible with the proper conduct of his business, profession, and office, and/or (4) impute to Mr. HALES the commission of a crime.

For these reasons, Mr. HALES respectfully submits that summary judgment in favor of Ms. PRESTON and Mr. COOK must be denied.

## **LEGAL STANDARDS**

Under Rule 56 of Federal Rules of Civil Procedure:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56.

To prevail on a motion for summary judgment, the moving party has the heavy burden of establishing that there are no genuine issues of material fact and must identify those portions of the record that "demonstrate the absence of a genuine issue of material facts." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Further, the moving party has the initial responsibility of establishing that the nonmoving party has failed to offer sufficient evidence to support a valid legal claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Additionally, a court must construe all inferences in favor of the nonmovant. "Where a reasonable fact finder may 'draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment.'" *Lawrence v. Courtyards at Deerwood Ass'n,* 319 F. Supp. 2d 1133, 1139 (S.D. Fla. 2004) (quoting *Baifield v. Brierton*, 883 F.2d 923, 933-34 (11th Cir. 1989)).

In a defamation action, summary judgment is almost always inappropriate, except in those rare cases where the circumstances surrounding the allegedly defamatory communication are completely undisputed. *See, e.g., Shaw v. R.J. Reynolds Tobacco Co.*, 818 F. Supp. 1539, 1541 (M.D. Fla. 1993), *aff'd,* 15 F.3d 1097 (11th Cir. 1994); *Abraham v. Baldwin*, 42 So. 591, 592 (Fla. 1906); *Glynn v. City of Kissimee,* 393 So. 2d 774. 776 (Fla. 5th DCA 1980). That is not even close to being the case here where Defendants offer nothing more than a barebones allegation that Plaintiff "can't prove it." Yes, it is true that Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts" and he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable factfinder could find in his favor. *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). The mere existence of a scintilla of evidence in support of Plaintiff's position will be insufficient to establish a genuine dispute. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

A fact is "material" if it might affect the outcome of the case under the governing substantive law. *Anderson,* 477 U.S. 242 at 248. A dispute is "genuine"

if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id*.

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250.

But the non-moving party "need only produce appropriate evidence demonstrating that there is a pending dispute of material fact." *See Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003) This is because "[s]ummary judgment cannot be used to resolve swearing contests between litigants," nor should summary judgment resolve issues of credibility. *Id*. at 770, 773.

<u>**MATERIAL FACTS IN OPPOSITION**</u>

I.    **Ms. PRESTON's Defamatory Statements**

Ms. PRESTON:

- Posted "this man [Mr. HALES] has bullied our town clerk into a stroke." Published to Mr. Hales' Ohio mayor's office To: Nancy Holdsworth admin@villageofpeninsula-oh.gov, attached hereto as **Exhibit "7."**

- Posted "Everything that he [Mr. HALES] has said about the people in Otter Creek is a lie." *Id*. at page 1.

- Posted "I sent [Mr. HALES's Ohio Mayor] a clip of the video of Jeremy calling John the filthy gay names that he did so that that mayor was aware of who he was bringing in his life and office." See **Exhibit "8."**

- Posted "[Mr. HALES's Ohio Mayor]'s response was I guess that he would say the same thing if somebody was mean to him, but John didn't attack Jeremy Jeremy attacked John Jeremy was screaming at John you can see that from the beginning of the video. It just shows that that mayor is **just as corrupt and just as bad as Jeremy**…" See **Exhibit "9."**

- Posted "I feel it's only fair since he is broadcasted (sic) my married names out there to the world and where I live, and what he thinks are the truths about me that are nowhere near the truth I figured the least I can do is you know let y'all know where he lives and what Martha's real name is I mean why keep lying about it Jeremy." Published on Facebook, a copy being attached hereto as **Exhibit "10."**

- Posted on a "GoFundMe" on September 13, 2024, "Hi, most people that are going to read this are going to know exactly who I am, I am Lynette Preston. I go by Michele as that's what I've been called my entire life by my mother and my family. As you all know, **I am being stalked**. (emphasis in original) It's been going on for over 2 and a half years. It has taken its toll on Harley Grace and myself, as well as John who doesn't deserve to be where he is and we will prove it. We all are hurting inside and now my grandson's life is also being destroyed, and all for views on YouTube so this stalker monster can get rich off of hurting people that he feels are beneath him in every way. I need to get John an attorney to fight this set up and show the world the truth. The three of us all need prayers and help. This has cost me so much, not only in legal fees, but in so many other ways. Making sure we don't get donations of food for our Tortoise rescue and making sure they keep us in court for made up staged unreal garbage, filing so much garbage slowing down the case so that they make more money off of us." See **Exhibit "11,"** a copy being attached hereto. It should be noted that Ms. PRESTON's claim that "she is being stalked (and that it's been going

on for over 2 1/2 years)" was made on September 13, 2024 - nine days *after* she voluntarily dismissed her petition against Mr. HALES *allegedly* for cyberstalking, in which she had received a temporary injunction for protection against this alleged cyberstalking. See **Exhibit "12,"** a copy being attached hereto.

- Posted "**John has the perfect plan to take down his _YouTube fag man_** and **_his sand nigger wife_** it's too good we have a friend getting out of jail and he is going to do work for us plus he and a jail friend [p]ut a tracker in his truck and trailer like the exact kind the Fbi (sic) uses and once we find Hales head quart is (sic) - John and his jail friend are gonna go there when YouTube Is (sic) in Florida Jeremy almost ran over are (sic) sweet little baby and John chased him down and he was ready to beat Jeremy up but bitch boy had his slave call 911 and we had to put a restraint order on them…," published on Facebook, a copy being attached hereto as **Exhibit "13."**

- Posted "We decided to wait until she could come here and do it in person but right now I'm waiting for the injunction to see if the judge is going to give it to me Jeremy's paid video where you can pay to be a higher subscriber and then you get special videos **_they're (sic) evil he is a cult leader he tells them that God is telling him that it is time to kill and bring death to the evil messenger and that is the Bad Neighbors [- me -]_** you have to hear it it's freaking unbelievable what he is saying it is so freaking scary that it I don't even know what to think so I ran to the courthouse this morning." See **Exhibit "14,"** a copy being attached hereto.

- Posted "TeamYouTube on X this is where you can report all of his videos. They've already been turned in a couple times and someone I guess just sent this to me and said that they've been talking to these people and that they are looking into shutting him down so the more people that turn in his videos the better off will be these last things that he just did our unconscionable. He is now screenshotting (sic) no they're using. What's it called when they take pictures and stuff they're doing that copying and pasting things in and out of post to make it look

like we're creating hate speech that we are not there it's not they're not our post. They're fake. I am I (sic) I've already talk (sic) to the to the (sic) sheriff this morning I've already talk to the judge Friday we're going to the court on Monday morning to see if we can get our court date turned into a temporary order. This is (sic) got to stop now they're trying to Baker Act John and I and they say that's how they're going to get our kid away from us this is (sic) gone too far. See **Exhibit "15,"** a copy being attached hereto.

AND

- Ms. PRESTON handwrote several double-sided road signs defaming Mr. HALES that were placed and seen on the public roadsides of Otter Creek, Florida – specifically stating (1) "Stop Jeremy Hales No Rapists in Levy Co!", (2) "Stop Jeremy Hales! No Rapists in Levy Co!", (3) "Jeremy Hales Needs to Go! No Child Rapists in Levy Co!", (4) ""Jeremy Hales Needs to Go! No Child Rapists in Levy Co!", (5) "Jeremy Hales Ohio Rapist" and (6) "Jeremy Hales Ohio Rapist."

This is because on Sunday morning, May 14, 2023, around 7:15 AM, Mr. Stephen Granger was driving to work from his home in Otter Creek Florida to the US post office located in Chiefland, Florida. See **Exhibit "3,"** S. Granger Aff. at ¶ 3; **Exhibit "2,"** T. Granger Aff. at ¶ 3.

Both Stephen Granger and Therese Granger (his wife) were travelling north on SW 3rd Street at the intersection of State Road 24. That corner intersection is a campground property and there is a "Shady Oaks Campground" sign at that intersection. Both Grangers saw two (and stopped their car to pick up) handwritten road signs at that intersection of State Road 24 (and SW 3rd Street) that were staked

on the grass for all traffic to see. One sign said "JEREMY HALES OHIO RAPIST" and the other sign said "JEREMY HALES NEEDS TO GO! NO OHIO RAPISTS IN LEVY CO!" S. Granger Aff. at ¶ 4; T. Granger Aff. at ¶ 4. Both Stephen Granger and Therese Granger took pictures of themselves loading these two signs into the back of their jeep. S. Granger Aff. at ¶ 1-10, pages 20-21; T. Granger Aff. at ¶ 1-10, pages 20-21.

And on that same Sunday morning, May 14, 2023, Mr. Zim Padgett was riding his golf cart on the side of the road on US Highway 19, near its intersection with State Road 24, collecting several handwritten road signs on US Highway 19 that had been staked on the grass for all traffic to see. See **Exhibit "4,"** Padgett Aff. at ¶ 1-5, pages 4-25. All of these handwritten signs had derogatory comments about Mr. HALES (hereinafter, the "DEROGATORY ROAD SIGNS"). S. Granger Aff. at ¶ 1-10, pages 4-25; T. Granger Aff. at ¶ 1-10, pages 4-25; Padgett Aff. at ¶ 1-9, pages 4-25.

Stephen Granger and Therese Granger then proceeded to make a left turn to US Highway 19 when they saw Mr. Zim Padgett on a golf cart also collecting more of the DEROGATORY ROAD SIGNS that were staked in the grass – and all of the DEROGATORY ROAD SIGNS had derogatory comments about Jeremy Hales. S.

Granger Aff. at ¶ 7; T. Granger Aff. at ¶ 7; Padgett Aff. at ¶ 1-9, pages 4-25. Stephen Granger stopped his car and spoke personally with Mr. Zim Padgett and gave him the DEROGATORY ROAD SIGNS that Stephen Granger and Therese Granger collected and asked Mr. Zim Padgett to deliver them all of the DEROGATORY ROAD SIGNS to Mr. HALES at his schoolhouse property, along with the DEROGATORY ROAD SIGNS that Mr. Padgett was collecting. Mr. Padgett agreed and Stephen Granger and Therese Granger then proceeded to go to work at the United States Post Office in Chiefland, Florida that day. S. Granger Aff. at ¶ 8; T. Granger Aff. at ¶ 8; Padgett Aff. at ¶ 1-9, pages 4-25.

Mr. Zim Padgett then delivered all of the DEROGATORY ROAD SIGNS to an agent of Mr. HALES at his schoolhouse property on State Road 24 in Otter Creek, Florida.

Certified Forensic Document Examiner and Handwriting Expert Witness Dianne Peterson, CFDE, (www.ForensicDocumentInvestigations.com) examined the handwriting (i.e., the handwritten print (not script) on several of the DEROGATORY ROAD SIGNS, and compared them with known documents containing Ms. PRESTON's handwriting – specifically 12 of Ms. PRESTON's handwritten court filings in the very same case that she filed against Mr. HALES for

temporary injunction for cyberstalking. See **Exhibit "1,"** Peterson Aff. at ¶ 1-5, pages 6-44.

Certified Forensic Document Examiner and Handwriting Expert Witness Dianne Peterson's professional opinion is that **Ms. PRESTON handwrote the double-sided DEROGATORY ROAD SIGNS** which state:

- **"Stop Jeremy Hales No Rapists in Levy Co!"**

- **"Stop Jeremy Hales! No Rapists in Levy Co!"**

- **"Jeremy Hales Needs to Go! No Child Rapists in Levy Co!"**

- **"Jeremy Hales Needs to Go! No Child Rapists in Levy Co!"**

- **"Jeremy Hales Ohio Rapist"** and

- **"Jeremy Hales Ohio Rapist."**

*Id*.

In July, 2023, Ms. PRESTON posted in her private Facebook group and

(1) admitted that ***Mr. COOK posted the DEROGATORY ROAD SIGNS*** around Otter Creek, Florida. See **Exhibit "6,"** Lemmerman Aff. at ¶ 1-7);

(2) denied she posted ***the DEROGATORY ROAD SIGNS*** around Otter Creek, Florida. (*Id*.);

(3) admitted that Mr. COOK is verbally and emotionally abusive (*Ibid*.); and

(4)  encouraged all of her Facebook members to report all of Mr. HALES's

YouTube videos to YouTube (*Ibid*.)

## II.   Mr. Cook's Defamatory Statements

Mr. COOK:

- Is the administrator of a Facebook private group called "Otter Creek. Jeremy Hales, Coward of Levy County," a group for "Ex fans of what the hales," See **Exhibit "16,"** a copy being attached hereto.

- Posted: Martha (Mr. Hales' co-host of "What the Hales" and long-term girlfriend) was "very Angry with jeremy for sleeping with Jamie Johnson she simply did me a favor and I happen to have my phone camera on. And the vice mayor rapes children;" so "Jeremy would you like me to post the picture of my cock in martha's mouth You can't take this one down;" then THREE additional follow up statements (1) "Jeremy I'm still going to post a picture of my c in martha's mouth;" (2) "Jeremy I'm still going to Post a picture of my c in martha's mouth;" and (3) "Is this all you can come up with is repeats? "I have a picture of my c*** in Martha's mouth. Can I post it?" See **Exhibit "17,"** a copy being attached hereto.

- In April 2023, Mr. COOK posted online a large collection of sex toys and stated that Mr. HALES was selling them. **ECF No. 8 p. 3 ¶ 14.**

- Posted: "Angela Gleason – He makes his followers do his dirty work that's why we call him a coward of Levy County." See **Exhibit "18,"** a copy being attached hereto.

- Posted on his Facebook group "Otter Creek, Jeremy Hales, Coward of Levy County": "Jill I just wrote your grandson Zac and told him how your helping a utuber (sic) to destroy a disabled woman's and disabled child life. more letters going to more family members. welcome to the page have some fun." See **Exhibit "16,"** a copy being attached hereto.

- Posted: "I believe I've heard from a very reliable source that the reason [MR. HALES AND MARTHA] went to Egypt was to recruit some of George/Martha's family. To bring them into otter creek **because they want to make the arc (sic) into a radical muslim mosque** making Martha happy to have her family here. So they can always scream racist people are bothering them." See **Exhibit "19,"** a copy being attached hereto.

- Posted: "Bottom line is [Mr. HALES] hates the lgbtq community." See **Exhibit "20,"** a copy being attached hereto.

- Posted: "Jeremy Hard at work, wasting taxpayers dollars. I wonder if he had to pay out of his own pocket. He would do this stuff, but all the money he has. He gets from mooching of his sheep." See **Exhibit "21,"** a copy being attached hereto.

- Posted: "Jeremy hales slides Down (sic) in his chair like a scolded dog. At the board meeting, after Gail the board member stands up and says where all the garbage is coming from. And it proves The (sic) coward is a liar He could not put on one of his rants on It because it would make him look like shit. But his stupid fucking fans will keep believe in it because most of them are fat, old, ugly women with no life." See **Exhibit "22,"** a copy being attached hereto.

- Posted "…We're gonna get David some more viewers. And any other youtuber Who helps us clear up the lies jeremy is spreading about us and the town… Well one thing for sure the The (sic) other youtube Are saying that jeremy is on drugs, which is which is very possible Because because (sic) he's best bud (sic) up north in Ohio It (sic) is getting divorced because of his drug habit. And when he hurt his foot. They're saying he got addicted to opiates and Mixes them with alcohol." See **Exhibit "23,"** a copy being attached hereto.

- Posted "they turned him down after receiving hundreds of videos of him going is (sic) homophobic. The lgbtq are very pissed off at him and

there's millions of them wait till they go after Jeremy and his sheep and trolls." See **Exhibit "24,"** a copy being attached hereto.

- Posted "the coward of Levy County is being served A (sic) no contact order or harassmand (sic) order against him. But hes (sic) hiding on his property behind. Lock gates and a camera to not get served. Jeremy hales is a f****** p**** He brags about serving people and doing everything to them. But when hes (sic) starting to get nailed, he is a Coward and hinds (sic). See **Exhibit "25,"** a copy being attached hereto.

## ARGUMENT

## DEFENDANTS' STATEMENTS ARE PER SE DEFAMATORY

**(1) The DEROGATORY ROAD SIGNS Are *Per Se* Defamatory**.

The DEROGATORY ROAD SIGNS are *per se* defamatory. This is conceded to by the Defendants.[1] A statement is *per se* defamatory if "it imputes to another (a) a criminal offense amounting to a felony, or (b) a presently existing venereal or other loathsome and communicable disease, or (c) conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession, or office, or (d) the other being a woman, acts of unchastity. *Campbell v. Jacksonville Kennel Club, Inc*., 66 So. 2d 495, 497 (Fla. 1953) (proof of general or special damages is unnecessary where the words are actionable per se).

---

[1] Defendants assume that each statement in the DEROGATORY SIGNS "calling the plaintiff a child rapist" "is a false statement of fact and that it is defamatory per se." ECF No. 20 p. 9.

Per se defamatory statements are "so obviously defamatory" and "damaging to [one's] reputation" that they "give[] rise to an absolute presumption both of malice and damage." *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973) (alterations added; citation omitted); *see also Campbell v. Jacksonville Kennel Club, Inc.*, 66 So. 2d 495, 497 (Fla. 1953) (proof of general or special damages is unnecessary where the words are actionable per se). As this Court has already noted when denying Defendants' previous Motions to Dismiss:

> Defendants have allegedly engaged in a public and coordinated campaign to ruin Plaintiff's successful social media business by, among other things, repeatedly (both online and in the real world) *falsely accusing him of being a rapist and a child rapist.* There are few accusations that could be more harmful to a person than false accusations of sexually abusing others—especially children. That is particularly true when the falsely accused person's business and source of income are directly tied to the number of people who view, support, and subscribe to his social media content. It is not difficult to see how being falsely accused of raping children (along with the other defamatory statements Defendants have allegedly made) could cause Plaintiff to suffer damages in excess of $75,000. *See, e.g.*, *Moore v. Senate Majority PAC*, No. 4:19-cv-1855, 2023 WL 7220943, at *1 (N.D. Ala. Sept. 29, 2023) (refusing to set aside $8.2 million defamation jury verdict where the defendant falsely stated in public advertisements that the plaintiff had solicited underage girls for sex); *Lustig v. Stone*, No. 15-20150, 2019 WL 11660556, at *4 (S.D. Fla. Apr. 29, 2019) (awarding the plaintiff $700,000 in damages for defamation where the

> defendant referred to the plaintiff publicly as "an adult
> predator and like a child molester" who had masterminded
> an "attempted pre-meditated murder"). **ECF No. 14 pp.
> 12-13**.

A statement is *per se* defamatory if "it imputes to another (a) a criminal

offense amounting to a felony, or (b) a presently existing venereal or other loathsome

and communicable disease, or (c) conduct, characteristics, or a condition

incompatible with the proper exercise of his lawful business, trade, profession, or

office, or (d) the other being a woman, acts of unchastity. *Campbell v. Jacksonville*

*Kennel Club, Inc.*, 66 So. 2d 495, 497 (Fla. 1953) (proof of general or special

damages is unnecessary where the words are actionable per se). "The significance of

the classification of a communication as actionable *per se* lies in the fact that its

victim need not plead or prove malice (except where a privilege is involved) or

special damage because malice and the occurrence of damage are both presumed

from the nature of the defamation." *Wolfson v. Kirk*, 273 So. 2d 774, 777 (Fla. 4th

DCA 1973) citing *Sharp v. Bussey*, 137 Fla. 96 (Fla. 1939). "Such a presumption is

not an ordinary presumption of fact, but is a presumption of law and is not, therefore,

dispelled by the production of evidence." *Id*. Given the facts presented in this

Response, there are two applicable grounds for Mr. HALES to proceed under

defamation *per se* – these are the statements by PRESTON and COOK that (1) accuse a person of a felony or (2) impugn a person's trade or profession.

Defendants' claim "there is no evidence the [DEROGATORY SIGNS] were 'placed around the roads surrounding [Mr. HALES' property] in Levy County, Florida." **ECF No. 20, p. 3 ¶ 3**.[2] But the materials cited *supra* (and in the record) show that the DEROGATORY SIGNS were written by Ms. PRESTON and posted by Mr. COOK around the roads surrounding Mr. HALES' property in Levy County Florida.

Defendants' then claim "assuming the plaintiff could somehow produce evidence creating genuine issues of fact as to whether either of the defendants wrote the [DEROGATORY SIGNS] and whether the [DEROGATORY SIGNS] were 'placed around the roads surrounding [Mr. HALES' property] in Levy County, Florida.' There is no evidence anyone ever saw the [DEROGATORY SIGNS]." **ECF No. 20, p. 3 ¶ 3**. The materials cited *supra* (and in the record) show that the

---

[2] In the lower right-hand corner of their "Memorandum in Support" Defendants falsely label – either intentionally or negligently – this document as an "Affidavit." ECF No. 20, p. 3. "Affidavit" means "[a] voluntary declaration of facts written down and *sworn to* by the declarant *before an officer authorized to administer oaths*." Black's Law Dictionary 66 (9th ed. 2009) (emphasis added). Defendants should know better because their "Memorandum in Support" is clearly not an "Affidavit" - it is unsworn and not even signed by Ms. PRESTON nor Mr. COOK.

DEROGATORY SIGNS **were seen** by Mr. Stephen Granger, Ms. Therese Granger and Mr. Zim Padgett around the roads surrounding Mr. HALES' property in Levy County Florida.

Defendants' then claim "in addition to having no evidence that the defendant wrote the [DEROGATORY SIGNS], the plaintiff also cannot produce evidence that the signs were ever posted 'around the roads surrounding [Mr. HALES' property],' or how they were displayed. Nor can the plaintiff produce evidence there anyone saw the signs while posted and before being removed." **ECF No. 20, p. 10**. The materials cited *supra* (and in the record) show that the DEROGATORY SIGNS were seen while posted and before being removed around the roads surrounding Mr. HALES' property in Levy County Florida by Mr. Stephen Granger, Ms. Therese Granger and Mr. Zim Padgett.

Defendants' then conclude that "[b]ecause the plaintiff can produce no evidence the defendants made the defamatory statements by writing the signs, and also because the plaintiff can produce no evidence of publication, his defamation claims fail as a matter of law." *Id*. The materials cited *supra* (and in the record) show evidence of publication because they show Defendants wrote and/or posted the DEROGATORY SIGNS which **were seen** by Mr. Stephen Granger, Ms. Therese

Granger and Mr. Zim Padgett around the roads surrounding Mr. HALES' property in Levy County Florida in May, 2023. Because the statements on the DEROGATORY SIGNS accusing Mr. HALES of a felony – child rape - are undoubtedly false and indisputably published in this district Defendants have falsely imputed to Mr. HALES a criminal offense amounting to a felony. This means the statements on the DEROGATORY SIGNS accusing Mr. HALES of a felony – child rape – are *per se* defamatory. *Campbell v. Jacksonville Kennel Club, Inc*., 66 So. 2d 495.

The statements were also intended to harm Mr. HALES' trade and profession because they impute conduct incompatible with the proper exercise of Plaintiff's Lawful Business, Trade, and Profession. The materials cited *supra* (and in the record) show Defendants have, as characterized by this Court "engaged in a public and coordinated campaign to ruin Plaintiff's successful social media business by, among other things, repeatedly (both online and in the real world) *falsely accusing him of being a rapist and a child rapist.* There are few accusations that could be more harmful to a person than false accusations of sexually abusing others—especially children. That is particularly true when the falsely accused person's business and source of income are directly tied to the number of people who view,

support, and subscribe to his social media content. It is not difficult to see how being falsely accused of raping children (along with the other defamatory statements Defendants have allegedly made) could cause Plaintiff to suffer damages in excess of $75,000."

### *(2)* **The** *Defendants' Statements Imputed Conduct Incompatible With The Proper Exercise Of Plaintiff's Lawful Business, Trade, and Profession*

The materials cited *supra* (and in the record) show because Plaintiff is also known for and relies on his virtues in order to receive subscribers for What The Hale$ and all of his professional social media platforms - providing ongoing programs and maintaining relationships and goodwill with them and because Plaintiff relies on his virtues as his reputation will determine the amount of subscribers for What The Hale$ and all of his professional social media platforms, the statements on the DEROGATORY SIGNS accusing Mr. HALES of a felony – child rape - affect Plaintiff in his trade and profession.

Therefore, the statements on the DEROGATORY SIGNS accusing Mr. HALES of a felony – child rape - imputed conduct incompatible with the proper exercise of Plaintiff's lawful business, trade, and profession. *Wolfson*, 273 So. 2d at 778 (concluding defamatory statement was actionable per se because it characterized plaintiff, a financier/businessman, as a "person with whom commercial relations

were undesirable," and as such, was incompatible with plaintiff's ability to conduct a lawful business).

Moreover, the materials cited *supra* (and in the record) not involving the DEROGATORY SIGNS show because Plaintiff is also known for and relies on his virtues in order to receive subscribers for What The Hale$ and all of his professional social media platforms - providing ongoing programs and maintaining relationships and goodwill with them and because Plaintiff relies on his virtues as his reputation will determine the amount of subscribers for What The Hale$ and all of his professional social media platforms, the other posted statements of both Ms. PRESTON and Mr. COOK not related to the DEROGATORY SIGNS accusing Mr. HALES of a felony – child rape – also affect Plaintiff in his trade and profession. These include, without limitation, stating that Mr. HALES "Bullied our town clerk into a stroke," "everything he says is a lie about the people in Otter Creek." Mr. HALES is "corrupt," Mr. HALES is a "stalker monster," Mr. HALES is a "cult leader," Mr. HALES has stalked Ms. PRESTON "going on for over 2 and a half years," Mr. HALES is a "fag man" with a "sand nigger wife," Mr. HALES "went to Egypt was to recruit some of George/Martha's family. To bring them into otter creek ***because they want to make the arc (sic) into a radical muslim mosque***," Mr.

HALES is selling a "large collection of sex toys" online, Mr. HALES is "homophobic" and "hates the LGBTQ community," and Mr. HALES is "addicted to opiates and mixes them with alcohol."

To find defamation *per se* under this theory, a question of fact arises as to whether a statement is capable of a defamatory meaning. *See Ragano v. Time, Inc*., 302 F. Supp. 1005, 1010 (M.D. Fla. 1969). In *Ragano*, the district court explained that on a motion for summary judgment it is only necessary for the court to "determine whether or not the [statement's] characterization is reasonably capable of a defamatory meaning[,]" and if so, then the jury should determine whether the statement is actually defamatory. *Id. Cf. Belli v. Orlando Daily Newspapers, Inc*., 389 F.2d 579, 583 (5th Cir. 1967)) (alterations added; footnote call number omitted) ("[T]he jury determines whether language imputes to another conduct, characteristics or a condition incompatible with the proper conduct of his business, trade, profession or office.") (alteration added).

## CONCLUSION

Mr. HALES has presented triable issues of fact as to all of the elements of defamation per se (Counts 1 and 2). This means that summary judgment should be denied as to Counts 1 and 2.

Respectfully submitted,

SHOCHET LAW GROUP
Attorneys for Jeremy B. Hales
409 N. Main Street
Trenton, FL 32693
(352) 354-4518


By: /s/ *Randall Shochet*
Randall Shochet, Esq.


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 29, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served on this day on all counsel of record, via email to the Service List below.

By: /s/ *Randall Shochet*
Randall Shochet, Esq.


## SERVICE LIST

Bruce Matzkin, Esq., pro hac vice
Attorneys for PRESTON and COOK
51 Pleasant Street, # 72
Malden, MA 02148
Brucematzkin1@gmail.com