## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

### Case No.:1:24-cv-00045-AW-ZCB

JEREMY BRYAN HALES,

     Plaintiff,

v.

LYNETTE MICHELLE LACY ALEXIS PRESTON
JOHN COOK, BRUCE P. MATZKIN, LISA WEEKS
a/k/a LISA LEE a/k/a LISA RAPUZZI a/k/a LISA LEE RAPUZZI
a/k/a LISA RAPUZZI WEEKS, MARLA HUGHES, PATTI DIAGOSTINO
PLUMMER a/k/a STEPHEN R. HOUCK a/k/a PATTI MARIE DAGOSTINO
a/k/a PATTI PLUMMER, DAVID C. HELM, and ROBERT J. KESZEY,

     Defendants.

_____/

### <u>AMENDED COMPLAINT</u>

Plaintiff JEREMY B. HALES (hereinafter, "HALES"), by and through undersigned counsel, brings this complaint against Defendants LYNETTE MICHELLE LACEY ALEXIS PRESTON (hereinafter, "PRESTON"), JOHN COOK (hereinafter, "COOK"), BRUCE P. MATZKIN (hereinafter, "MATZKIN"), and LISA WEEKS a/k/a LISA LEE a/k/a LISA RAPUZZI a/k/a LISA LEE RAPUZZI a/k/a LISA RAPUZZI WEEKS, (hereinafter, "WEEKS"), MARLA HUGHES (hereinafter, "HUGHES"), PATTI DIAGOSTINO PLUMMER a/k/a STEPHEN R. HOUCK a/k/a PATTI MARIE DAGOSTINO a/k/a PATTI PLUMMER (hereinafter, "PLUMMER"),

DAVID C. HELM (hereinafter, "HELM"), and ROBERT J. KESZEY (hereinafter, "KESZEY") (collectively, "Defendants"), and states:

## SUMMARY OF THE CASE

1.      This is a case about (1) the use of threats or extortion to compel HALES to behave in a certain manner and/or to persuade HALES to provide PRESTON and COOK with benefits, (2) Defamation *Per Se* with a Civil Conspiracy for  Defamation *Per Se* Against  All  Defendants,  (3)  Tortious  Interference  with  Advantageous  Business Relationships  with  a  Civil  Conspiracy  for  Tortious  Interference  with  Advantageous Business  Relationships  Against  All  Defendants,  and  (4)  Aiding  and  Abetting  in committing  tortious  acts,  including  Defamation,  Defamation  *Per Se*,  and  Tortious Interference With Advantageous Business Relationships Against All Defendants.

## THE PARTIES

2.      **Plaintiff Jeremy Hales** is a resident of Summit County, Ohio, who has built his  career  around  his  passions  through  social  media,  including,  without  limitation, Facebook, YouTube, TikTok, Instagram, and other platforms, with a current YouTube subscription fan base of over 700,000 people across the world for his YouTube channel "What The Hale$." People who subscribe with Plaintiff's social media platforms often pay monthly fees to HALES for premium access to HALES' social media platform - which is an "open video diary" of HALES' life. HALES' social media platforms are where people are EDUCATED, EQUIPPED and ENCOURAGED (with a dash of humor

on the Side). HALES has expended and continues to expend substantial time, money, and resources into acquiring subscribers, providing ongoing programs, and maintaining relationships and goodwill with them.

3.      **Defendant Lynette Michelle Lacey Alexis Preston** has resided in Levy County, Florida since October 2021 to date, is a Florida resident, and has been a frequent viewer of HALES' social media platforms since at least 2020.

4.      **Defendant John Cook** has resided in Levy County, Florida since October 2021 to date - on the same property as PRESTON - and as such is a Florida resident in Levy County, Florida, and who is also a viewer of HALES' social media platforms since at least 2020.

5.      **Defendant Bruce P. Matzkin** is a resident of Massachusetts, licensed to practice law in that state, and a frequent participant on many social media platforms, including giving interviews freely, and requesting to be interviewed to a great many channels on YouTube as a media figure.

6.      **Defendant WEEKS** is a resident of Florida, who is a host and/or operator of a YouTube channel called "Two Lee's In A Pod" (and other social media platforms, including, without limitation, Instagram, Twitch, Discord, and TikTok).

7.      **Defendant David C. Helm** is a resident of Michigan, licensed to practice law in that state, who operates a YouTube channel with a current YouTube subscription

fan base of over 3,000 people - "MLS (Making Law Simple)" - where he refers to himself as "God of Law" – all as a media figure.

8.    **Defendant Robert J. Keszey** is a resident of Florida who operates a YouTube channel with a current YouTube subscription fan base of over 65,000 people - "Get Swamped" - as a media figure.

9.    **Defendant Marla Hughes** is a resident of Florida, who is friendly with PRESTON.

10.    **Defendant PLUMMER** is a resident of Florida, who is friendly with PRESTON.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this matter under 28 U.S.C. § 1332, and 28 U.S.C. § 1367(a).

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## THE GENESIS AND BACKGROUND OF DEFENDANTS' MISCONDUCT

13.    PRESTON, at all times prior to 2020, was a viewer of "What The Hale$."

14.    On or about May 18, 2020, PRESTON started her own YouTube channel.

15.    In December 2020, PRESTON learned through watching "What The Hale$" that HALES purchased land for part-time operations of his social media platforms in Otter Creek, Florida.

16.    PRESTON saw this as a "golden opportunity" in order to take advantage of HALES's generosity - demonstrated through his social media platforms.

17.    Accordingly, PRESTON came up with an idea about how she will get money from HALES, and that idea was to move her residence to be as close to HALES as possible in Otter Creek, Florida. PRESTON confirmed this in discussions with Jamie Starr Johnson.

12.    In 2020, PRESTON and COOK resided together in North Port, Sarasota County, Florida.. where they created multiple local Sarasota County Facebook pages, asking for donations to PRESTON's 501(c)(3) "It's a Shell Thing" – a purported "tortoise rescue" not open to the public.

13.    On or about July 17, 2021, PRESTON drove from North Port, Florida to a vacant lot across the street from HALES' property in Levy County Florida (hereinafter, the "VACANT LOT ACROSS THE ROAD"), taking a "fan picture" with Jamie Starr Johnson by the entrance to HALES' property where his "drive-thru sign" was publicly known to be located. Posting this "fan picture" to her social media, PRESTON *falsely* stated (1) she had bought the VACANT LOT ACROSS THE ROAD, and (2) that HALES was now her "new neighbor." See **Exhibit "1."**

14.    On the same July 2021 visit, PRESTON told HALES she was a "super fan" of his and asked him if he could help remove a tree from the VACANT LOT ACROSS THE ROAD (which she did not even own in July 2021), and HALES, not knowing that

PRESTON was lying and believing her lies that she was the owner of the VACANT LOT ACROSS THE ROAD (which she did not even own in July 2021), personally used his tractor to move the tree from the VACANT LOT ACROSS THE ROAD (which she did not even own in July 2021).

15.    On or about July 21, 2021, PRESTON and COOK listed their North Port, Florida house for sale.

16.    On or about October 8, 2021, PRESTON and COOK bought the same vacant lot across the street from HALES' property in Levy County Florida, that she visited in July, 2021.

17.    On or about October 27, 2021, PRESTON and COOK sold their North Port, Florida house.

18.    Between December 2021 and February 2023 both PRESTON and COOK created multiple local Levy County Facebook pages, asking for donations to PRESTON's 501(c)(3) "It's a Shell Thing" – a purported "tortoise rescue" not open to the public.

19.    Between December 2021 and February 2023 PRESTON made it clear to HALES that she was a fan of HALES and would on occasion ask HALES for "free merchandise," stating that she needed money to pay her bills.

20.    On or about February 12, 2023 HALES relented to the constant requests from PRESTON and gave PRESTON two Leap Pads.[1]

21.    On or about February 15, 2023, PRESTON asked HALES if she could attend for free a paid "meet and greet" live event that HALES was having in Levy County Florida - with many of his fans and supporters visiting on site from around the world.

22.    HALES said yes.

23.    On or about February 20, 2023, PRESTON asked HALES if she could bring her own Donation Box for the fans of HALES to the paid "meet and greet" live event.

24.    HALES said no.

## Extortion and Blackmail Begins

25.    Being denied further access to pecuniary advantages they would have if permitted to solicit donations from HALES' fanbase, PRESTON and COOK maliciously begin threatening to do injury to HALES' reputation with intent thereby to extort a pecuniary advantage for themselves.

26.    PRESTON and COOK immediately begin publishing defamatory statements about HALES on their various social media platforms. In May, 2023 for example, PRESTON stated on her social media that she "watched Jeremy Hales' videos till recently," and "Jeremy Hales only thinks about the size of his junk."

---

[1] Leap Pads are kid-friendly tablets that include preloaded content featuring core skills in mathematics, reading and science as well as music, puzzles, logic and creativity to prepare kids for preschool and beyond.

27.    On or about May 1, 2023, HALES went to Ohio with the intention to remain there until the fall of 2023, only returning occasionally for town hall meetings, which occur monthly.

28.    In May 2023, when Hales returned from Ohio for a town meeting, COOK (1) pulled a gun on HALES as HALES was driving by on the public roadway to enter HALES' own property; (2) trespassed in his truck onto HALES' property with a gun, and when HALES confronted him and requested him to leave, COOK told HALES that if he moves one step further, he will see something "go bang"; and (3) maliciously threatened to do injury to HALES' reputation with intent thereby to extort a pecuniary advantage, and accordingly, publicly stated (falsely) on Facebook that HALES' fiancé had oral sex with him, and that he has photographs to prove it.[2]

29.    After HALES left Florida to go back to Ohio in May 2023, PRESTON wrote many double sided road signs and placed them around the roads surrounding HALES' property in Levy County, Florida; these signs falsely stated:

- ***Jeremy Hales Raped my Daughter!***

- ***Jeremy Hales Has to Go! What the Hales?***

- ***Jeremy Hales OHIO Rapist***

_____

[2] COOK posted "Jeremy would you like me to post the picture of my c8ck in Georges (sic) mouth You can't take this one down."

- ***NO OHIO Rapists in Levy County – Stop Jeremy Hales***

- ***Jeremy Hales Needs to Go! No Child rapists in Levy Co!***

- ***Stop Jeremy Hales No Rapists in Levy Co!***[3]

30.     Accordingly, on or about May 23, 2023, HALES hired an attorney who sent a "cease and desist" letter to PRESTON and COOK, which stated, *inter alia*,

> [Y]our unlawful defamatory statements directed to Jeremy Hales on social media platforms constitutes libel under Florida Law. CEASE AND DESIST PUBLISHING ALL DEFAMATORY STATEMENTS… It has come to our attention that you posted defamatory statements regarding Jeremy Hales on various web pages including, but not limited to, Otter Creek friends and neighbors, Otter Creek politics, The Heart of Otter Creek, It's a Shell Thing Inc., as well as other social media platforms…We demand that you immediately (A) cease and desist your unlawful defamation of Mr. Jeremy Hales, Martha, George, What the Hales, and all other variations (including all misspellings and euphemisms such as the youtubers, neighbors, etc.), (B) immediately remove and delete all postings relating to Mr. Hales and his interests, and (C) that you provide us with written assurance within ten (10) days that you will cease and desist from further libel directed to our clients.

31.     On or about May 28, 2023, PRESTON posted on her social media that (1) "I'm gonna stand tall and not let Jeremy Hales hurt me ever again;" (2) I will "put a cap" in the ass of anyone who messes with her; and (3) "I'm done with it you met your match Mr. Hales."

---

[3] In July, 2023, PRESTON posted on her social media that "John posted the signs, not me."

32.     Despite knowing the falsity of their statements, PRESTON and COOK used their defamatory statements to persuade HALES' customers to stop supporting HALES.

33.     As alternative, PRESTON demanded money from HALES and his fans on Facebook:

> I'll say it here FOR ALL [HALES] FANS TO SEE if you are so damn worried about me being abused, and my little girl possibly being abused which she's not. PUT YOUR FRICKING money where your mouth is AND pay [COOK] $65,000.00 so he can walk away AND LEAVE ME IN PEACE.

### Gaming The Malicious Conspiracy To Harm Hales

34.     On June 19, 2023, PRESTON wrote to Ms. Shara Wolf, a Freelance Photojournalist at Freedom Public Press (hereinafter, "Ms. WOLF"), encouraging Ms. WOLF to "cover" her story, and stated:

> Last night's video was so full of lies and bullshit. I'm so glad you decided to take this and ***I know it's going to take time to build it*** but and that's okay cuz (sic) **I want to be able to sue him Shara and I want to be able to win**.

35.     On June 27, 2023, PRESTON stated in a chat, "We need to expose [HALES] he needs to go under. ***I want to see him off YouTube permanently***."

36.     In July, 2023, HALES announced that he would be filing for an injunction against PRESTON and COOK in his home state of Ohio.

37.     On July 2, 2023, PRESTON said to WOLF:

***I need to Sue (sic) this son of a bitch***. I have no clue what jacked his brain and made him come after me except that one George his girlfriend was on our property or Martha (sic) and I made her leave because she told me I should give the baby up for adoption.

38.    On July 5, 2023, PRESTON admitted that COOK had falsely stated on Facebook that HALES's girlfriend had "cancer in her ass." Regarding this, PRESTON told Ms. WOLF:

I can't tell John [COOK] anything. Read his page it's nasty I made him take down the stuff that he wrote about Jeremy's girlfriend, having cancer again in her ass and what he wrote was disgusting and I told him that he needed to take it down

(and then PRESTON provided Ms. WOLF with the now expired link to the Facebook group where COOK made these false statements.)

39.    On July 27, 2023, COOK told Ms. WOLF: "Well, it sounds like we got rid of Martha. She doesn't want to come back now. We just gotta get rid of him [HALES]."

40.    On July 30-31, 2023, COOK told Ms. WOLF:

This is why ***we gotta finish the job on Jeremy***. Just because he gets arrested doesn't mean we stop nailing HIM to a cross. Is that legal? Can we really do that though (sic). All these types you find like this put themselves on a pedestal. Real AH. You seen how he's bragging on how he can't believe God gave him so much wealth. Well, ***he better watch it because God giveth and can also taketh***. He better watch it because now he's creating a bunch of OPPS that will go against him. ***Looks to me the party already has begun. Lots of people now dropping him like a hot potato***. Boys (sic) mouth is so dangerous and this type of talk causes people to get hurt. ***Or gets him hurt***.

41.     On August 8, 2023, COOK stated in a chat, "I'm not worried about him. There's an old saying the older you get. (sic) The more life imprisonment doesn't mean s***."

42.     On August 22, 2023, PRESTON forwarded a website link to Ms. WOLF. This website was titled, "Jeremy Hales of WhattheHale$ goes on a HOMOPHOBIC tirade! FAKE man." In forwarding that link to Ms. WOLF, PRESTON said, "the gay community is not happy."[4]

43.     That same day – August 22, 2023, PRESTON wrote an email to the Mayor of Peninsula, Ohio, where Hales is a permanent resident. In this email PRESTON makes false statements about HALES: "This man has bullied our town clerk into a stroke. He has bullied and belittled and humiliated me, destroyed my tortoise rescue with total lies, called CPS WITH FALSE ALLEGATIONS 7 TIMES, all because I ran for a seat and he thought I might get it over Therese Granger who at the time was I thought my friend and I had been I'm speaking terms with Jeremy." Regarding this communication, PRESTON told Ms. WOLF:

> This video shows the true, Jeremy Hales, the one he edits out and hides. ***He's stalking my family, my child and bullying, and harassing me by belittling me and LYING about me to everyone*** because I ran with Therese Granger for a seat on our board…
>
> [HALES] calls names (sic), bullies people abuses people for financial gain and you thought it was funny. He's not funny

---

[4] The website link is fortunately now deleted.

his ex-wife and children didn't think he was funny no one here thinks he's funny. ***Causing our town clerk to have a stroke was not funny***.

44.    After a full hearing with PRESTON and COOK present - in September 2023 - an Ohio court issued a two-year renewable Restraining Order/Injunction **against PRESTON and COOK** for stalking HALES and his fiancé.

45.    To date, this has not stopped PRESTON and COOK from continuing their illegal acts against HALES. Rather than cease, PRESTON, for example, has demanded that HALES provide her with a list of the names and contact information of all of his donors.

46.    PRESTON, in furtherance of her pursuit of Ms. WOLF as a journalist to cover her story, made the following statement to Ms. WOLF about HALES:

> Thank you for all your doing. I mean that with all my heart. Helping me stop him and get a case against him is going to be the greatest thing on Earth for me. I want to sue him and I hope to God he settles out of court and gives me enough to finish my house, pay off my stuff, and get my ex-husband [COOK] living somewhere else. Amen to all of that.

**MATZKIN Initiates Contact With PRESTON and Joins the Conspiracy**

47.    In early 2024, MATZKIN initiated contact with PRESTON by reaching out to her on Preston's Facebook Messenger.

48.    As a result, MATZKIN decided to join PRESTON and COOK's plan to "take down" HALES.

49.    To begin, MATZKIN on or about March 11, 2024, sent a letter out to many

YouTube Law channels, soliciting coverage for himself, and connecting this to Jeremy

Hales, stating, *inter alia*,

> From: Bruce Matzkin
> **Date: On Monday, March 11th, 2024**
> Subject: judicial misconduct & coverup
>
> **I've been catching up on the What the Hales saga.** As a
> 27-year lawyer, I have some thoughts if you're interested. I
> also have some questions that I'd love to ask, if you're
> willing, to understand the origins of the Hales/Lynette war...
>
> I have myself filed complaints against judges in the past. And
> written a lot of op-eds (New Haven Register, Connecticut
> Law Tribune... easy to find with Google search of my name).
>
> I have a story of a Connecticut judge who allowed two
> lawyers to engage in open conflict, and when the conflict was
> reported in a bar complaint, it was whitewashed to protect the
> lawyers and judge.
>
> It was all part of a scheme to steal a macaroni & cheese
> restaurant LLC and the market created by its founder.
>
> Very entertaining stuff, I assure you.
>
> Here's a link to a short op-ed that discusses the conflict and
> coverup, in the context of comparing that to a current,
> ongoing disciplinary proceeding against me... to show the
> dichotomy of "cover up/conjure up" in the lawyer
> disciplinary process in Connecticut. For powerful lawyers
> and judges, misconduct is covered up. For powerless solo
> lawyers, misconduct is conjured up (so they can make their
> numbers).
>
> https://insideinvestigator.org/opinion-connecticuts-lawyer-
> discipline-system-is-rigged/

If interested, I have a much more detailed written article about the conflict/coverup, which I can share with you. It has not been published (yet). Every fact I state (in the op-ed and the longer piece) is documented in court transcripts and filings.

Once this story is reported get picked up. It has legs. It just needs to get busted out by an appropriate source, such as yourself.

The judge's conduct can and should result in serious consequences, especially given that it was not known when she was confirmed to the federal bench... if it were, she likely would not have won confirmation.

Thanks, and please let me know if you'd like to speak.

--
*Bruce Matzkin, Esq.*

50.    It was about this time that MATZKIN initiated contact with PRESTON and thereafter wrote the initial motions to dismiss in this lawsuit that were later denied – however these were filed "pro se" by PRESTON and COOK in April, 2024.

51.    Trying to still stay hidden, on April 19, 2024 MATZKIN wrote to That Umbrella Guy ("TUG") – a popular YouTube host on legal issues nationwide – seeking to promote himself and stated - *inter alia*:

Date: Fri, Apr 19, 2024 at 11:39 AM
Subject: WhatThe Hales / Preston
To: ANOTHER_UMBRELLA

TUG,

A serious question:

Why are you and DUIGUY+ and Megan Fox and LegalVices and LegallyLive and MG Law all doing the exact same thing, and none of you have even one person on your webcast to offer a different perspective? Such as a lawyer who can engage in actual legal analysis?

It's all the same, watching the videos of hearings, making silly jokes to pander to all the Hales fans, not ever acknowledging anything negative with respect to Hales.

Megan Fox's original PJ Media article is so inaccurate about the legal issues, and amazingly, even lawyers like Larry Forman say the same nonsense (i.e., that the 6th Amendment or Fourth Amendment apply to the case before Judge DeThomasis). All of the YT coverage started from that.

How and why did Megan decide to write that piece? How much of this is orchestrated by Hales for content?

In my opinion, all it will take to completely turn the tables is a competent lawyer willing to represent Preston in federal court, where she can bring counterclaims that would be much stronger than the claims Hales brought.

Let me know if you want to set your coverage apart by having a serious lawyer discuss the many issues not being discussed.


--
*Bruce Matzkin, Esq.*

52.    After sending these emails, MATZKIN stated publicly that his goal is to create a "**Anti [What The Hales] media ecosystem**."

53.    MATZKIN has published to a third party the following false statements:

- Jeremy Hales gave me a nickname with an "anti-semitic (sic) tinge"

- Jeremy Hales storylines involving the neighbors (his clients) are "fake."

- "Fox and That Umbrella Guy profit from Hales' cyberstalking, under the guise of "journalism."

- Jeremy Hales is a "public stalker of private victims."

- Jeremy Hales "has fabricated storylines using innocent, powerless peoples' lives to sell as entertainment for profit."

**HELM Initiates Contact With PRESTON and Joins the Conspiracy**

54.    In early 2024, HELM appeared on a YouTube livestream with HALES, and seemed very friendly to HALES. HELM asked HALES to join him on a livestream to play Legos with him, which is something that HELM enjoys doing on his YouTube channel. HALES did not respond.

55.    Thereafter, HELM saw a photo of HALES playing Legos with Larry Forman, Esq., who operates a YouTube channel with a current YouTube subscription fan base of over 497,000 people - "The DUI Guy + Buckle Up" – and as such is a competitor with HELM on YouTube.

56.    HELM was upset by this. Accordingly, HELM contacted PRESTON and COOK and offered his assistance to provide her with a platform in support of PRESTON and COOK's plan to "take down" HALES. As a result, HELM decided to join PRESTON and COOK's plan to "take down" HALES.

57.     HELM contacted MATZKIN (and others) to enlist them as co-conspirators to "take down" HALES as part of a "**Anti [What The Hales] media ecosystem**."

58.     ***Since April, 2024 HELM has made YouTube  video publications*** on his YouTube channel - which are (1) part of the Anti [What The Hales] media ecosystem and (2) replete with further defamatory statements about Jeremy Hales all as part of a "**Anti [What The Hales] media ecosystem**."

59.     For         example,         in         one         broadcast/publication (https://www.youtube.com/watch?v=ZBvX5Ew1L3k&t=18s)  "Let's Talk About Florida Man #WhatTheHales," HELM made the following false statement about HALES: "Jeremy Hales falsely claims he does not earn money off of YouTube."

60.     In another video, HELM said:

> The god of law is going to prove in this video why Jeremy Hales is twice as dumb and **that's not an opinion** - he's going to prove it because fair use anybody on YouTube can use my videos without permission it falls under fair use people can use my name image content videos and intellectual property to comment to each for news and the list goes on and on and on so regardless of how Mr Hales simply ignores copyright law and now looking even more foolish - his own words coming back to haunt him.

61.     In these videos, HELM makes false statements about Mr. HALES that are presented in a way that imply clear factual accusations, all as part of the **Anti [What The Hales] media ecosystem**.

62.     HELM also invited MATZKIN to appear with him, and MATZKIN did so, thus displaying their relationship as joint tortfeasors and CO-CONSPIRATOR's for all the world to see.

**WEEKS Joins The Conspiracy**

63.     Thereafter, WEEKS was chosen by PRESTON to be PRESTON's "podcast" as part of the Anti [What The Hales] media ecosystem.

64.     WEEKS stated on YouTube on 10/6/24:

- "[T]hat's the bottom line right there yeah ladies and gents all this that's gone on every last bit of [Defamatory Signs about Jeremy Hales were] created for content harassing destroying someone's life."

- Jeremy Hales tortured [PRESTON] for content for a year and a half he almost had her child taken away from her or tried to he did all this crap when the damn story would have been Otter Creek he could have just stuck with that but he took advantage of someone whom he thought was weak and he did it all himself"

- Jeremy Hales wrote [the signs that stated he raped a minor child] and committed "forgery" in doing so.

65.     ***Since 8/4/2024 WEEKS has made EIGHTY-SEVEN YouTube video publications*** on her YouTube channel - which are (1) part of the Anti [What The Hales] media ecosystem and (2) replete with further defamatory statements about Jeremy Hales,

giving him a nickname" GERM." The URL of WEEKS's ***EIGHTY-SEVEN YouTube***

***video publications*** are:

- https://www.youtube.com/watch?v=DF5wEk7Yqv0&t=4s

- https://www.youtube.com/watch?v=4xxc22xwM5g

- https://www.youtube.com/watch?v=Sd-2_mrVsUM

- https://www.youtube.com/watch?v=lUQmgdp-Zdo

- https://www.youtube.com/watch?v=05PgxTkaMrw

- https://www.youtube.com/watch?v=m5pyIpTNoeY

- https://www.youtube.com/watch?v=i9MeOkAv2FM

- https://www.youtube.com/watch?v=Ivf5uBM7-0M

- https://www.youtube.com/watch?v=b3qmavcIbI8

- https://www.youtube.com/watch?v=PGhjM92dHYM

- https://www.youtube.com/watch?v=lvK8cK9VKnE

- https://www.youtube.com/watch?v=Pcs7ZG6McYI

- https://www.youtube.com/watch?v=qsq7f78rNvs

- https://www.youtube.com/watch?v=T9Cq1F_H0d4

- https://www.youtube.com/watch?v=88cvhZiUSpU

- https://www.youtube.com/watch?v=TV92pIvK2xs

- https://www.youtube.com/watch?v=7A2HmhyDykU

- https://www.youtube.com/watch?v=H8rjfKtVfa4

- https://www.youtube.com/watch?v=RDHHO3FRmKE

- https://www.youtube.com/watch?v=JGMgQ8Qj3qU

- https://www.youtube.com/watch?v=F2hm8fzar7c

- https://www.youtube.com/watch?v=iSURVRiuZl4

- https://www.youtube.com/watch?v=R7gbNCmiro4

- https://www.youtube.com/watch?v=TB65_CeDE4o

- https://www.youtube.com/watch?v=et2Tj42M0ws

- https://www.youtube.com/watch?v=UYOxk_ysH68

- https://www.youtube.com/watch?v=zxk3VXoZJp4

- https://www.youtube.com/watch?v=5fYAoPDVYMY

- https://www.youtube.com/watch?v=5fYAoPDVYMY

- https://www.youtube.com/watch?v=_n4AuiC7PiU

- https://www.youtube.com/watch?v=jF5ExO16m9Q

- https://www.youtube.com/watch?v=9-uEeLwVIi4

- https://www.youtube.com/watch?v=vqYlL2322Gs

- https://www.youtube.com/watch?v=gfZs_n0e70I

- https://www.youtube.com/watch?v=WgJfhvIaPPo

- https://www.youtube.com/watch?v=zQ6z6mIk31o

- https://www.youtube.com/watch?v=gVDfLOyUJG0

- https://www.youtube.com/watch?v=baOG8-rlzRw

- https://www.youtube.com/watch?v=vy9WJFxOZc4

- https://www.youtube.com/watch?v=r_-3ChVUWxI

- https://www.youtube.com/watch?v=6wvwUTOSk5M

- https://www.youtube.com/watch?v=G_-QGZmfVUA

- https://www.youtube.com/watch?v=MRp4mmqX8D4

- https://www.youtube.com/watch?v=7zy4U4m_54E

- https://www.youtube.com/watch?v=pVFV0nUKd_c

- https://www.youtube.com/watch?v=tjJAxAX4UEI&t=2524s

- https://www.youtube.com/watch?v=t4jcQw3xa-Q

- https://www.youtube.com/watch?v=Q4wMnbuqguI

- https://www.youtube.com/watch?v=dl80XrKfXjA

- https://www.youtube.com/watch?v=PWC9i---TII

- https://www.youtube.com/watch?v=PZFS2VvJS-c

- https://www.youtube.com/watch?v=qOvdq8WnDOg

- https://www.youtube.com/watch?v=O6g76M6JQtc

- https://www.youtube.com/watch?v=qsgh8niKRkw

- https://www.youtube.com/watch?v=mRv3rgyFvGc

- https://www.youtube.com/watch?v=_ZomQ7ISn3A

- https://www.youtube.com/watch?v=IQEWJuijbb4

- https://www.youtube.com/watch?v=Wcd1JwdQWtg

- https://www.youtube.com/watch?v=RdBviN1ibfI

- https://www.youtube.com/watch?v=UdBfq-QnyEA

- https://www.youtube.com/watch?v=BqQKSJ5NuQM

- https://www.youtube.com/watch?v=hT05sZ6JnFA

- https://www.youtube.com/watch?v=dYouFi4HRHg

- https://www.youtube.com/watch?v=S6GZLmFJvck

- https://www.youtube.com/watch?v=hlAmIA3pwg4

- https://www.youtube.com/watch?v=8vkr7FXtvBs

- https://www.youtube.com/watch?v=CTfn47XyFjg

- https://www.youtube.com/watch?v=Z1ekGbPOLiQ

- https://www.youtube.com/watch?v=2wICGsvxsB4

- https://www.youtube.com/watch?v=wrCZr13bP18

- https://www.youtube.com/watch?v=li94KVylIq8

- https://www.youtube.com/watch?v=U7ZbaXPcRHw

- https://www.youtube.com/watch?v=zEhhVq0enMM

- https://www.youtube.com/watch?v=BBUBMEUhOzU

- https://www.youtube.com/watch?v=SYb_aVcXW6g

- https://www.youtube.com/watch?v=p07Vg_CByi0

- https://www.youtube.com/watch?v=r9vvwpjFAsk

- https://www.youtube.com/watch?v=VQvAeT4kwao

- https://www.youtube.com/watch?v=3PT7S1QTm20

- https://www.youtube.com/watch?v=wsGAnlrMsU0

- https://www.youtube.com/watch?v=VMmW38w0ruQ

- https://www.youtube.com/watch?v=FyHv-uEDWkI

- https://www.youtube.com/watch?v=5KJdqi7fW2c

- https://www.youtube.com/watch?v=Ig-0F7_RENs

- https://www.youtube.com/watch?v=hU6s0Jmorrg

- https://www.youtube.com/watch?v=xgfYuTIEkyg

- https://www.youtube.com/watch?v=liEDRtJ5fuM

- https://www.youtube.com/watch?v=6IM2Zo0yR3k&t=1s

- https://www.youtube.com/watch?v=yFAepu7pxdA

- https://www.youtube.com/watch?v=Go--QZLSc1g

The Screenshots of WEEKS's ***EIGHTY-SEVEN YouTube  video publications*** that are part of the Anti [What The Hales] media ecosystem are below:

















66.    In a very recent publication, WEEKS states she has received information about the deposition in this lawsuit of Jeremy Hales – this information was supplied to her by MATZKIN. [5]

67.    MATZKIN continues - on an almost daily basis – to exacerbate the **Anti [What The Hales] media ecosystem**. MATZKIN made the following false statements publicly via YouTube on July 17, 2024.

---

[5] https://www.youtube.com/watch?v=yFAepu7pxdA

- Jeremy Hales is a "homophobe who's going around on video you know threatening people and calling them such names."

- Jeremy Hales is a "psychopath douchebag."

- Jeremy Hales' daily mission is "to come up with 45 minutes of vitriol and name calling and defamation and incitement of people whom he knows you know love him and and and (sic) do whatever he wants or feel or believe whatever he tells them to uh (sic) and uses that power and that platform to literally co-opt lives of private people and

  and (sic) cause them uh (sic) nothing but uh (sic) harassment and and (sic) threats and Terror and strangers uh (sic) you know invading their their (sic) peace and their space and their lives."

- Jeremy Hales "has no proof" that PRESTON wrote the defamatory signs about him.

- Jeremy Hales said PRESTON "should experience being raped."

- Jeremy Hales accused PRESTON's grandson "of being a pedophile" and "a homosexual – that too."

68.    MATZKIN wrote the following false statement via email – on 8/16/24: What The Hales is "destroying the lives of helpless people, using a virtual mob who send menacing and threatening messages to [PRESTON] every day, and have caused her life to be consumed with CPS reports from anonymous fans."

## HUGHES Joins The Conspiracy

69.    HUGHES, on September 5, 2023, wrote the following false statement in an

email (which is now a public record):

> Every single day [HALES] puts up a video that includes some
> slurs and lies against [PRESTON], even when the video isn't
> related to otter Creek at all. Every. Single. Day.

70.    In another public email, HUGHES wrote the following false statement:

> [HALES] has sent his followers after people in Otter Creek to
> harass them using state agencies and even the IRS, making
> false claims about Michelle slapping her daughter in the face
> in public, not caring properly for her {DHS} (sic), animal
> abuse through her legal and well respected turtle and tortoise
> rescue {FWC}, Levy County Health Department, and other
> agencies. To go after others he has targeted, he uses Florida
> state reporting agencies and call numbers to pass out to his
> followers from all over the world to call in or fill out forms
> making accusations based entirely upon his edited videos and
> explanations, often containing false information.

71.    HUGHES makes false statements about Mr. HALES that are presented in a

way that imply clear factual accusations, all as part of the **Anti [What The Hales] media

ecosystem**.

## PLUMMER Joins The Conspiracy

72.    PLUMMER, on October 3, 2023, wrote the following false statement about

HALES in an email (which is now a public record):

> I couldn't believe that [HALES] could be so cruel towards a
> woman and her family, that we're struggling, physically,
> emotionally and financially. I watched this man, bully, harass,
> and attempt to destroy this family to the entire world. I heard

him say he wanted her daughter, he wanted her land, and frankly, he didn't care how he got it. His viewers began attacking and threatening [PRESTON] from all directions. Phone calls, social media, and in person. [HALES] and his followers have created such havoc in [PRESTON's] Life that her only choice was to fight for her daughter, fight for her property, and let the world know she is not the person who claims her to be. She has proven so many things regarding [HALES] and his lies.

73. In January, 2024, PLUMMER financially aided PRESTON when she paid at least $7,000 for [PRESTON] to have legal counsel, which PRESTON accepted in a case which PRESTON voluntarily dismissed in September 2024.

74. PLUMMER makes false statements about Mr. HALES that are presented in a way that imply clear factual accusations, all as part of the **Anti [What The Hales] media ecosystem**.

**KESZEY Joins The Conspiracy**

75. In a YouTube livestream[6] with WEEKS and MATZKIN, KESZEY made following false statements about HALES: "All HALES does is bully people. That's it;" "HALES invited PRESTON to come here [to Otter Creek, Florida] you're going to do a Tortoise sanctuary, that'd be cool. Then, just because HALES didn't like the way they lived or something, he withdrew from it." That's his M.O."

---

[6] https://www.youtube.com/watch?v=m5pyIpTNoeY

76.    In this video (1) KESZEY makes false statements about Mr. HALES that are presented in a way that imply clear factual accusations, and (2) MATZKIN appeared with KESZEY with WEEKS, thus displaying their relationship as joint tortfeasors and Co-Conspirators for all the world to see, all as part of the **Anti [What The Hales] media ecosystem**.

## Creation Of A Copycat What the Hale$ Facebook Page To Lure Supporters Of HALES

77.    On November 25, 2023, a Facebook page was established – called "What The Hales" -which appears to be an official Facebook page of What The Hale$.[7]

78.    This page currently has over 4,800 members. Fans of HALES comment in this group in support of HALES. To their surprise, these supporters find out that this is nothing more than a "hate group" designed to damage the reputation of HALES in furtherance of the **Anti [What The Hales] media ecosystem**.

79.    MATZKIN, HELM, and HUGHES personally post to this group.

80.    Moreover, comments from MATZKIN, WEEKS, PRESTON, HUGHES, PLUMMER, COOK, and HELM are posted in this group including, without limitation, links to YouTube videos and pages. Some examples of the postings in this group are:

---

[7] https://www.facebook.com/groups/340750118547073/media

- **"How do you Germ lickers like Germ getting ready to settle with Ms. Preston. Look where your $$$ is going.**

- **Why are the Hales followers not mentioning that Germ and Martha have not mentioned lynette or John since they were served last week? Bruce has kicked Hales butt again!**

- **So once Germ moves will all you supporters of his toxic behavior still defend him when he finds his next targets for content?**

- **Good night gemmy lintlickers**

81.    On August 15, 2024 after 9 PM, a Facebook "Chat" was held, with PLUMMER, MATZKIN, and PRESTON attending, among others.

82.    PLUMMER started the chat by stating: "please join this chat for tonight streaming. We need [PRESTON] here and you are good to go. I'll check in as I can. What time is it supposed to start?"

83.    MATZKIN answered:

> "[N]ow," and asked the group, "is there a PDF of it or JPG I can share? I can share link and they [WEEKS] can play it. I'll say we're trying to get copies of all the other 21."

84.    PRESTON replied, "I just got it," and instructed the group to refer to her as "MICHELLE Please Or Lacey **Not Lynette**. Can I thank people on chat or just no."

85.    PLUMMER replied, "let Bruce thank them on you (sic) behalf, my opinion."

86.     MATZKIN replied: "just @(name) and thank you nothing more. Ok better not then they'll want more." PRESTON said, "Okay."

87.     MATZKIN replied, "you're a celebrity, but we don't want to embrace that if you put names here, I can mention it specifically to thank people."

88.     PLUMMER responded, "that is a great idea."

89.     At some point during this live stream chat on Facebook, a YouTube broadcast started – being held live by WEEKS.

90.     MATZKIN said, "they make money off WTH, and are not allowed to enable anyone *from our side* to interfere… I WANT LANDON'S AUDIO FILE."

91.     PRESTON replied, "I just messaged him again, Bruce.

92.     MATZKIN responded, "I WILL KEEP SAYING IT."

93.     PRESTON said, "that is all I can do."

94.     MATZKIN said, "if Landon takes $100 to send an audio file, it is not bribery Plese (sic) Please."

95.     PLUMMER responded with a message that is now "unsent." Regardless, MATZKIN responded, "Incorrect."

96.     PRESTON then said, "PLEASE SAY MY DAUGHTER WAS SO HAPPY BEFORE HE DESTROYED OUR LIVES."

97.     MATZKIN stated:

> LISTEN I ALLOWED Landon to possibly RECORD ME
> offering him $100 for the video of his call. Would I do that if

there were something wrong with it? Well, I allowed Landon to record me doing something that would then hurt me when he shares with [HALES]? Pleeeeeeaaaaase (sic) already.

98.    PLUMMER responded: "absolutely not Bruce You would not."

99.    MATZKIN replied: "I WANT THAT MOTHER FUCKING VIDEO."

100.    PLUMMER responded, "take a five second break and call me Bruce."

101.    MATZKIN said, "not now."

102.    PLUMMER replied, "then take a breath. We know the urgency, and we all want it to happen," and later stated:

> My heart goes out to him. But you are missing my point. I appreciate everything that you have done for all of the people in honor (sic) Creek. I truly from the bottom of my heart do. But this group message was set up for us to acquire things that can be debunked on to leaves in a pod (sic). Regarding Michele, if there are other things that need to be debunked, you can always discuss those with Michele and Bruce. I am only telling you not to do it here.

103.    MATZKIN – at 11:00 PM – then asked: "are we holding off on those Landon texts? I'd love to let them out."

104.    MATZKIN – at 11:16 PM – stated: "nothing else matters except that FUCKING AUDIO FILE. If he has it and isn't lying."

105.    PLUMMER – at 10:43 PM – stated, "we can confirm the twisted tea and shit LATER.

106.    MATZKIN responded, "no rush to send to TwoLess [WEEKS] until I read them."

107.    On August 17, 2024, at 2:38 PM, any new similar Facebook chat, there was a post from an unknown participant which stated, "I have no knowledge regarding the inverter. As to whether or not, she replaced it yet. *I know you gave her the money*."

108.    PLUMMER wrote, "Shara they are gone. I deleted it all."

109.    The response was, "they are not gone and you also removed access to evidence. We have been placing there."

110.    PLUMMER replied, "They are gone."

111.    As a direct result of Defendants' misconduct, HALES has incurred damages.

## Injury To Hales' Goodwill And Reputation

112.    In addition, HALES suffered injury and harm to his reputation and he has incurred costs associated with his extensive efforts to mitigate against such injury and harm.

## PRESTON's and COOK's PATTERN OF CRIMINAL CONDUCT

113.    PRESTON's and COOK's acts violated Florida's extortion statute, which makes it a felony to maliciously threaten to accuse another of a crime or offense with the intent to extort money or pecuniary advantage see Fla. Stat. § 836.05.

114.    PRESTON's and COOK's acts constitute predicate acts under Florida's RICO statute and are evidence of PRESTON's and COOK's pattern of continuing criminal activity.

115.    PRESTON's and COOK's acts violated Fla. Stat. § 836.05 by maliciously threatening to injure HALES with the intent to extort money or gain any pecuniary advantage whatsoever and/or to do any act or refrain from doing any act against his will.

116.    PRESTON's and COOK's acts constituted at least two distinct criminal acts in violation of Fla. Stat. § 836.05.

117.    Fla. Stat. § 836.05 prohibits "utterances or communications which constitute malicious threats to do injury to another's person, reputation, or property." *Carricarte v. State*, 384 So. 2d 1261, 1263 (Fla. 1980). As relevant here, Florida law makes it unlawful for any person, "[t]hrough a pattern of criminal activity[,] . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property," or for a person "[e]mployed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity." Fla. Stat. § 772.103.

## COUNT 1 – DEFAMATION PER SE
## (PRESTON)

118.    HALES incorporates paragraphs 1 through 117 as if fully set forth below.

119.    This is an action for damages against PRESTON that exceeds Seventy-Five Thousand ($75,000.00) Dollars for defamation per se.

120.    PRESTON orally and in writing published false statements about HALES to third parties.

121.    The false statements were calculated to defame or diminish the reputation of HALES in his immediate community and within his capacity.

122.    The false statements were made with knowledge or their falsity or with reckless disregard as to their veracity.

123.    The false statements impute to the Plaintiff behavior or characteristics that are incompatible with the proper conduct of his business, profession, and office.

124.    The false statements also impute to the Plaintiff the commission of a crime.

125.    As a result of the defamatory publications, HALES has suffered general damages.

**WHEREFORE**, it is prayed that this Honorable Court enter judgment for damages, costs, prejudgment interest and for any other such relief as might be appropriate.

## COUNT 2 – DEFAMATION PER SE
### (COOK)

126.    HALES incorporates paragraphs 1 through 117  as if fully set forth below

127.    This is an action for damages against COOK that exceeds Seventy-Five Thousand ($75,000.00) Dollars for defamation per se.

128.    COOK orally and in writing published false statements about HALES to third parties.

129.    The false statements were calculated to defame or diminish the reputation of HALES in his immediate community and within his capacity.

130.    The false statements were made with knowledge or their falsity or with reckless disregard as to their veracity.

131.    The false statements impute to the Plaintiff behavior or characteristics that are incompatible with the proper conduct of his business, profession, and office.

132.    The false statements also impute to the Plaintiff the commission of a crime.

133.    As a result of the defamatory publications, HALES has suffered general damages.

**WHEREFORE**, it is prayed that this Honorable Court enter judgment for damages, costs, prejudgment interest and for any other such relief as might be appropriate.

## COUNT 3 – CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT (PRESTON)

134.    HALES incorporates paragraphs 1 through 117  as if fully set forth below.

135.    This is an action for damages against PRESTON that exceeds Seventy-Five Thousand ($75,000.00) Dollars.

136.    In two distinct instances separated in time, PRESTON extorted HALES and within the meaning of Fla. Stat. § 836.05.

137.    PRESTON's acts constituted a violation of Fla. Stat. § 836.05, which prohibits any person from using a written communication to "maliciously threaten[] injury" to the property of another "with intent to extort money or any pecuniary

advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will. . . ."

138.    PRESTON's conduct, among other acts, constituted a "pattern of criminal activity" in violation of Fla. Stat. § 772.103(4) by constituting an "endeavor to violate any of the provisions" of the statute, namely Fla. Stat. § 772.103(3), which prohibits any person from participate in an extortion enterprise through a pattern of criminal activity.

139.    This ongoing pattern of criminal conduct constitutes a continuing threat of illegal conduct persisting into the future.

**WHEREFORE**, HALES respectfully requests that the Court enter judgment in its favor and award the following relief:

a.    Actual damages, in an amount to be established at trial;

b.    Statutory damages;

c.    Attorneys' fees and costs incurred in the prosecution of this action; and

d.    Such other and further relief as the Court may deem appropriate in the circumstances.

### COUNT 4 – CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT (COOK)

140.     HALES incorporates paragraphs 1 through 117  as if fully set forth below.

141.    This is an action for damages against COOK that exceeds Seventy-Five Thousand ($75,000.00) Dollars.

142.    In two distinct instances separated in time, COOK extorted HALES and within the meaning of Fla. Stat. § 836.05.

143.    COOK's acts constituted a violation of Fla. Stat. § 836.05, which prohibits any person from using a written communication to "maliciously threaten[] injury" to the property of another "with intent to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will. . . ."

144.    COOK's conduct, among other acts, constituted a "pattern of criminal activity" in violation of Fla. Stat. § 772.103(4) by constituting an "endeavor to violate any of the provisions" of the statute, namely Fla. Stat. § 772.103(3), which prohibits any person from participate in an extortion enterprise through a pattern of criminal activity.

145.    This ongoing pattern of criminal conduct constitutes a continuing threat of illegal conduct persisting into the future.

**WHEREFORE**, HALES respectfully requests that the Court enter judgment in its favor and award the following relief:

e.    Actual damages, in an amount to be established at trial;

f.    Statutory damages;

g.    Attorneys' fees and costs incurred in the prosecution of this action; and

h.    Such other and further relief as the Court may deem appropriate in the circumstances.

## COUNT 5 – DEFAMATION PER SE
## (MATZKIN)

146.    HALES incorporates paragraphs 1 through 117  as if fully set forth below

147.    This is an action for damages against MATZKIN that exceeds Seventy-Five

Thousand ($75,000.00) Dollars for defamation per se.

148.    MATZKIN orally and in writing published false statements about HALES

to third parties.

149.    The false statements were calculated to defame or diminish the reputation

of HALES in his immediate community and within his capacity.

150.    The false statements were made with knowledge or their falsity or with

reckless disregard as to their veracity.

151.    The false statements impute to the Plaintiff behavior or characteristics that

are incompatible with the proper conduct of his business, profession, and office.

152.    The false statements also impute to the Plaintiff the commission of a crime.

153.    As a result of the defamatory publications, HALES has suffered general

damages.

**WHEREFORE**, it is prayed that this Honorable Court enter judgment for

damages, costs, prejudgment interest and for any other such relief as might be

appropriate.

## COUNT 6 – DEFAMATION PER SE
## (WEEKS)

154.    HALES incorporates paragraphs 1 through 117 as if fully set forth below

155.    This is an action for damages against WEEKS that exceeds Seventy-Five Thousand ($75,000.00) Dollars for defamation per se.

156.    WEEKS orally and in writing published false statements about HALES to third parties.

157.    The false statements were calculated to defame or diminish the reputation of HALES in his immediate community and within his capacity.

158.    The false statements were made with knowledge or their falsity or with reckless disregard as to their veracity.

159.    The false statements impute to the Plaintiff behavior or characteristics that are incompatible with the proper conduct of his business, profession, and office.

160.    The false statements also impute to the Plaintiff the commission of a crime.

161.    As a result of the defamatory publications, HALES has suffered general damages.

**WHEREFORE**, it is prayed that this Honorable Court enter judgment for damages, costs, prejudgment interest and for any other such relief as might be appropriate.

## COUNT 7 - TORTIOUS INTERFERENCE
## WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS
### (PRESTON)

162.    HALES incorporates paragraphs 1 through 117 as if fully set forth below.

163.    This is an action for damages against PRESTON that exceeds Seventy-Five Thousand ($75,000.00) Dollars.

164.    HALES maintains valid and enforceable contracts and business relationships with his customers.

165.    PRESTON is knowledgeable of the contractual and business relationship between HALES and his customers.

166.    Despite knowledge of the customer's contractual and business relationship with HALES, PRESTON intentionally and without valid justification interferes with such relationship.

167.    HALES is damaged by PRESTON's unlawful conduct by losing revenue streams that otherwise would remain with HALES absent PRESTON's interference with HALES' valid contractual and business relationships.

**WHEREFORE**, HALES respectfully requests that the Court enter judgment in his favor and against PRESTON, and award the following relief:

a.    Compensatory damages, in an amount to be established at trial;

b.    Attorneys' fees and costs incurred in the prosecution of this action; and

c.    Such other and further relief as the Court may deem appropriate in the circumstances.

## COUNT 8 - TORTIOUS INTERFERENCE
## WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS
## (COOK)

168.    HALES incorporates paragraphs 1 through 117  as if fully set forth below.

169.    This is an action for damages against COOK that exceeds Seventy-Five Thousand ($75,000.00) Dollars.

170.    HALES maintains valid and enforceable contracts and business relationships with his customers.

171.    COOK is knowledgeable of the contractual and business relationship between HALES and his customers.

172.    Despite knowledge of the customer's contractual and business relationship with HALES, COOK intentionally and without valid justification interferes with such relationship.

173.    HALES is damaged by COOK's unlawful conduct by losing revenue streams that otherwise would remain with HALES absent COOK's interference with HALES' valid contractual and business relationships.

**WHEREFORE**, HALES respectfully requests that the Court enter judgment in his favor and against COOK, and award the following relief:  Compensatory damages, in an amount to be established at trial;  Attorneys' fees and costs incurred in the prosecution of this action; and such other and further relief as the Court may deem appropriate in the circumstances.

## COUNT 9  - TORTIOUS INTERFERENCE
## WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS
## (MATZKIN)

174.    HALES incorporates paragraphs 1 through 117  as if fully set forth below.

175.    This is an action for damages against MATZKIN that exceeds Seventy-Five Thousand ($75,000.00) Dollars.

176.    HALES maintains valid and enforceable contracts and business relationships with his customers.

177.    MATZKIN is knowledgeable of the contractual and business relationship between HALES and his customers.

178.    Despite knowledge of the customer's contractual and business relationship with HALES, MATZKIN intentionally and without valid justification interferes with such relationship.

179.    HALES is damaged by MATZKIN's unlawful conduct by losing revenue streams that otherwise would remain with HALES absent MATZKIN's interference with HALES' valid contractual and business relationships.

**WHEREFORE**, HALES respectfully requests that the Court enter judgment in his favor and against MATZKIN, and award the following relief:

d.    Compensatory damages, in an amount to be established at trial;

e.    Attorneys' fees and costs incurred in the prosecution of this action; and

f.    Such other and further relief as the Court may deem appropriate in the circumstances.

### COUNT 10 - TORTIOUS INTERFERENCE
### WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS
### (WEEKS)

180.     HALES incorporates paragraphs 1 through 117  as if fully set forth below.

181.    This is an action for damages against WEEKS that exceeds Seventy-Five Thousand ($75,000.00) Dollars.

182.    HALES maintains valid and enforceable contracts and business relationships with his customers.

183.    WEEKS is knowledgeable of the contractual and business relationship between HALES and his customers.

184.    Despite knowledge of the customer's contractual and business relationship with HALES, WEEKS intentionally and without valid justification interferes with such relationship.

185.    HALES is damaged by WEEKS's unlawful conduct by losing revenue streams that otherwise would remain with HALES absent WEEKS's interference with HALES' valid contractual and business relationships.

**WHEREFORE**, HALES respectfully requests that the Court enter judgment in his favor and against WEEKS, and award the following relief:

g.    Compensatory damages, in an amount to be established at trial;

h.    Attorneys' fees and costs incurred in the prosecution of this action; and

i.    Such other and further relief as the Court may deem appropriate in the circumstances.

## COUNT 11 – DEFAMATION PER SE
### (HUGHES)

186.    HALES incorporates paragraphs 1 through 117  as if fully set forth below

187.    This is an action for damages against HUGHES that exceeds Seventy-Five Thousand ($75,000.00) Dollars for defamation per se.

188.    HUGHES orally and in writing published false statements about HALES to third parties.

189.    The false statements were calculated to defame or diminish the reputation of HALES in his immediate community and within his capacity.

190.    The false statements were made with knowledge or their falsity or with reckless disregard as to their veracity.

191.    The false statements impute to the Plaintiff behavior or characteristics that are incompatible with the proper conduct of his business, profession, and office.

192.    The false statements also impute to the Plaintiff the commission of a crime.

193.    As a result of the defamatory publications, HALES has suffered general damages.

**WHEREFORE**, it is prayed that this Honorable Court enter judgment for damages, costs, prejudgment interest and for any other such relief as might be appropriate.

## COUNT 12 – DEFAMATION PER SE
### (PLUMMER)

194.    HALES incorporates paragraphs 1 through 117  as if fully set forth below

195.    This is an action for damages against PLUMMER that exceeds Seventy-Five Thousand ($75,000.00) Dollars for defamation per se.

196.    PLUMMER orally and in writing published false statements about HALES to third parties.

197.    The false statements were calculated to defame or diminish the reputation of HALES in his immediate community and within his capacity.

198.    The false statements were made with knowledge or their falsity or with reckless disregard as to their veracity.

199.    The false statements impute to the Plaintiff behavior or characteristics that are incompatible with the proper conduct of his business, profession, and office.

200.    The false statements also impute to the Plaintiff the commission of a crime.

201.    As a result of the defamatory publications, HALES has suffered general damages.

**WHEREFORE**, it is prayed that this Honorable Court enter judgment for damages, costs, prejudgment interest and for any other such relief as might be appropriate.

## COUNT 13 – DEFAMATION PER SE
## (HELM)

202.    HALES incorporates paragraphs 1 through 117  as if fully set forth below

203.    This is an action for damages against HELM that exceeds Seventy-Five Thousand ($75,000.00) Dollars for defamation per se.

204.    HELM orally and in writing published false statements about HALES to third parties.

205.    The false statements were calculated to defame or diminish the reputation of HALES in his immediate community and within his capacity.

206.    The false statements were made with knowledge or their falsity or with reckless disregard as to their veracity.

207.    The false statements impute to the Plaintiff behavior or characteristics that are incompatible with the proper conduct of his business, profession, and office.

208.    The false statements also impute to the Plaintiff the commission of a crime.

209.    As a result of the defamatory publications, HALES has suffered general damages.

**WHEREFORE**, it is prayed that this Honorable Court enter judgment for damages, costs, prejudgment interest and for any other such relief as might be appropriate.

## COUNT 14 – DEFAMATION PER SE
### (KESZEY)

210.    HALES incorporates paragraphs 1 through 117  as if fully set forth below

211.    This is an action for damages against KESZEY that exceeds Seventy-Five Thousand ($75,000.00) Dollars for defamation per se.

212.    KESZEY orally and in writing published false statements about HALES to third parties.

213.    The false statements were calculated to defame or diminish the reputation of HALES in his immediate community and within his capacity.

214.    The false statements were made with knowledge or their falsity or with reckless disregard as to their veracity.

215.    The false statements impute to the Plaintiff behavior or characteristics that are incompatible with the proper conduct of his business, profession, and office.

216.    The false statements also impute to the Plaintiff the commission of a crime.

217.    As a result of the defamatory publications, HALES has suffered general damages.

**WHEREFORE**, it is prayed that this Honorable Court enter judgment for damages, costs, prejudgment interest and for any other such relief as might be appropriate.

## COUNT 15  - TORTIOUS INTERFERENCE
## WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS
## (HUGHES)

218.    HALES incorporates paragraphs 1 through 117  as if fully set forth below.

219.    This is an action for damages against HUGHES that exceeds Seventy-Five Thousand ($75,000.00) Dollars.

220.    HALES maintains valid and enforceable contracts and business relationships with his customers.

221.    HUGHES is knowledgeable of the contractual and business relationship between HALES and his customers.

222.   Despite knowledge of the customer's contractual and business relationship with HALES, HUGHES intentionally and without valid justification interferes with such relationship.

223.   HALES is damaged by HUGHES' unlawful conduct by losing revenue streams that otherwise would remain with HALES absent HUGHES' interference with HALES' valid contractual and business relationships.

**WHEREFORE**, HALES respectfully requests that the Court enter judgment in his favor and against HUGHES, and award the following relief:

- Compensatory damages, in an amount to be established at trial;

- Attorneys' fees and costs incurred in the prosecution of this action; and

- Such other and further relief as the Court may deem appropriate in the circumstances.

## COUNT 16 - TORTIOUS INTERFERENCE
## WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS
## (PLUMMER)

224.    HALES incorporates paragraphs 1 through 117  as if fully set forth below.

225.   This is an action for damages against PLUMMER that exceeds Seventy-Five Thousand ($75,000.00) Dollars.

226.   HALES maintains valid and enforceable contracts and business relationships with his customers.

227.   PLUMMER is knowledgeable of the contractual and business relationship between HALES and his customers.

228.   Despite knowledge of the customer's contractual and business relationship with HALES, PLUMMER intentionally and without valid justification interferes with such relationship.

229.   HALES is damaged by PLUMMER's unlawful conduct by losing revenue streams that otherwise would remain with HALES absent PLUMMER's interference with HALES' valid contractual and business relationships.

**WHEREFORE**, HALES respectfully requests that the Court enter judgment in his favor and against PLUMMER, and award the following relief:

- Compensatory damages, in an amount to be established at trial;

- Attorneys' fees and costs incurred in the prosecution of this action; and

- Such other and further relief as the Court may deem appropriate in the circumstances.

## COUNT 17  - TORTIOUS INTERFERENCE
## WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS
## (HELM)

230.   HALES incorporates paragraphs 1 through 117  as if fully set forth below.

231.   This is an action for damages against HELM that exceeds Seventy-Five Thousand ($75,000.00) Dollars.

232.    HALES maintains valid and enforceable contracts and business relationships with his customers.

233.    HELM is knowledgeable of the contractual and business relationship between HALES and his customers.

234.    Despite knowledge of the customer's contractual and business relationship with HALES, HELM intentionally and without valid justification interferes with such relationship.

235.    HALES is damaged by HELM's unlawful conduct by losing revenue streams that otherwise would remain with HALES absent HELM's interference with HALES' valid contractual and business relationships.

**WHEREFORE**, HALES respectfully requests that the Court enter judgment in his favor and against HELM, and award the following relief:

- Compensatory damages, in an amount to be established at trial;

- Attorneys' fees and costs incurred in the prosecution of this action; and

- Such other and further relief as the Court may deem appropriate in the circumstances.

## COUNT 18 - TORTIOUS INTERFERENCE
## WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS
## (KESZEY)

236.    HALES incorporates paragraphs 1 through 117 as if fully set forth below.

237.    This is an action for damages against KESZEY that exceeds Seventy-Five Thousand ($75,000.00) Dollars.

238.    HALES maintains valid and enforceable contracts and business relationships with his customers.

239.    KESZEY is knowledgeable of the contractual and business relationship between HALES and his customers.

240.    Despite knowledge of the customer's contractual and business relationship with HALES, KESZEY intentionally and without valid justification interferes with such relationship.

241.    HALES is damaged by KESZEY's unlawful conduct by losing revenue streams that otherwise would remain with HALES absent KESZEY's interference with HALES' valid contractual and business relationships.

**WHEREFORE**, HALES respectfully requests that the Court enter judgment in his favor and against KESZEY, and award the following relief:

- Compensatory damages, in an amount to be established at trial;

- Attorneys' fees and costs incurred in the prosecution of this action; and

- Such other and further relief as the Court may deem appropriate in the circumstances.

### COUNT 19 – CIVIL CONSPIRACY
### (ALL DEFENDANTS)

242.    HALES incorporates paragraphs 1 through 117  as if fully set forth below.

243.    All Defendants agreed to intentionally and maliciously participate in a civil conspiracy among themselves, and with other individuals, the purpose of which was to commit the torts of Defamation, Defamation *Per Se*, and Tortious Interference With Advantageous Business Relationships.

244.    Throughout the course of the conspiracy, Defendants, acting in concert, coordinated in furtherance of the common scheme.

245.    Each Defendant is jointly and severally liable for the torts of the other members of the conspiracy which were committed in furtherance of the conspiracy.

246.    All Defendants agreed to launch a campaign to defame Plaintiff, as evidenced by their actions.

247.    As a result of Defendants' conspiracy, Plaintiff suffered professional, reputation, and emotional harm. These torts caused the damages outlined in the previous causes of action.

**WHEREFORE**, HALES respectfully requests that the Court enter judgment in his favor and against All Defendants, jointly and severally.

## COUNT 20– AIDING AND ABETTING
## (ALL DEFENDANTS)

248.    HALES incorporates paragraphs 1 through 117  as if fully set forth below.

249.    Defendants MATZKIN, WEEKS, HUGHES, HELM, PLUMMER, and KESZEY aided and abetted Defendants PRESTON and COOK in committing tortious acts, including Defamation, Defamation *Per Se*, and Tortious Interference With

Advantageous Business Relationships by, among other things, providing them with the means, platform, and network.

250.   Defendants MATZKIN, WEEKS, HUGHES, HELM, PLUMMER, and KESZEY knowingly and with full awareness substantially aided Defendants PRESTON's and COOK's wrongful conduct.

251.   Defendants MATZKIN, WEEKS, HUGHES, HELM, PLUMMER, and KESZEY intentionally helped create, or participated in the creation of, content about Plaintiff to share, and provided a platform upon which to share this and other content, to assist Defendants PRESTON and COOK in committing tortious acts, including Defamation, Defamation *Per Se*, and Tortious Interference With Advantageous Business Relationships.

252.   Defendants PRESTON and COOK aided and abetted Defendants MATZKIN, WEEKS, HUGHES, HELM, PLUMMER, and KESZEY in committing tortious acts, including Defamation, Defamation *Per Se*, and Tortious Interference With Advantageous Business Relationships by, among other things, repeatedly publishing defamatory statements about Plaintiff, as detailed above, on Defendants MATZKIN and WEEKS' platforms and networks, and elsewhere.

253.   Defendants PRESTON and COOK knowingly and with full awareness substantially aided Defendants MATZKIN's WEEKS', HUGHES', HELM's, PLUMMER's, and KESZEY's wrongful conduct.

**WHEREFORE**, HALES respectfully requests that the Court enter judgment in his favor and against All Defendants, jointly and severally.

## DEMAND FOR JURY TRIAL

HALES demands a trial by jury on all issues so triable.

Dated: December 18, 2024

Respectfully submitted,
SHOCHET LAW GROUP
Attorneys for Jeremy B. Hales
409 N. Main Street
Trenton, FL 32693

By: */s/ Randall Shochet*
Randall Shochet, Esq.
FBN.: 959421
attorneys@counsel.insure

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 18, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served on this day on all counsel of record, via email to the Service List below.

By: */s/ Randall Shochet*
Randall Shochet, Esq.

## SERVICE LIST

Bruce Matzkin, Esq., pro hac vice
Attorneys for PRESTON and COOK
51 Pleasant Street, # 72
Malden, MA 02148
Brucematzkin1@gmail.com