UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **JEREMY B. HALES,** | : | Civil Action No.: |
| | : | **1:24-CV-00045-AW-ZCB** |
| **Plaintiff,** | : | |
| v. | : | |
| | : | |
| **LYNETTE MICHELLE LACEY ALEXIS PRESTON** | : | |
| and | : | |
| **JOHN COOK,** | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS UNDER FRCP 12(b)(1)

The defendants move to dismiss this lawsuit pursuant to FRCP 12(b)(1), on the grounds that federal diversity jurisdiction under 28 USC 1332 clearly does not exist in light of:

(a) dismissal of the plaintiff's extortion claims, eliminating any possible recovery of treble damages or attorney fees;

(b) the now-established falsity of the plaintiff's statement alleging *online* posts by the defendants accusing the plaintiff of being a child predator, which false statement was made in an affidavit (Doc. # 8-1, para. 19) to overcome the defendants' first 12(b)(1) motion and in reliance on which the Court denied that motion;

(c) the plaintiff's admission that the allegation the defendants "used their 'defamatory statements to persuade [Plaintiff's] customers to stop supporting' his business" does not refer to any additional actions or conduct apart from simply making the alleged statements; and

(d) the plaintiff's admission that he has not even attempted to contact Whatnot (the only contract he identified, although it arose long after the Complaint was filed) to find out if the defendants did anything to interfere with his contract.

In addition to gutting the $75,000 minimum amount in controversy necessary to sustain federal jurisdiction under 28 USC 1332, these grounds also pertain to the issue of the plaintiff's bad faith in invoking federal jurisdiction in the first place, such that the Court should not retain jurisdiction even if it has discretion to do so.

*******

A.  <u>Dismissal for lack of subject matter jurisdiction is warranted at any point.</u>

Although the Court previously denied a 12(b)(1) motion at the outset of the litigation (Doc # 14), concluding that the allegations sufficed to meet the federal diversity jurisdictional minimum amount in controversy of $75,000, where it has become clear that the plaintiff cannot meet the jurisdictional minimum, dismissal is warranted for lack of subject matter jurisdiction under 28 USC 1332.

"Because the federal courts are without power to act in the absence of subject matter jurisdiction, a court must raise the question of subject matter jurisdiction *sua sponte* at any point when jurisdiction appears to be in doubt. *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). When the court lacks subject matter jurisdiction it "cannot proceed at all, but can only note the jurisdictional defect and dismiss the suit." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 84 (1998)."

*Cazella v. Winter*, Case No. 6:06-cv-1512-Orl-19JGG, 3 (M.D. Fla. Apr. 12, 2007).  See also, *Hunters Run Prop. Owners Ass'n, Inc. v. Centerline Real Estate, LLC*, No. 18-

2

80407-CIV-ROSENBERG/REINHART, at *38 (S.D. Fla. Dec. 22, 2018) ("The Court lacks subject matter jurisdiction to adjudicate Mr. Riner's personal liability. The Court raises this issue *sua sponte*. *See Arbaugh v. Y&H Corp.*, 546 U. S. 500, 506 (2006) ("the objection that a federal court lacks subject-matter jurisdiction, *see* Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation")").

> B. <u>Dismissal of the plaintiff's extortion claim removed treble damages and attorney fees as part of the "minimum amount in controversy" calculation</u>

The Court's decision denying the motion to dismiss was based largely on the potential recovery of treble damages plus attorney fees on the *now-dismissed* extortion claim:

> Additionally, Plaintiff has brought a claim under Florida's Civil Remedies for Criminal Practices Act based on Defendants' alleged acts of extortion. If Plaintiff prevails on that claim, then he may receive treble damages. See Fla. Stat. § 772.104(1). Courts should consider the availability of treble damages when deciding if the amount in controversy requirement has been met. See Ellis v. Warner, No. 15-10134, 2017 WL 634287, at *16 (S.D. Fla. Feb. 16, 2017) (considering the availability of treble damages when deciding if the amount in controversy was satisfied); see also Barson v. Sharr, No. 6:13-cv-1767, 2014 WL 12621198, at *1 n.1 (M.D. Fla. Aug. 12, 2014) ("The Court must include any alleged treble damages available under Florida law in calculating the amount in controversy.").
>
> Plaintiff has also sought attorneys' fees under Florida's Civil Remedies for Criminal Practices Act. The Act provides that a successful plaintiff may receive "reasonable attorney's fees." Fla. Stat. § 772.104(1). And the Eleventh Circuit has stated that "[w]hen a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy." Morrison v. Allstate Indemn. Co., 228 F.3d 1255, 1265 (11th Cir. 2000). Thus, the Court may include a reasonable amount of Plaintiff's attorneys' fees in deciding whether the amount in controversy has been met here.

> When the possible actual damages **are combined with the possible treble damages and the possible reasonable attorneys' fees**, the Court easily finds it is more likely than not that the amount in controversy exceeds $75,000.

*Hales v. Alexis Preston*, 1:24cv00045/AW/ZCB, 14 (N.D. Fla. Aug. 26, 2024)

Given the Court's dismissal of these claims, there is no potential for treble damages and attorney fees for extortion, or any damages for extortion, and so these are no longer part of the amount in controversy calculation for purposes of diversity jurisdiction.  See *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1080 n.10 (11th Cir. 2000) ("when the amount in controversy substantially depends on a claim for attorneys fees, that claim should receive heightened scrutiny. *Cf. Packard,* 994 F.2d at 1046 (explaining that when a "[punitive damages] claim comprises the bulk of the amount in controversy and may have been colorably asserted solely or primarily [for jurisdictional purposes], that claim should be given particularly close scrutiny")").

As is clear from the Court's Order dismissing Counts Three and Four for extortion (Doc. # 63), these claims were completely baseless from the outset.  They were interposed despite there being no statement made by either defendant supporting these claims.  They should not continue to be considered for purposes of subject matter jurisdiction.

C. <u>The plaintiff falsely averred the defendants made "online posts" accusing him of being a child predator in order to overcome lack of jurisdiction.</u>

In denying the defendants' 12(b)(1) motion the Court noted the following claims in determining that the $75k minimum amount in controversy was established:

4

      Plaintiff claims that Defendants have engaged in a coordinated and extensive campaign to defame, harass, extort, threaten, and injure him and his social media business. More specifically, Plaintiff alleges:

      • Defendant Cook "posted a large collection of sex toys and stated [Plaintiff] was selling" them. (Doc. 8-1 at 3)

      • Defendant Cook posted online, "[Plaintiff] would you like me to post the picture of my c8ck in [Plaintiff's partner's] mouth You can't take this down." (Doc. 1 at 6). *12

      • Defendant Preston created and posted throughout the community signs saying things like: "[Plaintiff] raped my daughter," "[Plaintiff] Needs to Go! No Child rapists in Levy Co!," and "Stop [Plaintiff] No Rapists in Levy Co!" (Id. at 6-7).

      • Defendants Cook and Preston have made **"online posts calling [Plaintiff] a child predator,"** and those posts **"are constant and ongoing to this day." (Doc. 8-1 at 4).**

*Hales v. Alexis Preston*, 1:24cv00045/AW/ZCB, 11-12 (N.D. Fla. Aug. 26, 2024)

The citation for plaintiff's support for the final bullet point is to the plaintiff's affidavit (Doc. 8-1) filed with his opposition to the first 12(b)(1) motion; the Complaint itself did not allege any online posts calling the plaintiff a child predator, either specifically or generally.  The plaintiff fabricated the allegation out of thin air about "online posts calling me a child predator" in order to influence the outcome of the 12(b)(1) motion, and the Court's decision demonstrates it was, in fact, influenced by this false statement in denying the motion:

      Defendants have allegedly engaged in a public and coordinated campaign to ruin Plaintiff's successful social media business by, among other things, repeatedly (**both online** and in the real world) **falsely accusing him of being a rapist and a child rapist.** There are few accusations that could be more harmful to a person than false accusations of sexually abusing others-especially children. That is particularly true when the **falsely accused person's business and source of income are directly tied to the number of people who view,**

5

***support, and subscribe to his social media content***. It is not difficult to see how being falsely accused of raping children (along with the other defamatory statements Defendants have allegedly made) could cause Plaintiff to suffer damages in excess of $75,000.

*Hales v. Alexis Preston*, 1:24cv00045/AW/ZCB, 12-13 (N.D. Fla. Aug. 26, 2024)

Since the Court's decision of August 26, 2024, the plaintiff has revealed that he has no evidence to support that either of the defendants have made *online* posts calling him a child predator, either before or after this lawsuit was filed. During his December 19, 2024 deposition in the Pensacola federal courthouse, the plaintiff acknowledged having no examples to cite other than, supposedly, a YouTube livestream he had watched the evening before:

> Q. Okay. Um, in paragraph 19 -- in 19, you write: Mr. Cook's and Ms. Preston's online post calling me a child predator are constant and ongoing to this day. Correct?
>
> A. Correct.
>
> Q. What online post calling you a child predator are you referring to most recently to this day?
>
> A. Well, there was an entire live stream last night calling me a pedophile for over five hours that you were a part of and so were your clients. … So to this day which went past midnight into this day, which is posted online on YouTube currently right now this day.
>
> Q. Are you referring to any Facebook posts?
>
> A. You asked me online posts. So Facebook, YouTube, all of the social media platforms are online postings. … YouTube was last night and this morning to this very day.
>
> Q. You identified last night's YouTube stream. Are there more -- most recently before that, what would be an online post calling you a child predator?

>A. I would have to go back and look. There's so much information for me to go through. … If you would have prepped me for this question, I could have been better prepared.
>
>Q. And then you state: Their behavior is escalating and they're harassing me in Ohio and in Florida. Did I read that correctly? … Is there something other or more recent in Ohio?
>
>A. Well, the aspect of online harassment has no boundaries in regards to states and countries.

See transcript, Exhibit A attached hereto.

If the YouTube live stream of December 18, 2024, that the plaintiff referred to in his deposition on December 19, contains evidence of statements by the defendants accusing him of being a child predator, he can and should identify it in response to this motion.  See Hales v. Alexis Preston, 1:24cv00045/AW/ZCB (N.D. Fla. Aug. 26, 2024) ("Because Defendants have 'offer[ed] evidence outside of the pleadings to rebut jurisdictional 7 8 allegations contained therein,' Plaintiff 'respond in kind with evidence (e.g., extrinsic evidence such as testimony and affidavits) to prove by a preponderance of the evidence that jurisdiction tangibly exists irrespective of the complaint's allegations.' Hensley v. Westin Hotel, No. 1:19-cv-03846, 2023 WL 3641955, at *2 (N.D.Ga. Feb. 27, 2023); see also McCormick, *7 293 F.3d at 1257 (explaining that the party invoking the court's jurisdiction must prove 'by a preponderance of the evidence, facts supporting the existence of federal jurisdiction)."

Regardless of a live stream that conveniently occurred the evening before his live deposition, the plaintiff's statement in paragraph 19 of his affidavit was false and interposed in bad faith specifically to overcome the 12(b)(1) motion, with no ability to support it at the time it was made and nothing identified to support it since.  See Doc. #

8-1, paragraph 19.  To continue to retain jurisdiction based on a known false statement would encourage such abusive invocation and exploitation of federal jurisdiction.  This is especially so for a litigant such as the plaintiff who publicly admitted, in reference to suing the present defendants, that he files litigation not to win, but to vex and impose financial burden on his opponents.  See transcript, Exhibit B attached hereto.

Without *online* posts, the only "real world" alleged false accusation of the plaintiff being a child predator are the roadside signs allegedly found staked in the grass in the early morning of May 13, 2023.  The only evidence the plaintiff has produced is that three people found and removed the signs.  See Doc #s 24-2, 24-3, 24-4.  The plaintiff admits that none of the three believed the statements written on the sign were true.  See transcript, Exhibit C attached hereto ("Q. You admit that Zim Padgett, Stephen Granger and Therese Granger don't believe the statements on the signs, correct?  A. Correct.").

Even if it's assumed that:

- the signs were written and posted by the defendants
- that some cars drove by in the 41 minutes of daylight before the signs were removed (the plaintiff testified he plans to produce a traffic study)
- that some of those cars' occupants noticed the signs, read them and knew whom they referred to (some do not even mention the plaintiff's name)
- that one or more of these cars' occupants that read the signs and knew whom they referred to, believed the statements

this would not establish a minimum amount in controversy of $75,000. The plaintiff admitted in his deposition that he cannot identify a single person who saw, understood and believed the signs:

> Q. How are you going to prove that anybody saw the signs while posted in the ground other than those three people?
>
> A. I think number one, common sense. They're major roads and there have been many studies done on those major roads in regards to whether Otter Creek needs a light or not. And those studies are all public information. So the aspect that people were driving on roads, common sense tells you it's a road. People drive on it, and people saw it. And not only is it just a road. It's very heavy traffic in the road. And so, uh, traffic studies –
>
> Q. Traffic studies? ... So my next question is, can you name anybody by name, an individual? You can certainly say cars drove by, but can you identify any person other than Zim Padgett, Therese Granger or Stephen Granger that saw the signs as they were posted; yes or no?
>
> A. If anybody else comes forward, I will name them.

See transcript, Exhibit D attached hereto.

D. <u>The plaintiff admitted the defendants did nothing to "use" their alleged statements to persuade customers to stop supporting the plaintiff's business.</u>

In denying the first 12(b)(1) motion the Court noted, "Plaintiff further alleges that Defendants have used their 'defamatory statements to persuade [Plaintiff's] customers to stop supporting' his business. (Doc. 1 at 8)." *Hales v. Alexis Preston*, 1:24cv00045/AW/ZCB, 12 (N.D. Fla. Aug. 26, 2024).

In his December 19 deposition, the plaintiff acknowledged that other than the alleged defamatory statements themselves, there was no additional action being alleged that constituted the defendants "using" the statements to interfere with the plaintiff's customer relationships… just the making of the statements:

9

> Q. Apart from the statements themselves, what did Preston and Cook do that you're describing as, quote, using their defamatory statements to persuade Hales' customers to stop supporting Hales?
>
> A. Please rephrase your question.
>
> Q. Yes. Other than the actual statement itself that they make and you reference here, what are they doing to use those statements to persuade people to not support you?
>
> A. The statement of "Jeremy Hales raped my daughter" is more than enough to persuade a customer not to support me. Nothing else needs to be said or done.

See transcript, Exhibit E attached hereto.

Thus, "using the defamatory statements to persuade customers" is nothing more than a contrived phrase devoid of any substantive meaning beyond allegedly making the statements. It provides no basis for consideration as adding to the minimum amount in controversy for purposes of federal diversity jurisdiction.

E. <u>The plaintiff admitted to not having attempted to learn of any interference by the defendants with "Whatnot," the only contract he identified.</u>

The plaintiff identified only one contract he claims the defendants interfered with, "Whatnot," but admitted in his deposition that he did not contact Whatnot to learn if either of the defendants had done anything to interfere with his contract. See Exhibit F attached hereto:

> Q. Do you have evidence that John Cook made direct contact with Whatnot of any kind at any time?
>
> A. I will contact Whatnot and find out who contacted them.
>
> Q. Do you have any evidence that Michelle Preston -- Lynette Preston contacted Whatnot directly at any time?
>
> A. I have evidence of your client saying, report everything that I do, which we actually looked at in your exhibits earlier here this morning.

>Q. Do you have evidence that Lynette Michelle Preston directly contacted Whatnot?
>
>A. I will contact Whatnot and find out if she did.

The plaintiff has thus far refused to produce a copy of the Whatnot contract in response to the defendants' discovery requests.

F. <u>Exercising supplemental jurisdiction is not warranted</u>.

There was *never* a basis for federal question jurisdiction (notwithstanding the citation of 28 USC 1331 in the Complaint as a basis for jurisdiction). Therefore, this is not a case where the federal court can exercise supplemental jurisdiction after dismissing federal claims that *unquestionably* conferred original federal jurisdiction. Rather, this is a case where false allegations, which were not even included in the Complaint, were specifically fabricated to include in an affidavit to overcome a motion to dismiss challenging diversity jurisdiction. See Doc. # 8-1, para. 19. The "online" posts were vaguely conjured because the alleged "real world" accusations made against him by the defendants – roadside signs seen by three people who didn't believe them – fall far short of establishing damages of $75,000.

"If some event subsequent to the complaint reduces the amount in controversy, such as the dismissal of one count based on the defendant's answer, the court must then decide in its discretion whether to retain jurisdiction over the remainder of the case." *Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995).

"In particular, it is important to consider **whether the amount claimed in the complaint was made in good faith, or whether plaintiff was consciously relying on flimsy grounds to get into federal court**. See Rosado v. Wyman, 397 U.S. 397, 404-

11

05, 90 S.Ct. 1207, 1213-14, 25 L.Ed.2d 442 (1970) (distinguishing initial "insubstantiality" from subsequent "mootness"). Another critical equitable factor is the existence of any state limitations bars to refiling in state court.  See Ridenour v. Andrews Federal Credit Union, 897 F.2d 715, 722 (4th Cir. 1990)." *Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995).

As the information provided in this motion clearly shows, the plaintiff's claim of indeterminate damages exceeding $75,000 was not made in good faith but was based on "flimsy grounds to get into federal court" when there was no reason the claims could not have been pursued in state court without issues of jurisdiction.  Given the plaintiff's use of this litigation to generate ongoing, almost daily content for his YouTube videos, it appears possible that federal court was chosen *because of* the prospect of content-generating proceedings over the issue federal jurisdiction, regardless of the outcome, with the worst-case scenario for the plaintiff being that he would have to refile his claims in state court to further exploit litigation for content.

As there is no bar to the plaintiff re-filing his claims in state court, this critical factor also weighs in favor of dismissal for lack of jurisdiction under 28 USC 1332. *Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995).  See also, *Vines v. Mountaire Farms, Inc.*, No. 23-1365, at *14 (4th Cir. Mar. 25, 2024) (upholding dismissal of remaining counts following granting of a summary judgment motion that reduced the amount of controversy to below the threshold under 28 USC 1332: "We hold that the record supports the district court's conclusion that any possible damages for lost wages for Vines's two-day suspension would fall below the $75,000 threshold necessary to

invoke the court's diversity jurisdiction under 28 U.S.C. § 1332. Thus, we affirm the district court's holding to "dismiss" this claim "with instructions to refile in state court.").

## Conclusion

Federal jurisdiction was invoked by the plaintiff with no basis for claiming extortion in the first place, and the plaintiff made a false statement in his affidavit intended specifically to influence the outcome of the first 12(b)(1) motion. In light of the contrived basis on which the plaintiff invoked federal jurisdiction, plus the inclusion of a false statement in his affidavit to influence jurisdiction, and because he cannot possibly establish $75,000 in damages, the Court should dismiss this case for lack of subject matter jurisdiction.

Defendants Preston and Cook, by:

*/s/ Bruce Matzkin*
Bruce Matzkin, Esq.
51 Pleasant Street, # 72
Malden, MA 02148
857-242-8614
Brucematzkin1@gmail.com

**CERTIFICATION**

I hereby certify that on February 5, 2025, a copy of the foregoing was emailed to counsel of record for the plaintiff:

Randall Shochet, Esq
Shochet Law Group
Attorneys for Jeremy B. Hales
409 N. Main Street Trenton, FL 32693
rshochet@shochetlaw.com


　　　*/s/ Bruce Matzkin*