UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **JEREMY B. HALES,** | : | Civil Action No.: |
| | : | 1:24-CV-00045-AW-ZCB |
| **Plaintiff,** | : | |
| v. | : | |
| | : | |
| **LYNETTE MICHELLE LACEY ALEXIS PRESTON** | : | |
| and | : | |
| **JOHN COOK,** | : | |
| | : | |
| **Defendants** | : | |

**<u>DEFENDANT COOK'S ANSWER,
AFFIRMATIVE DEFENSES, and COUNTERCLAIM</u>**
*******
**<u>Answer</u>**

Defendant John Cook states as follows in Answer to the plaintiff's Complaint (Doc. # 1):

**"SUMMARY OF THE CASE"**

1. Deny that "this case is about the use of threats or extortion to compel HALES to behave in a certain manner and/or to persuade HALES to provide PRESTON and COOK with benefits."  The Court dismissed the plaintiff's claims of extortion for failure to state a claim (Doc. # 63), leaving the plaintiff's "Summary of the Case" devoid of anything pertaining to what remains of this contrived, frivolous lawsuit.  This case is about **"POLAMOP": Protraction of Litigation and Multiplication of Proceedings**, to create ongoing YouTube content, including lying in a sworn affidavit to influence federal jurisdiction.  See Doc. # 8-1, ¶ 19.

## THE PARTIES

2. Admit that the plaintiff has a YouTube subscription base of over 700,000 subscribers.  Without knowledge as to the remainder of the allegations in this paragraph.

3. Admit that subscribers pay the plaintiff monthly fees.  Deny the characterization of the plaintiff's social media platform as an "open video diary of HALES' life" as this would connote that the plaintiff's actions featured in his content are not contrived for that purpose but are a genuine chronicle of his life unconnected to the purpose of creating content.  The more accurate characterization of the plaintiff's social media platform, as concerns the defendants, is that it is used by the plaintiff to cyberstalk them for entertainment and profit, giving rise to liability under 18 USC 2261A (for targeting defendants Preston and Cook) and 18 USC 2261B (for targeting Preston's young child).

4. This paragraph is gratuitous and does not contain a factual allegation capable of meaningful response.

5. Without knowledge of the plaintiff's expenses and efforts to build and maintain relationships and goodwill.

6. Does not pertain to defendant Cook.

7. Admit, except deny being a viewer of Hales' social media platforms.

**JURISDICTION AND VENUE**

8. Deny jurisdiction under 28 USC 1367 or 28 USC 1331.

    Deny jurisdiction under 28 USC 1332 as the plaintiff cannot establish a minimum amount in controversy greater than $75,000 in light of:

    (a) there *never* having been any valid claims of extortion giving rise to potential treble damages plus attorney fees, such that the inclusion of Counts 3 & 4 in the Complaint *unduly* influenced the Court's exercise of federal jurisdiction (see Doc. # 14, pp. 14-15: "When the possible actual damages are combined with the possible treble damages and the possible reasonable attorneys' fees, the Court easily finds it is more likely than not that the amount in controversy exceeds $75,000.");

    (b) the plaintiff's admission that his allegation in support of his tortious interference claims (Counts 5 & 6) that the defendants "used their defamatory statements to persuade HALES' customers to stop supporting HALES" – which the Court relied on in exercising jurisdiction (see Doc. # 14, p. 12) – does not refer to conduct beyond simply making the alleged defamatory statements themselves;

    (c) the plaintiff's status as a public figure (see Doc # 1, ¶ 2, describing "a current YouTube subscription fan base of over 700,000 people across the world for his YouTube channel 'What The Hale$'") such that none of the defendants' statements alleged in the Complaint (¶¶ 25, 27 & 30) or in plaintiff's opposition to summary judgment (Doc. #'s 24-7 to 24-26) are legally actionable;

>    (d) the plaintiff's false statement that the defendants made "online posts calling the plaintiff a child predator," which allegation was not in the Complaint but included in the plaintiff's sworn affidavit (see Doc 8-1, ¶ 19) specifically to influence the Court's exercise of federal jurisdiction and which the Court relied on in determining that the minimum amount in controversy had been met (see Doc. # 14, pp. 12-13, emphasizing that the plaintiff accuses the defendants of "repeatedly (both *online* and in the real world) falsely accusing him of being a rapist and a child rapist."); and
>
>    (e) the plaintiff's admission of knowing of no other individuals who saw the roadside signs underlying Counts 1 & 2 that he alleges the defendants wrote and placed, besides three individuals who removed them and who the plaintiff admits knew the statements were false.

9. Admit venue is proper in the Gainesville Division of the Northern District of Florida, although the location of the proceedings is inconvenient.

## FACTUAL ALLEGATIONS

10. Without knowledge to admit or deny.
11. Admit.
12. Admit only that a channel was created as needed to have a YouTube ID to chat and comment (as millions do without being accused of "creating a channel" as that is intended to mean by the plaintiff). Deny that the channel has been used to make content for public consumption, or barely any content other than a few "home videos."
12. **[sic]** Admit taking a photo as described, deny the remaining allegations.

13. Admit Hales assisted removing a tree with his tractor, deny the remaining allegations.

14. Admit.

15. Admit.

16. Admit.

17. Admit to Facebook groups that may have included posts relating to donations for a 501(c)(3) tortoise rescue.

18. Unable to meaningfully respond to what the phrase "made it clear" subjectively means as used by the plaintiff.

19. Admit that the plaintiff gave Preston two Leap Pads.

20. Admit asking to attend.  Unable to admit or deny the characterization of the quantity of the plaintiff's fans/supporters of from where they came.

21. Admit.

22. Admit.

23. Admit.

24. Deny.

25. Deny.

26. Without knowledge to admit or deny.

27. Deny.

28. Doesn't pertain to defendant Cook.

29. Admit that the plaintiff had a cease-and-desist letter sent to the defendants.

30. Admit.

31. Deny generally, and deny any additional action or conduct, apart from any alleged statements themselves to the extent made, that could constitute "using" statements "to persuade" customers of Hales to stop supporting him.

32. Admit that the plaintiff procured a TRO from an Ohio court, where he was represented by counsel and where the defendants were appearing via remote video conference *pro se*, based on allegations of matters occurring in Florida and despite the defendants never having been to Ohio, and only after he sought and was denied a TRO in Florida Levy County Court.

33. Deny.

34. Deny.

35. Deny plaintiff has suffered damages. The plaintiff has made a huge windfall through the increased subscriptions and views of his YouTube "bad neighbors" videos compared to videos without "bad neighbors" content. Deny that the plaintiff has "incurred costs associated with his extensive efforts to mitigate against such injury and harm" as his costs have been subsidized through (a) cash donations by his YouTube viewers in envelopes that the plaintiff opens during livestream broadcasts, (b) direct donations to his litigation counsel via links provided under WhatTheHales videos, and (c) "Superchats" during his livestreams soliciting financial donations for his ever-growing "legal expenses."

36. Deny.

37. Deny.

38. Deny.

39. Deny.

40. The statutory language speaks for itself.

**COUNT ONE – Does not pertain to defendant Cook.**

41.-48. Does not pertain to defendant Cook.

**COUNT TWO -- DEFAMATION**

49. 1-40 incorporated herein.

50. Deny that damages exceed $75,000, if any.

51. Deny.

52. Deny.

53. Deny.

54. Deny.

55. Deny.

56. Deny.

**COUNTS THREE & FOUR** covering ¶¶ 57-68 have been dismissed (Doc # 63).

**COUNT FIVE -- Does not pertain to defendant Cook.**

**COUNT SIX – TORTIOUS INTERFERENCE**

75. 1-40 incorporated herein.

76. Deny that damages exceed $75,000, if any.

77. Admit.

78. Deny.

79. Deny.

80. Deny.

## **Affirmative Defenses**

1. The plaintiff failed to mitigate damages and caused his own damages by repeatedly publishing to the world the defamatory signs and statements contained on them, which had otherwise been known to only three individuals all of whom the plaintiff admits knew the statements on the signs were false.

2. If any individuals were, are or become aware of the signs other than three people who knew the statements on them were false, it was/is/will be due to the plaintiff's publication.

3. If any individuals believed, believe or will believe the statements written on the signs, it was/is/will be a consequence of the plaintiff's publication.

4. Other than three individuals who found and removed the signs, the plaintiff cannot identify any individuals who saw any of the signs as allegedly placed in the ground by the defendants, let alone anyone who knew whom the signs referred to.

5. The plaintiff himself planted the "defamatory roadside signs" to create a contrived basis for lawsuit to exploit by protracting litigation and multiplying proceedings in order to generate ongoing litigation-related YouTube content for the plaintiff's "Bad Neighbors" storylines on his YouTube channel, "WhatTheHale$."

## Counterclaims

### Count One: Intentional Infliction of Emotional Distress

1. The plaintiff and his counsel conspired to form a contrived basis for filing litigation against the defendants not to pursue meritorious legal claims, but to generate ongoing litigation-related YouTube content via "POLAMOP" – the purposeful *protraction of litigation and multiplication of proceedings*.

2. The plaintiff would benefit financially from ongoing litigation generating fresh, compelling YouTube content, with the aim being to create as many issues and proceedings along the way as possible.

3. The plaintiff's counsel would benefit financially from a regular stream of legal fees, funded in large part by donations from viewers of the plaintiff's YouTube content focusing on this litigation, with donations coming in the form of cash mailed to the plaintiff, donations directly to his counsel via link under his YouTube videos, and other methods of donating.

4. With the legal fees being paid by donors, there would be no limit on counsel's expenditure of billable time, so that he had financial incentive to protract the litigation and to multiply the proceedings, thereby fulfilling the purpose of the plaintiff in bringing a lawsuit: generating ongoing fresh litigation-related YouTube content for the plaintiff's storylines.

5. The plaintiff's interest in contriving storylines for content is symbiotic with his lawyer's interest in maximizing billable time without regard for the consumption of Court time and resources.

6. The device the plaintiff contrived for the basis of a federal lawsuit and accompanying YouTube storylines were the "defamatory roadside signs" falsely alleged by him in ¶ 28 of the Complaint as having been created by the defendants.

7. The plaintiff framed the defendants so he could accuse them of being responsible for the signs as the basis for filing his present lawsuit, creating litigation to generate YouTube content.

8. The plaintiff's accusations that the defendants planted the signs were, and are, false and known to be false by the plaintiff.

9. The plaintiff's statements accusing the defendants of creating and planting the signs were made and continue to be made with malicious intent to injure the defendants.

10. The plaintiff also falsely accused the defendants of extortion and tortious interference as additional contrived claims to generate litigation content.

11. The plaintiff's false accusations have caused the defendants to be subjected to hate, ridicule, contempt, mocking, humiliation, threats, false reports to government agencies, vulgar and menacing messages from strangers via phone and written messages, and other harm.

12. The plaintiff's actions are extreme and outrageous.

13. The plaintiff knew and intended his false accusations would cause the defendants to suffer severe emotional distress.

14. The plaintiff's false accusations have caused the defendants to suffer severe emotional distress.

### Count Two: Florida Statute 540.08

15. The plaintiff has misappropriated the defendants' image and likeness by placing them on video "thumbnails" in order to advertise the videos as "Bad Neighbors" videos in which the defendants appear involuntarily as villains in the plaintiff's contrived YouTube storylines.
16. The plaintiff's use of the defendants' image and likeness has been without their consent.
17. The plaintiff's use of the defendants' image and likeness has been for commercial and/or advertising purposes, in order to increase views of videos and revenue to the plaintiff from the videos as a result of using the image of the defendants.
18. Because of the plaintiff's unauthorized use of the defendants' image and likeness for commercial and/or advertising purposes, the defendants have suffered loss and injury and are entitled to recover reasonable damages including royalties.

### Count Three: Invasion of Privacy by Unauthorized Publication

19. The plaintiff has published the defendant's photo, image and/or likeness on his YouTube page and in video thumbnails on many occasions.
20. Every publication of the defendant's photo, image and/or likeness by the plaintiff has been unauthorized.
21. The plaintiff's publication of the defendant's photo, image and/or likeness has been intended to humiliate and mock the defendant.

22. The plaintiff's publication of the defendant's photo, image and/or likeness has invaded the defendant's privacy.

23. The invasion of the defendant's privacy by the plaintiff via unauthorized publication of his photo, image and/or likeness has caused the defendant to suffer damages, including but not limited to severe emotional distress.

*******

Defendant Cook requests a bench trial.

Defendant John Cook,
by:

*/s/ Bruce Matzkin, pro hac vice*

51 Pleasant Street, # 72
Malden, MA 02148
857-242-8614
Bruce@Matzkinlaw.llc

**CERTIFICATION OF SERVICE**

      I hereby certify that on February 8, 2025, a copy of this motion was emailed to counsel of record for the plaintiff:

Randall Shochet, Esq
Shochet Law Group
Attorneys for Jeremy B. Hales
409 N. Main Street Trenton, FL 32693
rshochet@shochetlaw.com


*/s/ Bruce Matzkin*