UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JEREMY BRYAN HALES,

Plaintiff,
v.                                                          Case No.:1:24-cv-00045-ZCB

LYNETTE MICHELLE
LACY ALEXIS PRESTON
and
JOHN COOK,

Defendants.
_____/

**RESPONSE TO DEFENDANTS' SECOND MOTION TO DISMISS UNDER FRCP 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION (Doc. 67)**

Plaintiff JEREMY BRYAN HALES, in accordance with Local Rule 7.1(e), responds to Defendants' Second Motion To Dismiss Under FRCP 12(B)(1) For Lack Of Subject Matter Jurisdiction (Doc. 67), and states:

Defendants seek a "second bite at the apple" by following this second motion to dismiss attacking the amount in controversy only. (Doc. 67). Defendants argue that the amount in controversy can no longer be satisfied due to the dismissal of Plaintiffs extortion count, and Plaintiff's purported "admissions." (Doc. 67).

The motion should be denied as it is plainly without merit.

I. **The Existence Or Nonexistence Of The Amount In Controversy Required For Subject Matter Jurisdiction Is Determined On The Basis Of The Facts And Circumstances As Of The Time That An Action Is Commenced In A Federal Court**

"**Under an easily stated, well-settled principle**, reflected in cases throughout the federal courts, the existence or nonexistence of the amount in controversy required for subject matter jurisdiction is determined on the basis of the facts and circumstances as of the time that an action is **commenced** in a federal court." 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3706 (5th ed. 2023). *Lloyd v. Facebook, Inc.*, No. 23-15318, 2024 U.S. App. LEXIS 16527, at *5-6 (9th Cir. July 8, 2024) (emphasis in original).

The dismissal of the extortion count does not defeat diversity jurisdiction at this stage of the case. *Cf. Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997) ("Events occurring after the filing of the complaint that reduce the amount recoverable below the requisite amount do not oust the court from jurisdiction." (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293, 58 S. Ct. 586, 82 L. Ed. 845 (1938))).

Subsequent amendments to the complaint, or dismissal of certain claims, even if they reduce the demand to below $75,000, "do not ordinarily oust diversity jurisdiction as long as the original demand was made in 'good faith.'" Federal Practice Guide § 2:1799 at 2C-90 (citing *St. Paul Mercury Indem. Co.*, 303 U.S. at 294-96); *see also Budget Rent-A-Car, Inc.*, 109 F.3d at 1473 ("A claim made in excess of the requisite amount, made in good faith in the complaint, satisfies the jurisdictional requirement. Events occurring after the filing of the complaint that

reduce the amount recoverable below the requisite amount do not oust the court from jurisdiction.") (citations omitted).

This Court has already determined that the original demand was made in good faith:

> There are few accusations that could be more harmful to a person than false accusations of sexually abusing others—especially children. That is particularly true when the falsely accused person's business and source of income are directly tied to the number of people who view, support, and subscribe to his social media content. **It is not difficult to see how being falsely accused of raping children (along with the other defamatory statements Defendants have allegedly made) could cause Plaintiff to suffer damages in excess of $75,000**. *See, e.g.*, *Moore v. Senate Majority PAC*, No. 4:19- cv-1855, 2023 WL 7220943, at *1 (N.D. Ala. Sept. 29, 2023) (refusing to set aside $8.2 million defamation jury verdict where the defendant falsely stated in public advertisements that the plaintiff had solicited underage girls for sex); *Lustig v. Stone*, No. 15-20150, 2019 WL 11660556, at *4 (S.D. Fla. Apr. 29, 2019) (awarding the plaintiff $700,000 in damages for defamation where the defendant referred to the plaintiff publicly as "an adult predator and like a child molester" who had masterminded an "attempted pre-meditated murder") (emphasis added) (Doc. 14).

> When the possible actual damages are combined with the possible treble damages and the possible reasonable attorneys' fees, the Court **easily** finds it is more likely than not that the amount in controversy exceeds $75,000. (emphasis added) (Doc. 14).

II.   **The Motion Should Not Be Well Taken.**

Even the statement in "paragraph 19" – which focuses on repeated defamatory posts which the Plaintiff has seen, was made in good faith. In fact, Plaintiff's statements about Defendant's defamatory social media posts he has seen has evidentiary value, and it is uncontroverted. It is axiomatic that troubling social media posts, such as those which accuse someone of being any kind of child predator, **would be deleted by the publisher**. In fact, **Defendant Preston has already deleted her *entire Facebook group*, called "Otter Creek Friends and Neighbors"** which – prior to being deleted – contained, i.e., a social media post from Defendant Preston to Plaintiff that stated:

> #1. 1 am not a whore Jeremy. I have never slept around that's why I was married so often.
>
> #2. John is his own man I don't know why Jeremy attacks me due to John's behavior when he knows the truth.
>
> #3. Again we do not live in filth ot (sic) a garage dump.
>
> #4. I do not and have not ever beat my baby daughter. **Shame on you Jeremy**.
>
> #5. **John is not a sex offender or pedophile BUT I FIND IT FUNNY YOU HANG OUT WITH MEN THAT ARE AND YOU YOURSELF ARE DISGUSTING TOWARDS CHILDEN MAINLY FOCUSING ON LITTLE GIRLS CROTCHES**..
>
> #6. I'm my own person.

See **Exhibit "1"** (emphasis added). Defendant alleges that Plaintiff fabricated these allegations "out of thin air." (Doc. 68). In reality, Defendant Preston made her

defamatory statements about Plaintiff *disappear into thin air*, and discovery continues. This shows that the motion should not be well taken as it simply would permit a party - who has already been shown to delete their own posts (and an entire Facebook Group) made in social media - to falsely claim that their opponent is being untruthful when they state that they saw defmatory posts before they were deleted by the publisher. Furthermore, the complaint does not hinge on whether or not *repeated* posts were made.

Regarding the motion's claim that Plaintiff cannot identify a single person who saw the defamatory signs "other than Zim Padgett, Therese Granger, or Stephen Granger," Defendants' counsel disproved this himself recently in the deposition of Ms. Amanda Martin (Defendant Preston's Court Appointed Victims Advocate), an employee of the Eighth Judicial Circuit In The State Of Florida – who testified that she saw the signs when social media posts and *links to those defamatory signs* were sent to her by two different people **via email**. See Transcript attached as **Exhibit "2."**

Regarding anyone directly contacting Whatnot Inc. to use defamatory statements to interfere with Plaintiff's relationship with Whatnot Inc., again Defendants' counsel has recently provided such evidence. This occurred Monday, February 17, 2025, when Defendants' counsel emailed Mr. Kam – a Whatnot Inc. representative - and stated:

> "Mr. Kam should know that you are dragging him and his company into **your client's scam of contrived litigation** to create YouTube content for **your client's storylines**.
>
> Mr. Kam may be interested to learn that as part of your and **your client's litigation scam that you're now trying to involve Whatnot in, he committed perjury** to trick the federal court into exercising jurisdiction by **filing a false affidavit** stating my clients made and were making "online posts calling him a child predator constantly and ongoing to this day," and that as counsel you did nothing to confirm whether there were any such online posts before you signed the motion opposition (sic) that relied on that **perjured statement**.
>
> I would think any company would want to know if one of their **prominent customers** who regularly promotes his business with them, **is falsely using them to support fake lawsuits** (emphasis added)."

See **Exhibit "3."**

Defendants also purport to know that there were "41 minutes of daylight before the signs were removed." (Doc. 68). This is evidence that Defendants are protesting too much (from Shakespeare's play "Hamlet": "Thou dost protest too much") because only someone who knew the date and time when these defamatory road signs were placed would make such a statement.

### III. Defendants' Caselaw Citations Are Unavailing At Best and Misleading At Worst

Defendants rely on *Shanaghan v. Cahill*, 58 F.3d 106, 108 (4th Cir. 1995) (Doc. 68) but this is easily distinguished from this case. *Shanaghan* involved a case

where, after other counts were eliminated, the sole remaining count was for an *amount certain* in liquidated damages, which irrefutably fell below the minimum amount in controversy threshold: "[T]he trial court felt compelled to dismiss all of plaintiff's claims when one count was eliminated and the remaining **liquidated damages** totaled less than fifty thousand dollars." *Shanaghan v. Cahill*, 58 F.3d 106, 108 (4th Cir. 1995). Nevertheless, the 4th Circuit reversed the lower court's judgment and remanded and held that the lower court had discretion to retain the remaining counts. *Id*.

Defendants also purport to quote from *Rosado v. Wyman*, 397 U.S. 397, 90 S. Ct. 1207 (1970), by stating using "quotes":

> "In particular, it is important to consider **whether the amount claimed in the complaint was made in good faith, or whether plaintiff was consciously relying on flimsy grounds to get into federal court**. (sic) See Rosado v. Wyman (sic), 397 U.S. 397, 404- 05, 90 S.Ct. 1207, 1213-14, 25 L.Ed.2d 442 (1970) (distinguishing initial "insubstantiality" from subsequent "mootness").

(Doc. 68)(emphasis in Defendants' Motion).

However, upon reading pages 404–405 of the opinion in *Rosado v. Wyman, **the purported "quotation" does not exist***:

> On remand the District Court correctly considered mootness a factor affecting its discretion, not its power, and balanced the policy considerations that have spawned the doctrine of pendency and the countervailing policy of federalism: the extent of the investment of judicial energy and the character of the claim. Not only had there been

hearings and argument prior to dismissal of the constitutional claim, but the statutory question is so essentially one "of federal policy that the argument for exercise of pendent jurisdiction is particularly strong." *United Mine Workers* v. *Gibbs*, 383 U.S. 715, 727 (1966).

Respondents analogize dismissal for mootness to dismissal for want of a substantial claim and rely on language in *United Mine Workers* v. *Gibbs*, to the effect that a federal court should not pass on a state claim when the federal claim falters at the threshold and is "dismissed before trial." 383 U.S., at 726. The argument would appear to be that once a federal court loses power over the jurisdiction-conferring claim, it may not consider a pendent claim. They contend that mootness, like insubstantiality, is a threshold jurisdictional defect.

Whether or not the view that an insubstantial federal question does not confer jurisdiction -- a maxim more ancient than analytically sound -- should now be held to mean that a district court should be considered without *discretion*, as opposed to *power*, to hear a pendent claim, we think the respondents' analogy fails. Unlike insubstantiality, which is apparent at the outset, mootness, frequently a matter beyond the control of the parties, may not occur until after substantial time and energy have been expended looking toward the resolution of a dispute that plaintiffs were entitled to bring in a federal court.

We are not willing to defeat the commonsense policy of pendent jurisdiction -- the conservation of judicial energy and the avoidance of multiplicity of litigation -- by a conceptual approach that would require jurisdiction over the primary claim at all stages as a prerequisite to resolution of the pendent claim. The Court has shunned this view. See *Moore* v. *New York Cotton Exch.*, 270 U.S. 593 (1926); *Hurn* v. *Oursler*, 289 U.S. 238 (1933) (dictum).

*Rosado v. Wyman*, 397 U.S. 397, 403-405.

The particular words that the motion relies upon when citing to *Rosado v. Wyman* as being in support of their Motion *do not exist in the cited Rosado v. Wyman opinion*:

- "***consciously relying on flimsy grounds* to get into federal court**," *appears nowhere in the cited Rosado v. Wyman opinion*;

- "**Consciously**" does not appear in the cited *Rosado v. Wyman* opinion.;

- "**Relying on flimsy grounds**" does not appear in the cited *Rosado v. Wyman* opinion;

- "**Good faith**" does not appear in the cited *Rosado v. Wyman* opinion.

Defendants have obviously fabricated these phrases from whole cloth while presenting them as purportedly being from that United States Supreme Court opinion.

Exceptionally, Defendants' use of a quotation mark misleads this Court into thinking that this is a direct quote from the cited opinion. This also should not be well taken. Moreover, **this is not the first time Defendants have done this** – while attempting to argue the minimum amount in controversy:

> 9. Defendant has made a bare-bones allegation that the complaint has "no allegation establishing the minimum amount in controversy for federal diversity jurisdiction." Motion, at p. 3.

>10. In doing so, Defendant misstates and misrepresents the law to this Court, by citing to an opinion which does not exist.
>
>11.   Defendant's misrepresentation should not be well taken by this Court.
>The Motion states: "See Lee Mem'l Health Sys. v. Lexington Ins. Co., Case No: 2:18-cv-617-FtM-38UAM (M.D. Fla. Mar. 7, 2019") ("Other than the conclusory statement in paragraph 2, there is no factual basis for the court to conclude the jurisdictional amount is satisfied in this case."). However, the document from that case from March 7, 2019 **contains no such statement** and is simply an order denying consolidation. FN 1.

See Doc. 8 and Doc. 9 (emphasis in original). See also Doc. 54 at 15 n.1.

Even if Defendants had not misquoted from *Rosado v. Wyman,* that opinion is nowhere near analogous to the facts in this case. This is because in *Rosado v. Wyman,* the Supreme Court held that the district court <u>retained jurisdiction</u> over a *pendent claim* after it declared moot *a constitutional claim*. *Rosado v. Wyman* is **not** based on diversity jurisdiction and the amount in controversy.

In fact, the "insubstantiality" addressed in the cited *Rosado v. Wyman* was that of a federal question, not the amount in controversy.

## Conclusion

For the reasons above, it is respectfully requested that Defendants' Second Motion To Dismiss Under FRCP 12(B)(1) For Lack Of Subject Matter Jurisdiction (Doc. 67) be **DENIED.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 19, 2025, I served on this day on all counsel of record, via email to the Service List below.

By: /s/ *Randall Shochet*
Randall Shochet, Esq.

**SERVICE LIST**

Bruce Matzkin, Esq., pro hac vice
Attorneys for PRESTON and COOK
51 Pleasant Street, # 72
Malden, MA 02148
Brucematzkin1@gmail.com