UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **JEREMY B. HALES,** | : | Civil Action No.: |
| | : | **1:24-CV-00045-AW-ZCB** |
| **Plaintiff,** | : | |
| v. | : | |
| | : | |
| **LYNETTE MICHELLE LACEY ALEXIS PRESTON** | : | |
| and | : | |
| **JOHN COOK,** | : | |
| | : | |
| **Defendants** | : | |

## REPLY TO PLAINTIFF'S 12(b)(1) OPPOSITION

(a) "The Court has already determined that the original demand was made in good faith." -- Plaintiff's 12(b)(1) opposition (Doc # 80), p. 3.

This is false. The Court determined that the amount in controversy satisfied the jurisdictional minimum under 28 USC 1332 in reliance on (A) the plaintiff's contrived "extortion" claims giving rise to treble damages plus attorney fees, (B) the statement in the plaintiff's affidavit (Doc # 8-1, para. 19) that the defendants' "online posts calling me a child predator are constant and ongoing to this day," and (C) the allegation of "using defamatory statements to influence customers." As the Court has come to learn, (A) the extortion claims were interposed without basis in fact (see Doc # 63 dismissing extortion); (B) the statement in paragraph 19 of the plaintiff's affidavit was falsely interposed to influence the outcome of the prior 12(b)(1) motion; and (C) the plaintiff's allegation the defendants "used their defamatory statements to influence customers" doesn't allege any additional actions.

There is not, nor was there ever, the possibility of recovering $75,000. The plaintiff clearly invoked federal jurisdiction in bad faith.

(b) The plaintiff's memorandum (Doc # 80) states on page 5:

> Regarding the motion's claim that Plaintiff cannot identify a single person who saw the defamatory signs "other than Zim Padgett, Therese Granger, or Stephen Granger," Defendants' counsel disproved this himself recently in the deposition of Ms. Amanda Martin (Defendant Preston's Court Appointed Victims Advocate), an employee of the Eighth Judicial Circuit In The State Of Florida – who testified that she saw the signs when social media posts and links to those defamatory signs were sent to her by two different people **via email**. See Transcript attached as **Exhibit "2."**

This distorts Ms. Martin's testimony. "The motion's claim that Plaintiff cannot identify a single person who saw the defamatory signs 'other than Zim Padgett, Therese Granger, or Stephen Granger'" refers to page 9 of defendants' memorandum (Doc # 68): "The plaintiff admitted in his deposition that he cannot identify a single person who saw, understood and believed the signs:… Q. [C]an you identify any person other than Zim Padgett, Therese Granger or Stephen Granger that saw the signs *as they were posted?*"

The plaintiff leaves out "as they were posted" to mislead the Court into believing that Ms. Martin "seeing the signs" on YouTube somehow supports the plaintiff's claim. In fact, the plaintiff admitted in his deposition to knowing of nobody who saw the signs <u>as they were posted</u> other than the three people who found them: "If anybody else comes forward, I will name them." He hasn't named anybody.

*******

(c) The plaintiff states on pages 5-6 of Doc # 80: "Regarding anyone directly contacting Whatnot Inc. to use defamatory statements to interfere with Plaintiff's relationship with Whatnot Inc., again Defendants' counsel has recently provided such evidence. This occurred Monday, February 17, 2025, when *Defendants' counsel emailed Mr. Kam – a Whatnot Inc. representative*…." [followed by excerpts of the email in question].

2

Besides the plaintiff's tacit admission of having no other evidence to support his claim of interference, the undersigned did not email Whatnot representative "Mr. Kam." The quoted email was <u>to the plaintiff's counsel</u> in response to an email <u>from the plaintiff's counsel</u> that he sent to Mr. Kam and inexplicably "Cc'd" the undersigned, about their confidentiality concerns. The plaintiff's memorandum omitted the beginning of the undersigned's email to make it misleadingly appear that the undersigned independently contacted Mr. Kam, but the undersigned's "Reply all" was "To" Atty. Shochet with automatic "Cc" to Mr. Kam, and his reply email addressed Mr. Shochet but not Mr. Kam:

> "Mr. Shochet, I do not know what machinations you are orchestrating by copying me on this communication. I have no obligation to provide a proposed order of confidentiality, although I <u>did</u> specifically provide a stipulation to maintain confidentiality, in writing, but you ignored that because your purpose has been to exploit the issue of the production of this contract for as long as possible in order to waste time and create issues for court motions, <u>to generate YouTube content</u>."

*******

(d)     The plaintiff and his counsel accuse the undersigned of fabricating a quotation from legal authority, going so far as to reprint the entire two pages of a U.S. Supreme Court decision, <u>Rosado</u>, they claim was falsely quoted in the defendants' memorandum. See Doc. # 80 pp. 7-9, concluding:

> Defendants have obviously fabricated these phrases from whole cloth while presenting them as purportedly being from that United States Supreme Court opinion [<u>Rosado</u>]. Exceptionally, Defendants' use of a quotation mark misleads this Court into thinking that this is a direct quote from the cited opinion. This also should not be well taken.

The alleged "fabrication" is in fact a direct, exact quote from the <u>Shanaghan</u> decision which is cited following the quote, and within which quote is an internal citation by the *Shanaghan* court to the U.S. Supreme Court decision in <u>Rosado</u>. See Doc # 68, pp. 11-12. The defendants' memorandum neither quotes nor independently cites <u>Rosado</u> and there is

3

no representation that any of the quoted language came from Rosado. But to further the false accusation, the plaintiff leaves off the last sentence of the quote from the defendants' memorandum as well as the Shanaghan citation itself. See Doc # 80, p.7:

"In particular, it is important to consider whether the amount claimed in the complaint was made in good faith, or whether plaintiff was consciously relying on flimsy grounds to get into federal court. (sic) See Rosado v. Wyman (sic), 397 U.S. 397, 404- 05, 90 S.Ct. 1207, 1213-14, 25 L.Ed.2d 442 (1970) (distinguishing initial "insubstantiality" from subsequent "mootness"). **[omitted by the plaintiff:]** Another critical equitable factor is the existence of any state limitations bars to refiling in state court. See Ridenour v. Andrews Federal Credit Union, 897 F.2d 715, 722 (4th Cir. 1990)." *Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995).

The undersigned does not fabricate legal authority and has never been so falsely accused in 27 years of litigation practice. Only the plaintiff's accusation is fabricated.

*******

(e) To bolster the false claim of a fabricated quotation, on pages 9-10 of Doc # 80 the plaintiff rehashes a prior, also false, accusation that the defendants cited fake authority in their prior 12(b)(1) motions that were filed *pro se*:

"Moreover, this is not the first time Defendants have done this – while attempting to argue the minimum amount in controversy: … 'Defendant misstates and misrepresents the law to this Court, by citing to an opinion which does not exist.'" (quoting the plaintiff's own response to the prior 12(b)(1) motion).

As known to the plaintiff's counsel, there was no citation "to an opinion which does not exist" but rather a mis-citation because there were two reported decisions from the

4

same case, leading to an honest mix-up.  The defendants filed a Correction of Citation (Doc # 10) to directly address the error and clarify the correct citation.  Nevertheless, as if Doc # 10 did not exist the plaintiff misleads the Court that the defendants fabricated authority.

******

<u>The plaintiff no longer claims a minimum amount in controversy of $75,000.</u>

The plaintiff's 12(b)(1) opposition does not attempt to argue that there remains a $75,000 minimum amount in controversy,[1] but rests on the absurd and unsupported notion that once a plaintiff hoodwinks the U.S. District Court to exercise federal jurisdiction, the Court may not later dismiss the case but must allow the abuse of federal jurisdiction to continue even after finding that it was invoked in bad faith with contrived, baseless claims.

And instead of trying to justify interposing factually baseless "extortion" claims and submitting an affidavit with a false statement about "online posts calling me a child predator" to influence the exercise of federal jurisdiction, the plaintiff's opposition ludicrously and falsely asserts that the cited legal authority (<u>Shanaghan</u>) supporting dismissal of cases like this ("consciously relying on flimsy grounds to get into federal court") is fabricated.

## Conclusion

This lawsuit has consumed the Court's time and the defendants' lives for long enough.  The plaintiff cannot meet the jurisdictional minimum.  The plaintiff abused federal jurisdiction.  The plaintiff tries to again mislead the Court to overcome dismissal.  His lawsuit should be dismissed at this time.

---

[1] Moreover, the plaintiff's counsel emailed February 24 admitting, in response to a document request for evidence of the plaintiff's lost income, that damages are purely speculative: "There is no such 'evidence' at this time, as this will require an expert, who is being retained. His report will be the evidence of lost profits."

5

Defendants Preston and Cook, by:

*/s/ Bruce Matzkin*
Bruce Matzkin, Esq.
51 Pleasant Street, # 72
Malden, MA 02148
Brucematzkin1@gmail.com

**Certification of Service**

I hereby certify that on February 25, 2025, a copy of the foregoing was emailed to counsel of record for the plaintiff:

Randall Shochet, Esq
Shochet Law Group
Attorneys for Jeremy B. Hales
409 N. Main Street Trenton, FL 32693
rshochet@shochetlaw.com


*/s/ Bruce Matzkin*