UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **JEREMY B. HALES,** | : | Civil Action No.: |
| | : | 1:24-CV-00045-AW-ZCB |
| **Plaintiff,** | : | |
| v. | : | |
| | : | |
| **LYNETTE MICHELLE LACEY ALEXIS PRESTON** | : | |
| and | : | |
| **JOHN COOK,** | : | |
| | : | |
| **Defendants** | : | |

## MOTION FOR ATTORNEY FEES UNDER 28 USC 1927 [1]

The defendants move for an order that the plaintiff's counsel pay the defendants reasonable attorney fees for unreasonably and vexatiously multiplying proceedings in five distinct and separate ways:

1. Noticing and taking the deposition of Amanda Martin, who was subpoenaed on the pretext of being a witness but was questioned about personal matters completely unrelated to any claims or issues in this lawsuit, apparently to harass Ms. Martin on behalf of the plaintiff and to generate YouTube content.

2. Filing frivolous motions to dismiss or strike counterclaims (Doc #s 85 & 86) based on the openly advanced but obviously false premise that counterclaims named the plaintiff's counsel as a party-defendant.

---

[1] The Court granted leave to file the present motion combining four prior filings. See Doc # 118. The grounds for this motion are far from the totality of the plaintiff's counsel's use of this litigation to unreasonably and vexatiously multiply proceedings.

3. Falsely accusing the defendants' counsel of fabricating quotations from legal authority, as well as other misrepresentations in the plaintiff's opposition (Doc # 80) to the defendants' recent 12(b)(1) motion.

4. Failing to pay half of the cost of the court reporter for the December 19, 2024 deposition of the plaintiff as ordered by the Court (Doc # 43), then attempting to extort the undersigned by threatening a motion for sanctions unless the undersigned paid <u>him</u> for half the cost of a transcript copy he had purchased.

### **MEMORANDUM IN SUPPORT**

28 USC § 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

"Under the plain language of the statute three factors must be present in order to justify an imposition of sanctions: (1) an attorney must engage in "unreasonable and vexatious" conduct; (2) such "unreasonable and vexatious" conduct must "multipl[y] the proceedings"; and (3) the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct."

*Smith v. Psychiatric Solutions, Inc.*, 864 F. Supp. 2d 1241, 1267-68 (N.D. Fla. 2012), quoting *Norelus v. Denny's Inc.,* 628 F.3d 1270, 1281 (11th Cir. 2010).

"More particularly, "[t]he term 'unreasonably' necessarily connotes that the district court must compare the attorney's conduct against the conduct of a

'reasonable' attorney and make a judgment about whether the conduct was acceptable according to some objective standard. The term 'vexatiously' similarly requires an evaluation of the attorney's objective conduct." *Id.* at 1239–40; *see also Amlong,* 500 F.3d at 1240 (citing *Black's Law Dictionary,* (8th ed.2004), for definition of "vexatious" (meaning "without reasonable or probable cause or excuse; harassing; annoying")). … "Although the attorney's objective conduct is the focus of the analysis, the attorney's subjective state of mind is frequently an important piece of the calculus, because a given act is more likely to fall outside the bounds of acceptable conduct and therefore be 'unreasonabl[e] and vexatious[ ]' if it is done with a malicious purpose or intent."

*Smith v. Psychiatric Solutions, Inc.*, 864 F. Supp. 2d 1241, 1267-68 (N.D. Fla. 2012), quoting *Amlong & Amlong P.A. v. Denny's Inc.*, 500 F.3d 1230, 1239-41 (11th. Cir. 2007).

**1. Counsel deposed a "witness" for harassment and YouTube content.**

An award of attorney fees is warranted for the plaintiff's counsel abusing depositions to harass third parties on the pretext of deeming them "witnesses."

On February 14 the plaintiff's counsel spent approximately 90 minutes deposing Ms. Martin about topics unrelated to any claims or issues in this case. From the questioning, it's clear the plaintiff has an ax to grind with Ms. Martin because she was the Levy County Victim's Advocate assigned when defendant Preston filed for a state court restraining order against the plaintiff in the fall of 2023 for stalking her physically and online.

Atty. Shochet questioned Ms. Martin extensively about, among other things, "making a dirty face" at the plaintiff during a court date, making a comment to the plaintiff's then-counsel that he was an "asshole" and "psychotic," her relationship with her son including continuing to delve into it after Ms. Martin revealed she is unaware of her son's whereabouts, her feelings about the plaintiff having publicly read her husband's obituary on YouTube, and other topics having nothing whatsoever to do with the defendants or the claims against them. Counsel's apparent aim was to upset Ms. Martin, which he did repeatedly.

Ms. Martin was clearly not familiar with the claims or allegations in this case and had no idea whether any of the questioning she was being subjected to was relevant. She patiently and politely answered all questions, even when Atty. Shochet's questioning upset her to the point of causing her to cry on two occasions. When the undersigned finally interjected that the questioning had no relevance and the deposition was being used for harassment of the witness, the plaintiff's counsel began threatening motions for sanctions.

As the deposition continued and Atty. Shochet's questions about personal, upsetting topics continued, Ms. Martin called out for "the other lawyer" (the undersigned). In response the undersigned stated that he had no authority to terminate the deposition under Federal Rule 26(c) if it is being used to harass Ms. Martin since he did not represent her, but she could do so herself and seek a protective order. This led to more threats of sanctions by Atty. Shochet for alerting the witness to her rights, after which he stated he was done questioning the witness.

If there were any relevant topics of questioning, the examination would not have suddenly ended once the witness realized she could stop it for harassment. If the undersigned had sat silently the deposition would have gone to the maximum length of seven hours ("not including breaks"), based on the following email (the boldface is in the original):

**rshochet@shochetlaw.com <rshochet@shochetlaw.com>**    Wed, Jan 15, 11:49 AM

to Bruce Matzkin

Here are the following deponents and their dates: **all depositions will be for the full seven hours, not including breaks, and will be in person at the Levy County Courthouse**, except for Lisa Weeks a/k/a …, her deposition will at 3601 W Burleigh Blvd US Hwy 441, Tavares, FL 32778, and Robert J. Keszey, whose deposition will take place at Room 208.    Sumter County Courthouse, 215 E. McCollum Ave., Bushnell, Florida 33513
**1-24-2025 at 10 AM – LISA WEEKS
a/k/a LISA LEE a/k/a LISA RAPUZZI a/k/a LISA LEE RAPUZZI
a/k/a LISA RAPUZZI WEEKS**
3601 W Burleigh Blvd US Hwy 441, Tavares, FL 32778.
**1-28-2025 at 10 AM -  MARLA HUGHES
1-31-2025 at 10 AM – RUSSELL MEEKS
2-6-2025 at 10 AM. -  Steven Rhett Cunningham
2-13-2005 at 10 AM-     Robert J. Keszey
2-14-2025 at 10 AM -   Amanda Martin
Sincerely,
Randall "Randy" Shochet, Esq.**

The undersigned briefly cross-examined Ms. Martin to see if she knew anything about the "defamatory roadside signs" underlying the plaintiff's claims in this case. She knew of them only via YouTube videos she was sent links for by others, in which <u>the plaintiff</u> published the signs to promote his storylines and justify this litigation to his followers. Nevertheless, Ms. Martin's response was "evidence" relied on in the plaintiff's opposition (Doc # 80) to the defendants' 12(b)(1) motion, to create the false appearance that her deposition had some valid purpose:

5

"Regarding the motion's claim that Plaintiff cannot identify a single person who saw the defamatory signs 'other than Zim Padgett, Therese Granger, or Stephen Granger,' Defendants' counsel disproved this himself recently in the deposition of Ms. Amanda Martin (Defendant Preston's Court Appointed Victims Advocate), an employee of the Eighth Judicial Circuit In The State Of Florida – who testified that she saw the signs when social media posts and links to those defamatory signs were sent to her by two different people via email. See Transcript attached as Exhibit '2.'"

Ms. Martin's deposition was the subject of a YouTube video entitled, "Victim's Advocate Lied Under Oath In Federal Case" in which the plaintiff mocked Ms. Martin, threatened her with legal action, and made at least 10 threats of sanctions against the undersigned and other non-parties whose deposition subpoenas were not effectively served and so did not appear.  The video can be viewed here: https://www.youtube.com/watch?v=RWOyMpry7zw.  It ends with this ominous threat by the plaintiff against Ms. Martin:

"So she looks at Randy is this done and Randy goes yeah yeah we're off the Record you're done *she goes no I mean is this done for good am I done am I out of this and Randy goes you need to ask Mr hailes **and I look her straight in the face as I get up and I go not by any stretch of the imagination and not for your son either** and I immediately walk out well after I walk out she now is mad you know the whole puppy dog the whole droopy eyes thing with the tears didn't work.*"

This deposition of Ms. Martin also generated extensive content on other YouTube channels profiting from the plaintiff's litigation storylines.  **See Exhibit A**.

The plaintiff's counsel's deposition of Ms. Martin unreasonably and vexatiously multiplied proceedings to generate YouTube content, warranting an award of attorney fees.

6

**2. Doc #s 85 & 86 were based on a flagrantly false premise.**

An award of attorney fees is warranted for the plaintiff's counsel filing motions to dismiss counterclaims based on the fabricated pretext he'd been named as a counterclaim defendant, which the Court determined was sanctionable (Doc # 128).

The motions were hastily conceived, drafted and filed to counter the negative (for the plaintiff) YouTube coverage of the defendants' motion for leave to reply (Doc # 83) to address misrepresentations contained in the plaintiff's 12(b)(1) opposition. The motions were based on the made-up premise that the counterclaims "seek to add 'plaintiff's counsel' as a party-defendant." There was no authority cited holding that by mentioning the plaintiff's counsel in the counterclaim's allegations, it means he is a "party-defendant" despite not being so designated. The motions were fabricated on a false pretext in order to file them when they did. It was an abuse of the Court and this litigation.

These frivolous motions multiplied proceedings because they required the defendants to file a response (Doc # 90) and the Court to read the motions and response and issue a ruling. The Court denied motion #s 85 and 86 (Doc # 91) stating, "As Defendants' response in opposition (Doc. 90) has confirmed (and the Court itself had concluded based on its review of Defendants' answer), no counterclaims have been asserted against Plaintiff's counsel. Thus, there are no counterclaims against Plaintiff's counsel to dismiss."

It is objectively unreasonable to fabricate false pretexts for filing motions to dismiss. Attorney fees are warranted because the motions unreasonably and vexatiously multiplied proceedings.

**3. False accusation of fabricating quotation from legal authority.**

An award of attorney fees is warranted based on the plaintiff's counsel falsely accusing the undersigned of fabricating quotes from legal authority, necessitating (a) a motion for leave to reply (Doc # 83), (b) the Court's ruling on that (Doc # 84); and (c) a Reply (Doc # 87).

The false accusation is by itself grounds for imposing sanctions. See, e.g., *Xiao Wei Catering Linkage in Inner Mong. Co. v. Inner Mong. Xiao Wei Yang USA, Inc.*, CIVIL ACTION No. 15-10114-DJC, at *12 (D. Mass. Mar. 30, 2018):

> Attorney Xu also admitted at the hearing on February 13, 2018 that he wrongfully accused Attorney Murillo of fabricating evidence. The court finds that he should be sanctioned for this conduct, under the court's inherent power to sanction parties for misconduct during litigation. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (holding that courts are invested with inherent power to impose sanctions for bad-faith conduct, including attorneys' fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons") (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1985)).
> Courts have also found that falsely accusing opposing counsel of misconduct is sanctionable under Fed. R. Civ. P. 11. *See Balerna v. Gilberti*, 281 F.R.D. 63, 70 (D. Mass. 2012) (holding that Rule 11 sanctions were warranted where counsel made false accusations against opposing counsel); *McGarry v. Geriatric Facilities of Cape Cod, Inc.*, No. 10-cv-11343-GAO, 2011 WL 2600574, at *2 (D. Mass. June 28, 2011) ("Plaintiff's conduct in making false allegations against defense counsel and Ms. Morse is in violation of Rule 11 of the Federal Rules of Civil Procedure.")

The false accusation was an attack on the integrity of the undersigned, complete with a purposeful alteration of the cited excerpt from the defendant's memo to make it look like the false accusation was true. It necessitated a response ensuring the Court was not misled. The other misrepresentations also necessitated responses. The time expended to seek leave, prepare and file the Reply warrants an order to pay attorney fees.

**4. Failure to pay half of Dec. 19 cost of reporter and attempt to extort.**

The Court ordered (Doc # 43) that "the cost of the court reporter shall be shared equally between Plaintiff and Defendants." Upon receipt of the invoice from Steno in the amount of $1,298.05, on January 13 the undersigned (a) paid half in the amount of $649.03, and (b) forwarded to counsel, asking him to pay Steno directly or send half to the undersigned.

On March 26 the undersigned noticed that there remained a balance of $649.02 on the December 19 invoice, meaning that Mr. Shochet had never paid it directly to Steno (or to the undersigned to pay). The undersigned therefore emailed Mr. Shochet demanding his half of payment for the Dec. 19 court reporter.

Apparently, Mr. Shochet immediately phoned Steno and obtained confidential account information about a separate outstanding invoice (for the December 2 deposition that the undersigned terminated), leading to his reply email which he inexplicably Cc'd to Steno's General Counsel:

> Counsel, you are incorrect, we paid for both invoices that were sent to us from Steno Vol 1 was invoiced to us and paid by us to/from Steno directly - in full. For Vol 2, this bill was invoiced to us, and paid by us to/from Steno directly in full. I had a detailed conversation with Steno – who detailed me on your phone conversation with the billing department and who advised that **we** owe them **nothing**, but your invoice from Steno for Vol 1 in the amount of $3,878.81 remains unpaid by you, and **your invoice for Vol 2** in the amount of $1,290.05 was not fully paid by you – you only paid Steno $649.02. You can confirm this was Steno – but I am copying Attorney Savar of Steno regardless.

The statement that "we paid for both invoices" was in reference to extra copies of transcripts he had ordered. The actual court reporter's invoices were not sent to Mr. Shochet as it was the undersigned who engaged Steno for the depositions.

9

Another email came shortly after in which Mr. Shochet now was acknowledging that he hadn't paid half of the December 19 invoice for the cost of the court reporter, asserting that because he separately purchased a copy of the transcript he did not have to pay half of the December 19 court reporter invoice:

> "Your invoice is your invoice. My invoice is my invoice. Steno says we are paid **in full.** Please tell me why we should pay 100% of our invoice and half of your invoice?"

Notwithstanding having just disputed owing it, those emails were followed by two more emails from Mr. Shochet a couple hours later reporting that he had just paid the $649.02 and now was demanding the undersigned pay <u>him</u> for 50% of the cost of <u>his</u> copy of the transcript he'd ordered separately, on threat of a motion for sanctions. He also Cc'd these emails, inexplicably, to Steno's G.C.:

> "We have paid Steno. We will also seek one-half of our invoice and move for sanctions today. Please pay one half of our invoice from the second deposition by 5 PM today or we will be filing for sanctions."

> "Counsel, we have paid Steno in full now including 1/2 for your invoice. Now, you must pay for ½ of our invoice. We will give you to 5 PM today given that is the timeframe you requested for us. You can be us by Zelle using the link below."

Thus, the email to Mr. Shochet seeking payment of the December 19 cost of court reporter pursuant to the Court's order (Doc # 43) led to his attempt to extort the undersigned, necessitating this motion and thus multiplying proceedings. This episode exemplifies the use of this litigation by Mr. Shochet to vex, harass, and create burden and expense out of artificial and orchestrated side issues.

10

Conclusion

The undersigned represents the defendants *pro bono* and it would be inequitable to enable the plaintiff's counsel to abuse this litigation in ways calculated to consume the undersigned's time. Each of the grounds for this motion involves such calculated abuse, unreasonably and vexatiously multiplying proceedings.

Any attorney fees awarded can be used towards the cost of appointed or retained counsel for the defendants.

Defendants Preston and Cook, by:

*/s/ Bruce Matzkin*
Bruce Matzkin, Esq.
51 Pleasant Street, # 72
Malden, MA 02148
857-242-8614
Brucematzkin1@gmail.com

----

**Certification Under Local Rule 7.1(C)**

The undersigned certifies compliance with the attorney-conference requirement of Local Rule 7.1(B). The plaintiff's counsel's response was that the Court stayed further filings, but the undersigned reminded him that this filing was authorized by the Court (Doc # 118).

*/s/ Bruce Matzkin*

## **CERTIFICATION**

  I hereby certify that on March April 10, 2025, a copy of the foregoing was emailed to counsel of record for the plaintiff:

Randall Shochet, Esq
Shochet Law Group
Attorneys for Jeremy B. Hales
409 N. Main Street Trenton, FL 32693
rshochet@shochetlaw.com


  */s/ Bruce Matzkin*

# EXHIBIT A

Amanda Martin Deposition Harassment by Hales & Megan Fox



